**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN T. ("TOM") MINEMYER, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 07 C 1763** |
| **v.** | ) | |
| | ) | **Magistrate Judge Cole** |
| B-ROC REPRESENTATIVES, INC., et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff filed for a patent on a plastic pipe coupler – Patent No. 6,851,726 ("726 patent") – on August 23, 1999. It's a short length of sturdy plastic tube, with threads spiraling their way from both ends toward the center – think jar lid, with the lid being one end of the coupler and the pipe being the jar. In the center, there is a stop so that the pipes being connected wouldn't actually touch. It's difficult to imagine there was anything new under the sun in pipe connecting by 1999, but it seems the salient feature of the plaintiff's coupler was the fact that the threads were shallow at the ends and became deeper as they worked into the center. The parties refer to them as "tapered threads." Perhaps the slight "funnel shape" to the ridge of thread makes it easier for the coupler to accept the pipe to be connected, the connection becoming gradually tighter and more secure the closer the pipe gets to the center stop. In any event, that's the significant feature of the patent for the purposes of this motion, the defendants' motion for summary judgment as to the invalidity of the 726 Patent. Plaintiff sued the defendants for infringing his patent, and invalidity is one of their defenses.

According to the defendants, the plaintiff offered his product for sale more than a year before

he filed. A patent is invalid under the on-sale bar of 35 U.S.C. § 102(b) if, prior to the critical date, the invention was ready for patenting and was the subject of a commercial sale or offer for sale. *Pfaff v. Wells Electronics Inc.*, 525 U.S. 55, 67 (1998); *In re Cygnus Telecommunications Technology, LLC, Patent Litigation*, 536 F.3d 1343, 1353 (Fed.Cir. 2008). Defendants also argue that another party had a similar device on the market prior to that time as well, thereby invalidating the plaintiff's patent under the public use bar of 35 U.S.C. §102(b). *Zenith Electronics Corp. v. PDI Communication Systems, Inc.*, 522 F.3d 1348, 1356 (Fed.Cir. 2008). Finally, the defendants submit that the patent is invalid for obviousness under 35 U.S.C. § 103. Plaintiff disputes that there was any offer for sale and submits that, even if there were, he is entitled to an earlier priority date – August 25, 1997 – based on his provisional patent application. He disputes the other two arguments as well, for technical reasons.

## I.
## SUMMARY JUDGMENT

### A.
### The Federal Rule of Civil Procedure and the Applicable Case Law

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate their entitlement to summary judgment, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the nonmoving party's evidence "'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Credibility determination must be left for the fact-finder. *Hunt*, 526 U.S. at 552.

2

But this favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008). The nonmoving party "must do more than raise some metaphysical doubt as to the material facts; [she] must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Board of Trustees of Purdue University,* 458 F.3d 620, 628 (7th Cir. 2006). Where the nonmoving party bears the burden of proof at trial, he must present specific facts showing a genuine issue to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986); *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir.1996)("If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."). A genuine issue of material fact exists, precluding summary judgment, "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign,* 496 F.3d 820, 826 (7th Cir.2007) (citation omitted).

**B.**

**Summary Judgment Under the Local Rules**

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions.[1] Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to

---

[1] As the local rules governing summary judgment procedures do not affect substantive patent law principles, they are applicable in this case. *Cygnus Telecommunications Technology,* 536 F.3d at 1351-52.

the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted

facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir.

2005) The party opposing summary judgment must then respond to the movant's statement of

proposed material facts; that response must contain both "a response to each numbered paragraph

in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of

short numbered paragraphs, of any additional facts that require the denial of summary judgment,"

Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643. Again, each response, and each asserted fact,

must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp.,*

*Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633.

