**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN T. ("TOM") MINEMYER**, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 07 C 1763** |
| v. | ) | |
| | ) | **Magistrate Judge Cole** |
| **B-ROC REPRESENTATIVES, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendants have moved for summary judgment on the issue of whether they infringed claim 12 of the patent-in-suit. Their motion focuses on the phrase, "approximately perpendicular," which refers to the angle of the threads inside the patented coupler. The defendants argue that all evidence shows that "approximately perpendicular" can mean no more than five degrees away from a ninety-degree angle. Because the threads of their device feature angles greater than that – ten degrees away from a ninety-degree angle – the defendants submit they are entitled to summary judgment. The plaintiff points out that the parties have already agreed that the phrase "approximately perpendicular" means "approximately ninety degrees," and eschewed a Markman hearing. As such, the time for claim construction has passed. Because the defendants are able to cite no law in support of what they are requesting, and because they did, in fact, propose the very claim construction the parties agreed upon, their motion is denied.

On September 4, 2007, Judge Coar set May 15, 2008, as the date for the Markman hearing in this case – *i.e.*, the date on which the claims of the patent-in-suit would be construed. Leading up to the hearing, the parties had a few other deadlines to meet:

Both parties shall exchange their respective versions of proposed terms and claim

>elements for construction in the form of jury instructions by 12/31/07. Both parties shall disclose any extrinsic evidence in support of their respective claim constructions by 2/12/2008, including dictionary definitions. Any modification to the proposed terms and claim elements for constructions shall be filed by 3/13/2008. Both parties shall file their memoranda in support of their respective versions of claim construction along with any exhibits to be offered during the Markman hearing and a list of witnesses who will be called to testify at the hearing by 4/14/2008.

[Dkt. # 79].

Apparently, however, the only thing the parties actually did was exchange their proposed terms and claim elements for construction. The day before the Markman hearing, counsel for plaintiff filed a letter with the court in which he wrote that "there appear[ed] to be no need for the *Markman* hearing . . . and . . . respectfully suggest[ed] that it not be held." [Dkt. # 104]. Counsel went on to explain that, while the parties' proposed constructions were worded differently, they were virtually identical in scope and substance. [Dkt. # 104]. He indicated that he and his opponent thought they should meet with the judge in chambers and resolve any wording differences. [Dkt. # 104]. Taking the parties at their word, Judge Coar cancelled the Markman hearing that same day, and stated that the agreed upon claim constructions would be finalized in jury instructions at the final pretrial conference.

Of course, there hasn't been a final pretrial conference yet, but the parties agree as to the construction of claim 12, which is the subject of the defendants' current motion for summary judgment. (*Plaintiff's Response* [Dkt. # 346], at 5-6; *Defendants' Reply* [Dkt. # 347], at 8). Defendants' proposed jury instruction on that claim – the wording of which plaintiff accepts – is that "the phrase 'the rear face disposed approximately perpendicular to a longitudinal axis through the base of the first thread' means the surface of each tooth facing away from the first end of the first connector is at an approximately ninety degree angle to the base of the tooth." (*Plaintiff's Response*

[Dkt. # 346], Ex. B, ¶ 37; *Defendants' Reply* [Dkt. # 347], at 8). Notably, plaintiff, too, used the same "approximately ninety degree" language in his proposed instruction. (*Plaintiff's Response* [Dkt. # 346], Ex. C).

Now, the defendants have moved for summary judgment that they have not infringed claim 12. Essentially, they base their argument on evidence that "approximately ninety degrees" must be limited to no further than five degrees from perpendicular and evidence that their coupler's threads are at eighty degrees – or ten degrees off perpendicular. But it is a tardy argument that confuses the phase of the case where the claim is construed – which defendants agree is over – with the phase of the case where the issue of infringement is resolved by the trier of fact.[1] Moreover, even if defendants were in the right phase of the case at the right time, their evidence – most notably the testimony of the plaintiff and a snippet of prosecution history – would not entitle them to summary judgment on the issue of claim construction. As it stands, this is nothing more than a back-door attempt to have a Markman hearing that the defendants already agreed was unnecessary and renege on their agreement as to the construction of claim 12 and its accompanying jury instruction. The motion must be denied.

There are two steps in an infringement analysis. The first entails determining the meaning and scope of the patent claims asserted to be infringed, while the second entails comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments,*

---

[1] At a recent hearing, when counsel for the defendants were repeatedly asked whether they were asking for a Markman hearing, they said they were not. They were not quiet so positive when asked whether the claim needed to be construed. To that question, no definitive answer was given despite repeated inquiries. What they grudgingly said was that this could all be resolved with a short discussion in chambers. When asked how that differed from a construction, no answer was forthcoming. In the end, the argument was that it was simply a question of wording. Significantly, counsel for the plaintiff repeatedly conceded that they accepted the defendants' "wording." Thus, the semantic dispute is resolved.

