# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN T. ("TOM") MINEMYER**, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 07 C 1763** |
| **v.** | ) | |
| | ) | **Magistrate Judge Cole** |
| **B-ROC REPRESENTATIVES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Under the Federal Rules of Evidence, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Rule 402. Although relevant, evidence may be excluded if the court concludes that its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Rule 403. These principles are applicable in patent cases no less than in any other, *see e.g., Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1284 (Fed. Cir.2011); *Magnivision, Inc. v. Bonneau Co.,* 115 F.3d 956, 961 (Fed.Cir. 1997), and inform the analysis of the evidentiary question before the court.[1]

---

[1] A district court's decision to exclude or admit evidence is reviewed under the law of the regional circuit. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d 1374, 1379 (Fed.Cir.2010). The Seventh Circuit, like most other Circuits, reviews such decisions for abuse of discretion and will reverse "only if no reasonable person would agree with the trial court's ruling. *Maher v. City of Chicago,* 547 F.3d 817, 823 (7th Cir.2008). Evidentiary decisions are reviewed deferentially. *Bose Corp. v. JBL, Inc*., 274 F.3d 1354, 1360 (Fed Cir.2001).

To satisfy the requirement of Rule 401, the evidence need not be conclusive on a given point or have great probative weight.  As Professor McCormick phrased it, "a brick is not a wall."  It is enough that the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Rule 401.  *See generally Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 387-388 (2008); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993); *Huddleston v. United States,* 485 U.S. 681, 691 (1988); 1 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 401.04[2] [b].

It is the defendants' contention that evidence of events occurring before the United States Patent and Trademark office in February 2004 is admissible in this case because it is relevant to the question of willful infringement.  The extensive evidence that the defendants seek to have admitted was itemized in a jury instruction that asked that I take judicial notice of the following:

10.     On February 17, 2004, a Patent Examiner for the United States Patent and Trademark Office issued an office action concerning the '726 Patent. (Office Action, February 17, 2004, Dkt. 305-12).

11.     On May 17, 2008, Plaintiff filed a response to the PTO's February 17, 2004 Office Action. (Pl.'s Resp. to Office Action, May 17, 2004, Dkt 305-13).

12.     In the February 17, 2004 Office Action, the Examiner prosecuting the '726 Patent provided the following reasons for allowance of asserted claim 12 [which is one of the four claims that will be presented to the jury]:

> The following is a statement of reasons for the indication of allowable subject matter: The proper art of record does not disclose...a continuous first thread a first face and a second face extending from a base of

2

the first thread forming a sharp point, and a rear face disposed perpendicular to a longitudinal axis through the first thread, wherein the front face is at an angle greater than five degrees with respect to the axis (claim 61) [i.e., asserted claim 12]....

(Office Action, February 17, 2004, p. 12, Dkt. 30512).

13.     In his February 17, 2004 reasons for allowance, the Examiner used the term "perpendicular," but did not use the terms "approximately" or "approximately perpendicular." (Office Action, February 17, 2004, p. 12, Dkt. 305-12).

14.     During prosecution of the '726 Patent, the Examiner initially rejected prosecution claim 54 as obvious, but then allowed Plaintiff to "add" the additional elements of dependent prosecution claim 61 to the existing elements of rejected claim 54 to form a new, independent prosecution claim 61, which issued as claim 12. (Office Action, February 17, 2004, p. 12, Dkt. 305-12).

15.     In the February 17, 2004 Office Action, the Examiner stated: "Claims 59-65 and 70-72 are objected to as being dependent upon a rejected base claim [i.e., claim 61 depended from rejected base claim 54], but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." (Office Action, February 17, 2004, p. 12, Dkt. 305-12).

16.     In his May 17, 2004 Response to the February 17, 2004 Office Action, Plaintiff did not object to the Examiner's reasons for allowance. (Pl.'s Resp. to Office Action, May 17, 2004, p. 13, Dkt. 305-13).