If the moving party fails to comply with the rule, the motion can be denied without further

consideration. Local Rule 56.1(a)(3); *Smith v. Lamz*, 321 F.3d 680, 682 n.1 (7th Cir. 2003). If the

responding parting fails to comply, its additional facts may be ignored, and the properly supported

facts asserted in the moving party's submission are deemed admitted. Local Rule 56.1(b)(3)(C);

*Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008); *Cracco*, 559 F.3d at 632; *Cady v.*

*Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). District courts are "'entitled to expect strict

compliance'" with Rule 56.1, and do not abuse their discretion when they opt to disregard facts

presented in a manner that does follow the rule's instructions. *Cracco*, 559 F.3d at 632; *Ciomber*,

527 F.3d at 643; *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir.2004).

The local rule governing summary judgment proceedings has been in effect for over two

decades. Nonetheless, complaints about their perceived rigor, *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d

1101, 1103 (7th Cir. 1990), or their very necessity, *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.

1992), continue to be heard. Too often, the rules are overlooked or worse, ignored, leaving it for the

4

court to sift through the evidence largely unaided. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). But the Seventh Circuit has been adamant that that is not the appropriate role for a court either in the Court of Appeals, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Alexander v. City of South Bend*, 433 F.3d 550, 552 (7th Cir. 2006), nor in the District Court. Indeed, the Seventh Circuit has approved of local rules like Local Rule 56 because they make the district court's task more efficient. *Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); *Waldridge*, 24 F.3d at 922. That is especially true in complex cases such as patent cases where the court does not have the advantage of the parties' familiarity with the record. *Waldridge*, 24 F.3d at 923-24.

Local Rules like Local Rule 56 serves a more important purpose in ensuring that the adversary system functions as it should. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989). A court does a disservice to the system, and to one party when it assists the other party in the presentation of its case. Indeed, the Seventh Circuit has cautioned against going beyond the parties' presentations. *See Hartmann v. Prudential Ins. Co.*, 9 F.3d 1207, 1214, (7th Cir.1993); *Weissman v. Weener,* 12 F.3d 84, 86 (7th Cir. 1993). "The benefit of adversarial presentation is a major reason why judges should respond to the parties' arguments rather than going off independently." *Kay v. Board of Educ. of City of Chicago,* 547 F.3d 736, 738 (7th Cir. 2008)(Easterbrook, C.J.). *See also WWC Holding Co., Inc. v. Sopkin,* 488 F.3d 1262, 1279 -1280 (10th Cir. 2007)(Gorsuch, J., dissenting).

Even if a judge were to endeavor to assist both sides, it could never do so equally, and some unfairness would result. The Federal Circuit has quoted with approval Judge Kleinfeld of the Ninth Circuit:

> . . . requiring the district court to search the entire record, even though the adverse

5

party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair. The cases often refer to the unfairness to the district court, which is substantial, but hardly the full story. If a district court must examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer, an enormous amount of time is taken away from other litigants. Other litigants could have that judicial time, and get their cases resolved better and faster, if the district court could limit examination to the materials submitted in opposition to the summary judgment motion.

Requiring the district court to search the entire record for a genuine issue of fact, even though the adverse party does not set it out in the opposition papers, is also profoundly unfair to the movant. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. The opposition sets it out, and then the movant has a fair chance in its reply papers to show why the respondent's evidence fails to establish a genuine issue of material fact. If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.

*Cygnus Telecommunications*, 536 F.3d at 1352-53.

These fundamental principles have applicability here. In an attempt to stave off summary judgment, the plaintiff relies almost entirely on his 27-paragraph, Local Rue 56.1(b)(3)(C) statement of additional facts requiring denial of the defendants' motion. In paragraph after paragraph, the plaintiff discusses his activities, in a narrative form, in the year or so leading up to his patent application. The problem is, with isolated exceptions, the plaintiff makes absolutely no reference to any evidence. Plaintiff's paragraph 5 provides an example:

However, before undertaking a serious effort to design and build these items, especially the couplers, Minemyer needed to know that, as he actually created them, or any one or more of them, he would be able to test them in actual operation in an actual situation. And, he could only do this if he had an actual purchaser for these items. Accordingly, on July 21, 1998, he entered into an agreement with Level 3 Communications, LLC, ("Level 3") to actually sell them various quantities of these items. A copy of this agreement is attached as Exhibit A (to the attached Exhibit 6). The quantities inserted in that agreement were extremely small and absolutely

minimal in order to see whether Minemyer could develop a coupler that would work and that would satisfy the customers' requirements. Even at that, these numbers were my[sic] estimates based on Minemyer's guess as to the workability of the couplers and the industry's desire for them. At this time, he did not have even a design that he considered completely or even likely satisfactory nor did he have any couplers or duct plugs, even mock-ups, of these items. In fact he did not have a design that he considered satisfactory. However, he entered into this agreement for the primary purpose of having a situation in which he could try out and test any couplers that he might design and make in the future, he also wanted a situation in which he personally could work with the construction crews during installation of the conduit and couplers to see how the couplers performed under actual conditions and learn of any difficulties that might arise. At the time of entering into this agreement with Level 3, Minemyer informed them that he had no product at the time and was not sure what form and shape the product might take after my development of it in the future. He also told them that he would provide the small quantities only for the purposes of testing my designs which he would be doing personally. Level 3 and Minemyer also understood that, if my designs did not work, he would not be filling the contract quantities even at the low quantities listed there. Lastly, Level 3 agreed with Minemyer that he would personally be present at all uses and installations of any coupler that he would provide for the indefinite future. This was so that he could test and experiment with them and make sure that they worked.

(*Plaintiff's Statement of Additional Facts,* ¶ 5).

This is anything but a "short numbered paragraph" – it goes on for over a page. That alone violates the local rules, and there are other paragraphs like it. More importantly, it cites only to the agreement between plaintiff and Level 3, without any specific page references, which is violative of the local rules. *Ammons*, 368 F.3d at 817-18. But when we look to the sales agreement, there is no support for the allegation that all that was involved were "quantities . . . extremely small and absolutely minimal." To the contrary, prices were listed for "100,000 plus" couplers. (Plaintiff's Ex. 6(A) ¶ 2). Plaintiff agreed to have 5000 units in stock. (Plaintiff's Ex. 6(A) ¶ 4(a)). Similarly, there is no mention of there being "no design," "no product at the time," working directly with construction crews, or any experimentation. In short, there is no mention of any of the assertions in the paragraph. All of plaintiff's additional facts are similarly flawed. As a consequence, none of

7

them can be considered.

In his memorandum, plaintiff makes essentially the same assertions, but refers to his own declaration as supporting evidence. That, however, is not compliant with the rule and is inadequate to rehabilitate his Local Rule 56.1 submission. *See Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission); *Ammons v. Aramark Unif. Serv., Inc.,* 368 F.3d 809, 817 (holding that district court entitled to expect strict compliance with Rule 56.1, not merely substantial compliance). Local Rule 56.1 statements "are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." *Waldridge,* 24 F.3d at 923; *see also Bell, Boyd & Lloyd,* 896 F.2d at 1102-03 (sustaining entry of summary judgment based on inadequacy of non-movant's factual statement, where district court would not consider affidavit underlying that statement).

## II.
## THE ON SALE BAR

### A.
### The Priority Date of Plaintiff's Patent

Plaintiff is the owner and named inventor of the 726 Patent, issued on February 8, 2005, and entitled "Radial Conduit Coupling System and Method." Counts I through III of the Second Amended Complaint allege that defendants infringed Claims 1-6 and 10-15 of the '726 Patent. Plaintiff claims he is entitled to a priority date for his patent of August 25, 1998, the filing date of his provisional patent application No. 60/097,868. (*Defendants' Statement of Material Facts* ("*Def.St.*"), ¶¶ 7-9, 12-13; *Plaintiff's Rule 56.1(b) Response* ("*Pl. Resp.*"), ¶¶ 7-9, 12-13). In the text

of that application, there is no mention of "tapered threads." (*Def.St.*, ¶ 14; *Pl.Resp.*, ¶ 14).  The

plaintiff insists, however, that the accompanying drawing depicts "tapered threads."  "'[U]nder

proper circumstances, drawings alone may provide a 'written description' of an invention as required

by § 112.'"  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed.Cir.

2009)(quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed.Cir.1991)).