*Inc.*, 517 U.S. 370, 384 (1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995). Claim construction in this case is, according to *both* sides, over. That is what the defendants led Judge Coar to believe, in any event. Yet, the defendants' motion is inundated with contentions regarding the meaning of claim 12's phrase "approximately perpendicular" – which, as even the defendants point out, the parties have agreed, for better or worse, is "approximately 90 degrees." (*Defendant's Reply* [Dkt. # 347], at 8).[2] Over and over again throughout their submissions, defendants talk about the "meaning" of the claim or the "construction" of the claim:

> In *construing* the term "approximately perpendicular" the court may consider "extrinsic" evidence . . . (*Defendants' Memorandum* [Dkt. # 332], at 2 (emphasis supplied));
>
> In this case, [plaintiff] – the inventor of the '726 patent – has offered testimony concerning the established *meaning* of the term "approximately perpendicular." (*Defendants' Memorandum* [Dkt. # 332], at 2 (emphasis supplied));
>
> Plaintiff's understanding in this regard – i.e., a 3-degree angle for the rear face of the thread – does not support a *construction* that "approximately perpendicular" includes a 10-degree angle. (*Defendants' Memorandum* [Dkt. # 332], at 6 (emphasis supplied));
>
> Plaintiff's acquiescence in this regard has legal consequence and may be relied on by the Court in *construing* the claim term "approximately perpendicular." (*Defendants' Memorandum* [Dkt. # 332], at 7 (emphasis supplied)).

"Construction" and "meaning": that's the stuff of Markman hearings – something defendants preferred not to have.

---

[2] "Approximately" is, of course, a word of approximation, like "generally" or "substantially." *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed.Cir. 2003). The Federal Circuit has explained that "while ideally, all terms in a disputed claim would be definitively bounded and clear, such is rarely the case in the art of claim drafting." *Anchor*, 340 F.3d at 1311. Such words of approximation are commonly used in patent claims to avoid a strict numerical boundary. 340 F.3d at 1310-11. It would seem that a strict boundary, despite the words of the claim, is just what defendants are after in their motion for summary judgment.

All of the cases the defendants have compiled to support their motion for summary judgment deal with *claim construction*, not infringement. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed.Cir. 1995)(explaining claim construction at length); *Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1347 n.5 (Fed.Cir. 2008)("The testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established *meaning* of particular terms in the relevant art."(emphasis supplied)); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 886 (Fed.Cir. 2008)("'. . . prosecution history can often inform the *meaning* of the claim language . . .'" (quoting *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed.Cir.2005)) (emphasis supplied)); *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1314 (Fed.Cir. 2007)(". . . we turn to the prosecution history of the Ormco patents, and other patents from the same family, to determine if there are statements there that should further inform our *construction* of the claims." (emphasis supplied)); *ICU Medical, Inc. v. RyMed Technologies, Inc.*, 673 F.Supp.2d 228, 231, 2009 WL 4496023, *1 (D.Del. 2009)("A court may consider extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treatises, in order to assist it in understanding the underlying technology, the *meaning* of terms to one skilled in the art and how the invention works." (emphasis supplied)); *Koepnick Medical & Educ. Research Foundation, L.L.C. v. Alcon Laboratories, Inc.*, 347 F.Supp.2d 731, 742 (D.Ariz. 2004)("Federal Circuit authority holds that a patentee's acquiescence in the patent examiner's reason for allowance, and the examiner's narrow view of the patentable subject matter, may nevertheless be relied on for purposes of *claim construction*." (emphasis added)).

Yet, in response to the plaintiff having pointed this out in his response brief, the defendants, "chang[ing] positions as nimbly as if dancing a quadrille," *Orloff v. Willoughby*, 345 U.S. 83, 87

(1953), say that their memorandum is not about claim construction at all. (*Defendant's Reply* [Dkt. # 347], at 7-8). They don't explain why they feel that way, though. If the issue is not claim construction, why cite nothing but cases about claim construction? Such cases do nothing to support the defendants' arguments and certainly do not support their contention that they didn't infringe the patent-in-suit. After all, an argument that is unsupported by *pertinent* authority – like their non-infringement argument – is deemed waived. *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir.2006).

To reiterate, as defendants readily concede, this case is in the second step of the infringement analysis. The first step, claim construction, is a question of law and an issue for the court. The second step, the comparison of the accused device to the patent claims, is a matter for the fact-finder – generally, the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996); *Lazare Kaplan Intern., Inc. v. Photoscribe Technologies, Inc.*, – F.3d –, –, 2010 WL 5176746, *12 (Fed.Cir. 2010). Almost invariably, the court's claim construction will be set out in the jury instructions. The claim construction is most often derived through a Markman hearing, although sometimes, as here, the parties will agree on claim construction and the accompanying jury instruction. In either case, once the claims are construed, it's too late to argue about the meaning of the claims, as the defendants have done repeatedly in their motion. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed.Cir. 2009); *CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1177 (Fed.Cir. 2005).