17.     In his May 17, 2004 Response to the February 17, 2004 Office Action, Plaintiff complied with the Examiner's request that certain claims be modified to gain allowance, stating: "The Office Action indicated that Claims 5-65 and 70-72 would be allowable if rewritten in independent form. Claims 59, 61, 64, 65, 70 and 71 have been rewritten in independent form and should therefore be in condition for allowance." (Pl.'s Resp. to Office Action, May 17, 2004, p. 13, Dkt. 305-13).

3

18.     Plaintiff's '726 Patent is a continuation of, and shares the same specification with, Plaintiff's '772 Patent.  ('726 Patent, cover page)

19.     In the February 17, 2004 Office Action, the Examiner prosecuting the '726 Patent provided the following reasons for allowance of, among other claims, independent asserted claim 1 and dependent asserted claims 2, 3, and 4:

>       The following is a statement of reasons for the indication of allowable subject matter:  The prior art of record does not disclose [1] a plurality of teeth having a point disposed thereupon, and [2] the teeth configured that an axis through the point of each tooth is tapered with respect to a central longitudinal axis of the conduit coupling (claim 59).

(Office Action, February 17, 2004, p. 12, Dkt. 305-12).

20.     In the February 17, 2004 Office Action, the Examiner rejected as obvious claims 2, 3, and 4 in their original form, stating:

>       In regards to [prosecution] claim 55 [now asserted claim 2], Hunt '907 discloses a sealing surface disposed between the threaded portion and the protrusion; and the sealing surface operable to cooperate with an exterior surface of the first conduit to form a generally fluid tight seal therebetween.

>       In regards to [prosecution] claim 56 [now asserted claim 3], Hunt '907 discloses the sealing surface being tapered and operable to compress the exterior surface of the first conduit as the first conduit is threadably installed within interior surface.

>       In regards to [prosecution] claim 57 [now asserted claim 4], Hunt '907 discloses the sealing surface being tapered at approximately one and one-half degrees with respect to a central longitudinal axis of the conduit coupling (at one point along the surface).

(Office Action, 2/17/2004, at 9-10, Dkt. 305-12.)

21.    In the February 17, 2004 Office Action, the Examiner determined that the Hunt '907 Patent disclosed all of the elements of prosecution claim 54 in its original form (claim 1) other than a tapered thread, stating: "In regards to claim 54, Hunt '907 discloses the claimed invention except for the threaded portion being tapered with respect to a central longitudinal axis of the first connector.  Reimart teaches a threaded portion being tapered with respect to a central longitudinal axis of the first connector. . . ."  (Office Action, 2/17/2004, at 9-10, Dkt. 305-12.)

22.    Plaintiff neither objected to nor rebutted the Examiner's findings described in paragraph 33 above.  (Pl.'s Resp. to Office Action, May 17, 2004, Dkt. 305-13.)

23.    In the process of initially rejecting, as obvious, prosecution claims 54 (which ultimately issued after amendment as claim 1), 55 (which ultimately issued after amendment as claim 2), 56 (which ultimately issued after amendment as claim 3), and 57 (which ultimately issued after amendment as claim 4), the Examiner stated:

       It would have been obvious to one having ordinary skill in the art at the time the invention was made to fabricate a tapered threaded portion with respect to a central longitudinal axis of the first connector, since it was known in the art that a variety of threads are known for use in various thread structures.

(Office Action, 2/17/2004, at 9-10, Dkt. 305-12.).

Paragraphs 24 - 26 of the instruction asked that I also take judicial notice that:

24.    On March 10, 2010, Defendants filed Doc. # 293, Defendants.' Mot. for Summ. J. of Non-Infringement of Claim 12 and Invalidity of Claims 2, 3, and 4, March 10, 2010, and asserted the invalidity and noninfringement defenses set forth therein.

25.    On June 2, 2010, Defendants filed Doc. # 303, Defendants.' Mot. for Summ. J. of Non-Infringement of Claim 12 and Invalidity of Claims 2, 3, and 4, June 2, 2010, and asserted the invalidity and noninfringement defenses set forth therein.

> 26. On November 8, 2010, Defendants filed Doc. # 331, Defendants.' Mot. for Summ. J. of Non-Infringement of Claim 12 of the '726 Patent, and asserted the noninfringement defenses set forth therein.