The failure of the text of an application to mention what is claimed to be a significant facet

of the invention is explained in *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed.Cir.

2008):

> It is elementary patent law that a patent application is entitled to the benefit of the
> filing date of an earlier filed application only if the disclosure of the earlier
> application provides support for the claims of the later application, as required by 35
> U.S.C. § 112.
>
> *     *     *
>
> To satisfy the written description requirement the disclosure of the prior application
> must convey with reasonable clarity to those skilled in the art that, as of the filing
> date sought, [the inventor] was in possession of the invention.  While a prior
> application need not contain precisely the same words as are found in the asserted
> claims, the prior application must indicate to a person skilled in the art that the
> inventor was "in possession" of the invention as later claimed. Entitlement to a filing
> date does not extend to subject matter which is not disclosed, but would be obvious
> over what is expressly disclosed.

*Id.*, at 1306(quotations and citations omitted).  There is no question that the 762 patent discloses the

"tapered threads," so if the provisional patent application drawing does as well, the plaintiff is

entitled to the earlier priority date of August 25, 1997.  If not, the August 23, 1999 date on which he

filed the patent application is the critical date.

The drawing doesn't pass the eye test.  To comply with the written description requirement

of 35 U.S.C. § 112, an applicant must "convey with reasonable clarity to those skilled in the art that,

9

as of the filing date sought, he or she was in possession of the invention . . . ." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1332 (Fed.Cir. 2009)(emphasis omitted). The original drawing (Defendants' Ex. 6, at RBOC006259) reveals no obvious taper – it doesn't "convey" the taper "with reasonable clarity."

Examining the enlargement plaintiff has provided (Plaintiff's Ex. 5(E)) with a conventional tape measure also revealed no true taper. The outermost "tooth" on the right end of the coupler was 3/8 inch from the coupler wall, as was the innermost "tooth." The outermost "tooth" on the left end proved to be 1/32 inch shorter than the innermost "tooth," but there was no consistent, gradual tapering as the thread progressed toward the center. In this context, it is important to remember that measurement is not even allowed in this instance because there is no dispute that the drawing is not to scale.[2] *Go Medical Industries Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1271 (Fed.Cir. 2006); *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed.Cir. 2005)(". . . arguments based on drawings not explicitly made to scale in issued patents are unavailing."); *Hockerson-Halberstadt, Inc. v. Avia Group. Int'l, Inc.*, 222 F.3d 951, 956 (Fed.Cir.2000)(" . . . it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue."); *Application of Wright*, 569 F.2d 1124, 1127 (CCPA 1977)("Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value.").

The drawing didn't pass the inventor's own eye test, either. At his deposition, regarding the drawing, Mr. Minemyer testified:

---

[2] Plaintiff concedes there are no "numeric measurements,[or] dimensions, . . . with respect to the thread element of the drawing." (*Def,St,*, ¶ 15; *Pl.Resp.*, ¶ 15). Plaintiff asserts only that there are "symbols": two "lead Lines pointing to the teeth." (*Pl.Resp.*, ¶ 15).

A: Well, I said I can't tell whether it's tapered or not in the [drawing].

Q: You also testified, though, that if I gave you this drawing, you wouldn't be able to discern whether or not the thread was tapered?

A: Right. It's a small taper, so I couldn't tell.

Q: And you are testifying that there is a taper *here*?

A: No. I said *if there is one* it would only be small and *I can't tell*.

(Defendants' Ex. 7, Minemyer Dep., at 368 (emphasis supplied)). This is the *plaintiff's own drawing*, and he can't tell. If the plaintiff had intended his provisional application to cover a tapered thread, he wouldn't be saying, "*if* there is one." It sounds as though the plaintiff did not even know if he intended there to be a taper when he filed the provisional application. It sounds exactly like the taper is not "conveyed with reasonable clarity." And that's because it simply isn't.