In *Cordis*, the plaintiff invented a type of intravascular stent, which his patent claimed were "thin-walled." After the claim construction phase of the case, the defendant sought to use the prosecution history of the patent-in-suit to show that the inventor had admitted that stents of a

certain range of thicknesses were not "thin-walled." The trial court disallowed the tactic, as it was effectively arguing claim construction to the fact-finder. The Federal Circuit found the exclusion was proper. *Cordis*, 561 F.3d at 1337. Here, although the defendants had proposed the claim construction and jury instruction for claim 12, and had made no attempt to limit the term "approximately" in any fashion, they now seek to do so with inventor testimony and prosecution history. But if the scope of the term, "thin-walled"cannot be limited after the claim construction phase, neither should the scope of the term, "approximately." The defendants are stuck with "approximately ninety degrees." It's too late to argue for "between eighty-five and ninety degrees."

That being said, the evidence the defendants submit in support of their belated attempt at claim construction would not have been convincing even if brought in the appropriate proceedings. The central piece of evidence consists of excerpts from plaintiff's deposition, during which defendants' counsel asked him what "approximately perpendicular" in the claim language meant. [June 18, 2009] :

Q: Does that mean that it is roughly the 90-degree angle?

A: Yeah. It's somewhere fairly close to 90.

(Defendants' Ex. 5, Minemeyer Dep., at 105-06). A while later in the deposition, an exchange occurred in regard to a drawing that the plaintiff had apparently made of his coupler, although the exact nature of the drawing is specified in neither the defendants' brief nor the excerpts of the deposition defendants submitted with their motion for summary judgment. All that is known from the excerpts is that the drawing discussed was the first drawing the plaintff did of his coupler, in June of 1998. He called it "part of the development process" and "kept working on it." (Defendants' Ex. 5, Minemeyer Dep., at 126).

In any event, when defendants' counsel asked about the threads depicted in that "first" drawing, the plaintiff acknowledged that it was three degrees. The questioning continued:

Q: Would you define three degrees as being approximately perpendicular?

A: Yeah, yeah. I mean, three degrees is not very much.

Q: Would you define five degrees as being approximately perpendicular?

A: Yeah, yeah.

Q: How far would you go?

A: Good question. Probably not a lot past five. You know, you start *getting into 10 or 15*, that's significantly different and you are starting to change it, so – (emphasis added)

Ignoring this testimony, counsel for the defendants then said:

Q: So maybe zero to five, approximately –

To which,. the plaintiff inexactly responded:

A: Somewhere in there.

Q: -- approximately perpendicular.

(Defendants' Ex. 5, Minemeyer Dep., at 127).

Carefully putting aside the immediately previous answer in which the plaintiff defined "approximately perpendicular" as "getting into 10 or 15 [degrees],"the defendants argue that the plaintiff's patent necessarily covers only couplers with threads of "maybe zero to five degrees," and not couplers with threads "a lot past five degrees" or ten or fifteen degrees. The conclusion is plainly not supported by the testimony when read in its full context.[3] Moreover, even if this were

---

[3] When one looks to the testimony in its entirety, which includes the plaintiff's statement that when you start getting "into ten *or* fifteen" degrees, you cease to have angles that are"approximately perpendicular," it simply cannot be said that there is no disputed issue of fact on the meaning of that phrase.

8

a Markman hearing, and the defendants' narrow reading of the deposition testimony were to be fully credited, the defendants' position would be unpersuasive. As the Federal Circuit has explained:

> Whether an inventor's testimony is consistent with a broader or narrower claim scope, that testimony is still limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application. As we have explained, "it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO."

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1346-47 (Fed.Cir. 2008). Even if an inventor's testimony is against his own interest – as the defendants argue plaintiff's is here – it would not be any more reliable than testimony in his interest:

> The inventor might testify to a broad claim scope in order to increase the likelihood of a finding of infringement. The inventor also might testify to a narrower claim scope to avoid a challenge to the validity of the patent. We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction.

*Howmedica*, 540 F.3d at 1347.

Thus, the Federal Circuit holds that inventor testimony is irrelevant to claim scope. *Id.; See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed.Cir. 1995)("This [inventor] testimony about construction, however, amounts to no more than legal opinion-it is precisely the process of construction that the court must undertake. Thus, as to these types of opinions, the court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it.").[4] The exchange between the plaintiff and the defendants'

---

[4] Inventor testimony would, however, be pertinent as a form of expert testimony; for example, as to to understanding the established meaning of particular terms in the relevant art. *Howmedica*, 540 F.3d at 1347 n.5 (citing *Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed.Cir.2005)). Neither party has suggested that "approximately" is a term of art.