Following the instruction was an explanatory paragraph that stated that the defendants intended to introduce theses facts at trial "as evidence that there are legitimate noninfringement arguments and credible invalidity arguments concerning claims 2, 3, 4 and 12 of Plaintiff's patent." No further explanation was given, and no case was cited at the end of the proposed instruction in support of it. The plaintiff, of course, objected, not because the matters were outside the scope of proper judicial notice, but because they were irrelevant and otherwise excludable under Rule 403.

The defendants' response was that in order to establish willful infringement, the plaintiff must show by clear and convincing evidence that the defendants acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. *ILOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed.Cir.2011); *Powell v. The Home Depot*, 633 F.3d 1221, 1236 (Fed.Cir.2011); *In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed. Cir.2007).[2] The 2004 office actions, it was argued, were relevant because they supposedly tended to show an absence of objective recklessness. (Why that was so was not adequately explained). I concluded that this evidence was irrelevant under Rule 401 and thus was inadmissible under Rule 402. To the extent it could be deemed relevant, I concluded that it should be excluded under Rule 403 because it ran afoul of each of the 403 factors. Further reflection has not changed that assessment.

---

[2] Under the objective prong of *Seagate*, the state of mind of the accused infringer is irrelevant. Under the subjective prong of *Seagate*, a plaintiff must also prove that the objectively defined risk was either known or so obvious that it should have been known to the accused infringer. *Google*, 631 F.3d at 1377.

The cases are virtually uniform in holding that office actions at the PTO are not relevant on the question of patent invalidity or willful infringement. The occasional outlier has nonetheless excluded evidence involving office actions pursuant to the various considerations enumerated in Rule 403. The cases recognize that interim acceptances, rejections and adjustments are the norm at the PTO. Indeed, the Federal Circuit has stressed that initial rejection by the PTO of original claims that were later confirmed on re-examination is so commonplace that they "'hardly justif[y] a good faith belief in the invalidity of the claims.'" *Hoechst Selanese Corp. v. BP Chems Ltd,* 78 F.3d 1575, 1584 (Fed. Cir. 1996). *See Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939, 942 (Fed Cir.1991); *DataQuill Ltd. v. High Tech Computer* Corp., 2011 WL 6013022, *14-15 (S.D.Cal. 2011); *Belden Technologies, Inc. v. Superior Essex Communications, LP*, 802 F.Supp.2d 555 (D.Del. 2011); *ePlus, Inc. v. Lawson Software, Inc.*, 2011 WL 3584313, *8 (E.D.Va. 2011); *Tesco Corp. v. Weatherford Intern., Inc.*, 750 F.Supp.2d 780, 794 (S.D.Tex.2010); *SRI Intern., Inc. v. Internet Sec. Systems, Inc.*, 647 F.Supp.2d 323, 356 (D.Del. 2009); *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 762 F.Supp.2d 710, 718 (D.Del. 2011); *Anchor Wall Systems v. Rockwood Retaining Walls, Inc.,* 610 F.supp.2d 998, 1016 (D.Minn. 2009); *Krippelz v. Ford Motor Co.*, 675 F.Supp.2d 881, 894 (N.D.Ill. 2009), *rev'd on other grounds*, _F.3d_, 2012 WL 248000 (Fed.Cir. 2012);[3] *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 2009 WL 3822694, 2 (S.D.Cal. 2009).[4]

---

[3] In reversing the district court's denial of the defendant's motion for judgment as a matter of law on the question of invalidity, the Federal Circuit expressly declined to address the court's decision to exclude evidence regarding re-examination proceedings in the PTO. *Krippelz,*. 2012 WL 248000, at * 7.

[4] In the context of summary judgment, one court has concluded that where the PTO preliminarily determines that there are substantial questions of validity, there can be no willful infringement. *Pivonka v. Central Garden & Pet Co.*, 2008 WL 486049 (D.Colo. 2008) granted the defendant's motion for summary
(continued...)