Of course, realizing the error of his frankness, the plaintiff changed his tune later in the day when *his* attorney questioned him. He said he could observe a slight taper when he employed a straightedge to examine the enlarged drawing. (Defendants' Ex. 7, Minemyer Dep., at 429). This is the type of blatant, internal contradiction that does not create a genuine issue of fact precluding summary judgment. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 505 n.5 (7th Cir. 2004); *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998); *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997). More to the point, however, perceiving a *slight* taper in a blow-up of the original drawing when utilizing a straightedge is, once again, not "reasonable clarity." And though it's technically not measuring, it does run against the holdings of *Go Medical Industries*, *Nystrom*, *Hockerson-Halberstadt,* and *In re Wright.*

That leaves the affidavit of Steven Kaiser, the vice president of an injection molding firm

with a bachelor's degree in economics.  He took a look at the drawing and its enlargement and had

this to say:

> From my review of these two drawings [original and enlargement], there appears to
> be a slight taper to the thread along the central longitudinal axis, that is, moving in
> a "downward" direction from each end of that coupler toward the center.  This is
> more apparent on the enlargement, Exhibit E.  By using a straightedge and an optical
> comparator, the taper was obvious.  I estimated the taper to be approximately one
> degree.

(Plaintiff's Ex. 5, Kaiser Dec., ¶ 7).  This is insufficient.  If there merely "appears to be a slight

taper," that really doesn't qualify as conveying this feature "with reasonable clarity."  Moreover, yet

agin, it doesn't matter if the taper becomes "obvious" when the drawing is enlarged and not just a

ruler, but   measuring equipment is employed.  *See Go Medical Industries.*, 471 F.3d at 1271;

*Nystrom*, 424 F.3d at 1149; *Hockerson-Halberstadt, Inc. v. Avia Group. Int'l, Inc.*, 222 F.3d 951, 956

(Fed.Cir.2000)(" . . . it is well established that patent drawings do not define the precise proportions

of the elements and may not be relied on to show particular sizes if the specification is completely

silent on the issue.");  *In re Wright,* 569 F.2d 1124, 1127 (CCPA 1977).

Not being entitled to a priority date of August 25, 1998, the best the plaintiff can hope for

is August 23, 1999.  The defendants argue that the plaintiff offered the coupler for sale over a year

before that, no later than July 21, 1998.  If so, the 726 Patent is invalid, at least in terms of Claims

1, 5, 6, 10, 11, 13, 14, and 15, under 35 U.S.C. § 102(b).  Defendants have to demonstrate invalidity

by clear and convincing evidence. *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368,

1376 (Fed.Cir. 2009).

**B.**
**The Date of Offer for Sale**

Patent laws have long denied a patent to an inventor who applies for a patent more than one

year after making an attempt to profit from his invention by putting it on sale.  35 U.S.C. § 102(b);

*Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed.Cir. 2008)(citing

*Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 137 (1877).  The test for whether the bar

applies has two parts:  the invention was both the subject of a commercial offer for sale before the

critical date and ready for patenting at the time of the offer.  *In re Cygnus Telecommunications*

*Technology, LLC, Patent Litigation*, 536 F.3d 1343, 1353 (Fed.Cir. 2008);  *Pfaff*, 525 U.S. at 67.

The idea is that an inventor should not be able to commercialize his invention beyond the statutory

term. *Atlanta Attachment*, 516 F.3d at 1365; *Netscape Commc'ns. Corp. v. Konrad*, 295 F.3d 1315,

1323 (Fed.Cir.2002).  Learned Hand said the same thing a half century earlier in *Metallizing*

*Engineering Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516, 520 (2nd Cir. 1946):

> [I]t is a condition upon an inventor's right to a patent that he shall not exploit his
> discovery competitively after it is ready for patenting; he must content himself with
> either secrecy, or legal monopoly.