9

counsel at the plaintiff's deposition is not enough to justify granting the current motion.

From there, the defendants move to the parties' expert witnesses. They point out that plaintiff's expert reported that "[m]easurements of the rear-facing thread of the [plaintiff's] and [defendants'] couplers was approximately 5 and 10 degrees, respectively . . ." (Defendants' Ex. 6, Kaiser Report, at 9). Defendants add that their expert stated that "disregarding a few minor variations caused by the manufacturing or sectioning process, the angle formed by the rear face of the threads of the [defendants'] couplers is no more than 80 degrees . . . ." (Defendants' Ex. 7, Slavin Report, at 5). So, adjusting for the differences in the reference points the two experts employed, both figured the angle of the rear-facing thread was about 10 degrees. Based on the findings of the two experts, the defendants submit that a 10-degree angle "cannot reasonably be considered the 'approximately perpendicular' measurement required by claim 12." This is actually evidence that wouldn't be relevant in a Markman hearing. It's the type of evidence that could be helpful to a jury determining whether the threads on the defendants' coupler were "approximately ninety degrees." But it doesn't mean that, as a matter of law, the defendants' coupler didn't infringe the patent-in-suit. Reasonable minds may differ as to whether 80 degrees is "approximately perpendicular." *See Anchor Wall Systems, Inc.*, 340 F.3d at 1310-11.

The last bullet in defendants' gun is the prosecution history of claim 20 of the "parent" patent of the '726 patent.[5] Defendants focus on this language from the Patent Examiner in an Office Action:

---

[5] Prosecution history of a patent in the same family as the patent-in-suit can be relevant to the scope or meaning of a claim. *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed.Cir. 2007); *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1314 (Fed.Cir. 2007); *Micrsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed.Cir.2004). Again, this is the realm of *claim construction*, not *infringement*.

> The following is a statement of reasons for the indication of allowable subject matter: The prior art of record does not disclose . . . a continuous first thread a first face and a second face extending from a base of the first thread forming a sharp point, and a rear face disposed ***perpendicular*** to a longitudinal axis through the first thread, wherein the front face is at an angle greater than five degrees with respect to the axis (claim 61) [i.e., asserted claim 12]. . . .

(*Defendants' Memorandum*, at 7; Ex. 11 (Office Action, February 17, 2004, p. 12)(defendants' emphasis)). Defendants point out that the examiner omitted the word "approximately" altogether, and submit that plaintiff made no response to this, but, instead, "acquiesced." This, according to the defendants, means plaintiff must be held to a very restrictive view of "approximately perpendicular."

But the claim, as allowed, *does* include the word "approximately." That was never abandoned or disavowed. Acquiescence for these purposes would have to have involved plaintiff "clearly and unambiguously disclaim[ing] or disavow[ing] an[] interpretation during prosecution in order to obtain claim allowance." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed.Cir. 2005); *see also Verizon*, 503 F.3d at 1306; *Microsoft*, 357 F.3d 1340, 1350. Here, the plaintiff neither narrowed the claim nor surrendered subject matter. Further, that the plaintiff failed to respond to the omission – if that can truly be said, as the omitted word is part of the patent – is not the same as acquiescence.

Inferences from silence are generally perilous. Posner, Cardozo: A Study In Reputation, 37 (1990); *Coleman v. Interco, Inc. Division Plans*, 933 F.2d 550, 552 (7th Cir. 1991). Indeed, silence generally is so ambiguous that it is of little probative force, inviting speculation as to its meaning. *United States v. Hale*, 422 U.S. 171, 176 (1975). Often, silence is just that: silence. In the context of situations like that presented in the instant case, courts have held that silence regarding the apparent omission was not acquiescence. *Salazar*, 414 F.3d at 1345; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,, 535 U.S. 722, 727 (2005) ("When the patentee *responds* to the

11

rejection by narrowing his claims, this prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent." (emphasis added)); 535 U.S. at 734 ("[A patentee's] *decision to forgo an appeal and submit an amended claim* is taken as a concession that the invention as patented does not reach as far as the original claim." (emphasis added)); 535 U.S. at 740 ("A patentee's *decision to narrow his claims* through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." (emphasis added)); *See 3M Innovative Props, Co. v. Avery Dennison Corp.,* 350 F.3d 1365, 1373-74 (Fed. Cir. 2003)(" 'Prosecution history ... cannot be used to limit the scope of a claim unless the *applicant* took a position before the PTO.' *Schwing GmbH v. Putzmeister Aktiengesellschaft,* 305 F.3d 1318, 1324-25 (Fed.Cir. 2002)(emphasis added). An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization."). So even if this were the time and place for claim construction, defendants' argument would fail.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment on the question of infringement of claim 12 [#331] is DENIED.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE:  March 22, 2011