Accordingly, as explained at the pretrial conference, the evidence of the 2004 events at the PTO are not relevant to the question of willful infringement and thus are properly excluded under Rule 402. As also discussed at great length at the pretrial conference, the evidence is properly excludable under Rule 403. As the Federal Circuit has explained, among the purposes of the Federal Rules of Evidence is assuring that irrelevant evidence does not unfairly prejudice the trial. *Magnivision, Inc*., 115 F.3d at, 961. The evidence the defendants seek to introduce is gravid with unfair prejudice and the potential for jury confusion and for wasting time. Courts routinely refuse to permit evidence of reexamination proceedings to be introduced before a jury, fearing that it will confuse, distract, mislead, and unfairly prejudice the jury. *See, e.g.,* the cases cited at 7, *supra*; *Cordis Corp. v. Boston Scientific Corp.,* 2010 WL 331792, at *3 (D.Del.2010); *Presidio Components Inc.,,* 2009 WL 3822694, at *2; *Krippelz*, 675 F.Supp.2d at 894.

It is idle to suggest that the complicated evidence the defendants seek to bring before the jury on the question of willful infringement will not hopelessly confuse them. Data from the U.S. Patent and Trademark Office reflects that 92% of *ex parte* requests for re-examination have been granted since July 1, 1981. *See* Christopher B. Seaman, *Willful Patent Infringement and Enhanced Damages After In re Seagate: An Empirical Study*, 97 Iowa L.Rev. 417, 461 n. 243 (2012).[5] Given the fact

---

[4](...continued)
judgment with respect to the claim of willful infringement based on the PTO's preliminary order determining that the claims were unpatentable as obvious *and* the evidence showed that the defendants consulted with patent counsel after learning of the patents. Absent this latter fact, it is not clear what the ruling would have been. *Lucent Technologies, Inc. v. Gateway, Inc,.* 2007 WL 6955272, 7 (S.D.Cal. 2007) granted the defendant's motion for summary judgment with respect to the claim of willful infringement based on the PTO's reexamination orders. The court made clear that a reexamination order will not always warrant summary judgment in favor of a defendant. 2007 WL 6955272, 7. Neither case cited *Hoechst Selenese Corp*, and neither involved Rule 403.

[5] The annual report of the Patent and Trademark Office for 1994 states that 89% of the reexamination
(continued...)

that office actions are the norm and do not remotely presage the outcome of the patent process, evidence of the kind involved here will not be helpful to the jury in evaluating the question of willfulness. Quite the contrary.

The evidence will do no more than invite speculation of the most obvious sort, contrary to the Federal Circuit's repeated admonition that juries may not base judgments on speculation and conjecture. *Wordtech Systems, Inc v. Integrated Networks Solutions*, *Inc*., 609 F.3d 1308, 1319 (Fed.Cir.2010); *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1301, 1334 -1335 (Fed.Cir.2009); *Alza Corp. v. Mylan Laboratories, Inc.,* 464 F.3d 1286, 1290 (Fed.Cir.2006); *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed.Cir.1996); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1024 (Fed.Cir.1989).[6]

The defendants' evidence also poses the intolerably high risk that the jury will engage in the kind of hindsight analysis – perhaps unconsciously – that the Federal Circuit finds impermissible and that warrants the exclusion of evidence under Rule 403. The defendants insist that all the Rule 403 considerations can be dealt with through limiting instructions. It is certainly true that "[t]he law... presumes that juries have the capacity not to be over-awed by the evidence and to follow appropriate instructions from the court. [citations omitted]. Indeed, that capacity is the very premise on which the jury system" and various provisions of the Federal Rules of Evidence rest, .as an earlier

---

[5](...continued)
requests were granted that year, but only 5.6% of the reexamined patents were rejected with no claims remaining after reexamination. *Hoechst Selanese Corp.*, 78 F.3d at 1584.

[6] The Federal Circuit's refusal to allow conjecture as a basis for decision or the drawing of inferences is consistent with the long-standing rejection by all the Circuit Courts of Appeals of speculation "as a substitute for proof." *United States v. Landry,* 257 F.2d 425,431 (7th Cir. 1958). *Accord, In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007). Speculation is not evidence and "hypothesis is not proof. " *Louth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005). "The trouble with absence of evidence is that it is consistent with any hypothesis." *United States v. Holland*, 445 F.2d 701, 793 (D.C.Cir. 1971).

opinion in ths case noted. *Minemyer v. B-Roc Representatives, Inc.,* 2011 WL 1113146, 3 (N.D.Ill.2011).