To qualify as a commercial offer – the first part of the test – the offer must be sufficiently

definite that another party could make a binding contract by simple acceptance, assuming

consideration. *Atlanta Attachment*, 516 F.3d at 1365;  *Netscape*, 295 F.3d at 1323.  While "[a]ny

attempt to use [an invention] for profit ... would deprive the inventor of his right to a patent," an

inventor's use "by way of experiment" does not bar patentability.  *Atlanta Attachment*, 516 F.3d at

1365 (quoting  *Elizabeth*, 97 U.S. at 137).  The question is whether the suspect activities were

experiments as opposed to an attempt to profit from the invention – that is, whether the primary

purpose of the offers and sales was to conduct experimentation. *Atlanta Attachment*, 516 F.3d at

1365; *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1354 (Fed.Cir.2002). Still, "[n]either

profit, revenue, nor even an actual sale is required for the use to be a commercial offer under section

102(b); an attempt to sell is sufficient if it rises to an offer upon which a contract can be made merely

by accepting it." *Atlanta Attachment*, 516 F.3d at 1365.

    As for the second part of the test,  an invention can be considered "ready for patenting" in

at least two ways:  it was reduced to practice,  or the inventor had prepared drawings or other

descriptions of the invention that were sufficiently specific to enable a person skilled in the art to

practice the invention. *In re Cygnus Telecommunications Technology, LLC, Patent Litigation*, 536

F.3d 1343, 1353 (Fed.Cir. 2008); *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1368

(Fed.Cir.2007).  Here, there is no dispute that both parts of the test are met because plaintiff has

admitted that they are.

    The plaintiff has admitted at least three times that he offered the invention for sale, and that

it was ready for patenting.  The first admission came in the plaintiff's amended interrogatory

responses on April 21, 2009:

> The invention of Claims 1, 5, 6, 10, 11, 13, 14, and 15 were . . . first reduced to
> practice sometime prior to August 6, 1998 . . . They were first made (prototyped)
> sometime before August 6, 1998 and were first manufactured on or before September
> 3, 1998. . . The inventions of those claims were first offered for sale on about July
> 21, 1998.

(Defendant's Ex. 3, No. 7).  Of course, answers to interrogatories are an accepted basis for summary

judgment. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Lujan v. National Wildlife Federation*,

497 U.S. 871, 883-84 (1990).  With this response, plaintiff has admitted that the two parts of the on-

sale bar are met.

He again admitted as much at his deposition in June 2009. He confirmed that his interrogatory response was correct, and explained that Level 3 had given him "an actual contract saying they would buy them if we could produce them." (Defendants' Ex. 7, at 164-65). And he conceded that the product offered for sale would embody the eight claims at issue. (*Id.*, at 290-91). He also explained that when he answered that he had reduced the invention to practice by August 6, 1998, he had "made drawings and, you know, prototyped and tested, things like that." (*Id.*, at 70-71). He also allowed that he had made drawings, and he had to say about those:

> Q: Once you completed this drawing . . . did you – was it your practice to have a professional engineer finalize your design for you?
>
> A: No.
>
> Q: Why not?
>
> A: I didn't need them.
>
> Q:Why didn't you need them?
>
> A: It's my design. I did it. I'm capable of doing it. I don't need somebody else's.
>
> Q: But you are not capable of manufacturing it?
>
> A: No. I said I was.

(*Id.,* at 311-12).

So that leaves no question. Remember, there doesn't even have to have been an *actual* sale. *Atlanta Attachment*, 516 F.3d at 1365. The plaintiff concedes that, over a year before he had filed his patent application, he had offered his invention for sale, had a contract, reduced it to practice, and could have manufactured it. The defendants are entitled to summary judgment on this issue.

The plaintiff claims that the sale was only experimental. Of course, there is no mention of

that in his interrogatory response or deposition testimony. So this is an eleventh-hour claim designed to rescue his lawsuit from some devastating admissions. His story is set out in his Rule 56.1 statement of additional facts but, as already discussed, *supra*, there is no reference to any evidence that would support it, so those "facts" can be ignored. *Cracco*, 559 F.3d at 632; *Ciomber*, 527 F.3d at 643; *Ammons,* 368 F.3d at 817. The only evidence cited is the contract between Level 3 and the plaintiff, and that makes no mention of plaintiff's intentions regarding experimentation. And, again, the fact that plaintiff cites his own affidavit in his memorandum is to no avail. *See Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission); *Ammons.* 368 F.3d 809, 817 (holding that district court entitled to expect strict compliance with Rule 56.1, not merely substantial compliance). Accordingly, claims 1, 5, 6, 10, 11, 13, 14, and 15 of the '762 Patent are invalid.[3]