But there are limits to a jury's capacity to make the kind of exceedingly fine distinctions that would be required by the evidence the defendants seek to offer. There are times, and this is one of them, when a limiting instruction is pointless. *Bruton v. United States,* 391 U.S. 123 (1968); *United States v. Mannie,*509 F.3d 851 (7th Cir. 2007). It is no more than an admonition to the jury to perform a "mental gymnastic which is beyond not only their powers, but anybody else's," *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.1932) (L. Hand, J.), as in Mark Twain's story of the boy told to stand in a corner and not think of a white elephant. *United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 656 (2d Cir.1946) (Frank, J., dissenting). To tell someone not to "think about the beast is to assure at least a fleeting mental image." *United States v. DeCastris,* 798 F.2d 261, 264 (7th Cir.1986).

It is the defendant's contention that although there is not an invalidity defense to the four claims at issue in this case – the question is whether there has been infringement – the jury has the capacity to consider the office action proceedings in 2004 solely as they bear on where there existed credible defenses to validity and thus whether any infringement was willful. The jury will have the capacity, the defendants insist, to be able to find that the defendants infringed the very patent that they have simultaneously determined may well be invalid – a determination inherent in the finding that there were credible invalidity defenses.

To borrow Justice Cardozo's famous phrase, "[d]iscrimination so subtle is a feat beyond the compass of ordinary minds." *Shepard v. United States,* 290 U.S. 96, 104 (1933). "It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. They have their source

very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Id.* That is the case here. *Compare Callaway Golf Co. v. Acushnet Co.* 576 F.3d 1331, 1342 (Fed Cir.2009)("We see no error in the district court's exclusion of the test-ball testimony on the issue of obviousness. The introduction of evidence concerning the test balls ran a substantial risk of leading the jury towards the inappropriate use of hindsight and towards unduly weighting Acushnet's arguments concerning motivation to combine the prior art; the likely outcome, as the district court perceived it, was the jury understanding Acushnet's argument concerning the combination of prior art as '[w]e did it, here it is, anyone can do this.'").

The evidence proposed by the defendants is anything but self-explanatory and self-evident. No jury will understand either its significance or its inherent limitations. It will require explanation by some expert, lest the jury be overwhelmed by a welter of facts that it cannot comprehend. Fairness will then the plaintiff to respond with its own expert testimony as well as permitting him to put on extended evidence regarding how the examination process at the PTO works, the insignificance (from his perspective) of the complicated and diverting evidence offered by the defendants, the necessarily equivocal and evanescent nature of office actions, and a host of related issues that could easily result in a trial within the broader framework of the case, itself.

To alleviate the problem posed by the office action evidence – assuming for the sake of argument that it was relevant – and other evidence purportedly relevant solely to the question of willfulness, I suggested that the issue of willful infringement be bifurcated from the trial on infringement. The defendants agreed, but plaintiff did not, contending that he would be prejudiced were the case to be bifurcated literally on the eve of trial. I concluded in a minute order that the

11

refusal to agree to bifurcation constituted a waiver of any Rule 403 argument that might be made. (Dkt. #411, Jan. 20, 2012). Further reflection has persuaded me that that order was erroneous, and it is hereby vacated.

Our system of justice is adversarial, and judges are not to play the "proactive" role of a Continental European judge or to advance a theory without according the affected party an adequate opportunity to respond. *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992). Nor in the usual case ought a judge to go beyond the arguments of counsel as expressed in the briefs. *See Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008)("The benefit of adversarial presentation is a major reason why judges should respond to the parties' arguments rather than going off independently."). My suggestion at the January 20th pretrial conference session that there was a waiver of any Rule 403 objection as a consequence of the plaintiff's refusal to agree to bifurcation ran afoul of these principles, and accordingly the order of January 20 is vacated.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 2/2/12