## III.
## THE PUBLIC USE BAR

Defendant next argues that the use and purchase of couplers by Mr. Lucian Lyall more than one year prior to the date plaintiff applied for his patent invalidates Claims 1, 5, 6, 12, 13, and 15. Of these only Claim 12 remains in issue. Apparently, Mr. Lyall is a designer of some sort, although

---

[3] Even if the plaintiff had complied with the Local Rule, his argument is unpersuasive. It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony. *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir.2001); *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988). Additionally, the more recent assertions do little, if anything, to advance his experimental use theory. He claims he would lose money on the sale to Level 3, and that shows the sale was not primarily for commercial exploitation. (*Plaintiff's Memorandum in Response*, at 14). But, as already explained, there need not be a profit; indeed, there need not even be an actual sale. *Atlanta Attachment*, 516 F.3d at 1365. The plaintiff also claims that he had not had enough units made to allow him to make a commercial sale. But 50 of an item has been found to be sufficient. *Atlanta Attachment*, 516 F.3d at 1365. "[O]nce there has been a commercial offer, there can be no experimental use exception." *Id.* at 1366.

that is not explained in defendants' brief or Local Rule 56.1 submissions.  And, apparently, the argument goes that he designed a coupler and had it manufactured that was sufficiently similar to the plaintiff's coupler to invalidate the aforementioned claims of the plaintiff's patent under the public use bar of 35 U.S.C. §102(b).  Before this argument can be addressed, there is an ongoing discovery dispute that needs to be addressed.

In the defendants' so-called preliminary invalidity contentions, served December 14, 2007, they referred to a product sold by Group Timberline, Inc., that they claimed included each and every element of Claims 1, 5, 6, and 15 – but not 12 (*Defendants' Reply*, at 8), which is the claim remaining at issue.  Those contentions were never supplemented to include Claim 12.  As for Mr. Lyall, defendants did not disclose him in their Rule 26(a)(1) initial disclosures, although there is no question they knew that he was a person who may have had highly significant information.

The December 14, 2007 infringement contentions referred to a product sold by Group Timberline, Inc., that they claimed included each and every element of Claims 1, 5, 6, and 15 – but not 12 (*Defendants' Reply*, at 8), and that's the claim remaining at issue here.  Group Timberline was apparently Mr. Lyall's company (*Defendant. St.*, ¶ 26), but still, there was no mention of Mr. Lyall. In a portion of the preliminary infringement contentions the defendants do not reference, a company named Lyall Turbosonics is mentioned, as is U.S. Patent No. 6,059,321.  (Defendants' Ex. 23, at 5). The patent lists Lucian Lyall as patentee. (Defendants' Ex. 4).  On May 19, 2009 – at which time, discovery was set to close on June 11th – the defendants subpoenaed Mr. Lyall for a deposition on June 3rd, and emailed plaintiff's counsel, inviting him to attend, although they initially neglected to inform him of the date.

As defendants see it, that ought to have alerted the plaintiff that they would be relying on Mr.

Lyall as a witness. And, at least after the deposition, they contend, it should have been obvious that they would, not only because of Mr. Lyall's testimony but because their expert's report in July of 2009 specifically referred to Mr. Lyall and related matters.

But in the motion for summary judgment, the defendants make no argument regarding plaintiff having notice that they would be contending that Claim 12 was invalid. Moreover, they cite no applicable case holding that that they should be able to proceed as though the omission in the invalidity contentions should not count. This is a significant flaw in this portion of their motion for summary judgment, which covers less than two pages of their memorandum. It harkens back to what was said regarding the plaintiff's Local Rule 56.1 submission: this is an adversarial system. It is not a court's task to research legal arguments on a party's behalf. *Tyler v. Runyon,* 70 F.3d 458, 466 (7th Cir.1995). "An advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613 (7th Cir. 2006). *See also* Brandeis, *The Living Law,* 10 Ill.L.Rev. 461, 470 (1916)(a "judge rarely performs his functions adequately unless the case before him is adequately presented."). Arguments made without any citation to pertinent authority need not be considered. *United States v. Elst,* 579 F.3d 740 (7th Cir. 2009); *United States v. Useni,* 516 F.3d 634, 658 (7th Cir. 2008); *330 W. Hubbard Restaurant Corp. v. United States,* 203 F.3d 990, 997 (7th Cir.2000) ("In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate to raise a separate basis for appeal.").[4]

There is, of course, no dearth of authority on witness disclosure. Under Fed.R.Civ.P. 26, a

---

[4] There is reference in the plaintiff's expert report on July 20, 2009 to Lyall and related matters, as the plaintiffs recently argued in a hearing on the plaintiff's Motion to Strike Defendant's Notice Pursuant to 35 U.S.C. §282 [#227].

party must provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses ..., identifying the subjects of the information." Fed.R.Civ.P. 26(a)(1)(A). The rule also requires a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1). *Gutierrez v. AT&T Broadband, LLC,* 382 F.3d 725, 733 (7th Cir. 2004); *David v. Caterpillar, Inc.,* 324 F.3d 851, 856 -857 (7th Cir. 2003). The sanction for failing to comply with the rule is exclusion of the witness, Fed.R.Civ.P. 37(c)(1), and it is "'the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *David,* 324 F.3d at 857 (quoting *Salgado by Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998)).

Although these principles are not discussed in the defendant's briefing, the facts do suggest that Mr. Lyall's status as a potential witness was "otherwise made know during the course of discovery" to Mr. Minemyer. But that still leaves Claim 12, and the defendants' briefing offers no discussion, factual or legal, regarding that. Hence, it cannot be ascertained whether plaintiff had some type of constructive notice that the validity of Claim 12 was at issue or whether, if they did, such notice was sufficient to justify the non-compliance with 35 U.S.C. §282.

Under §282, the validity of each *claim* must be pled and considered separately: "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims.... The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: ... (2) Invalidity of the patent

or any claim in suit on any ground specified in part II of this title as a condition for patentability . . . ." *See also 800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1368 (Fed.Cir. 2008); *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1347 (Fed.Cir. 2003). If there was no mention of Claim 12, then at least with respect to this one claim, defendants' summary judgment motion was "litigation by ambush." (*Defendants' Reply*, at 10).

Since it is the defendants' initial burden to demonstrate their entitlement to summary judgment, *Celotex Corp.*, 477 U.S. at 323, and to do so in this case by clear and convincing evidence, *Alaris Medical Systems*, 558 F.3d at 1376, the defendants are not entitled to summary judgment on their contention that Claim 12 is invalid.

## IV.
## OBVIOUSNESS

Finally, the defendants argue that all the claims of the 726 Patent are invalid as obvious under 35 U.S.C. § 103. In reaching a determination on obviousness, the court must consider: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non-obviousness such as commercial success, long felt need, and failure of others. *In re Mettke*, 570 F.3d 1356, 1358-59 (Fed.Cir. 2009)(citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). Here, the defendants offer even less to go on than they did regarding their public use theory. As with that contention, the defendants cite no case law. For factual development, they rely on their previous, undeveloped contention which, as already noted, the plaintiff was not afforded proper notice of before the defendants filed for summary judgment. It is, overall, an exceedingly terse presentation of barely

20

a few sentences.  It is not the kind of fully developed presentation that the Seventh Circuit has demanded in all cases and that must exist where, as here, the claim of invalidity must be demonstrated *clearly* and *convincingly*.  "Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived." *Elst*, 579 F.3d at 740 (undeveloped, one-paragraph argument); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir.2006); *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 855 (7th Cir. 1998)("[Party] devoted all of three sentences to the argument on this issue. The matter is waived."). The defendants' motion for summary judgment on obviousness is denied.

## V.

## CONCLUSION

The defendants' motion for summary judgment [#179] is GRANTED in part (as to invalidity under the on-sale bar), and DENIED in part (as to invalidity under the public use bar and obviousness).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/27/09

21