## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN T. ("TOM") MINEMYER**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 07 C 1763** |
| **v.** | ) | |
| | ) | **Magistrate Judge Cole** |
| **R-BOC REPRESENTATIVES, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

After a number of fits and starts, trial is scheduled to begin in the instant case in which the plaintiff charges the defendants with having willfully infringed his patent for underground couplers. He intends to introduce at a 16-page report that he contends was generated by Verizon in connection with its purchase of couplers manufactured by the defendants. The document, which was created by what Verizon called a "Cross-Functional Team" comprised of 21 members – at least according to the document – is entitled "Innerduct Couplers/Caps, RFP No. R0603358, Contract - Recommendations." The document, which is in Power Point form, briefly describes the product involved (innerduct couplers), the product history, the "incumbent suppliers" (one of which is defendant, Duraline Corporation) adverts to the RFP issued to 12 suppliers, and, in a few brief sentences, summarizes the "advantages" and "disadvantages" of each bidder and the Team's recommendations, by bidder. The report sets forth in chart form a "savings analysis," and in bullet-point, single line statements gives the rationale for supplier selection, and the "next steps" to be taken in light of the Team's recommendations for which vendors' bids are to be accepted.

The defendants vigorously object to the introduction of the report at trial on two grounds. First, they contend that the report has not been properly authenticated under Rule 901,  Federal

Rules of Evidence and thus must be excluded. They also contend that the Verizon report is hearsay

and thus must be excluded from evidence. Rule 802, Federal Rules of Evidence. The plaintiff is

equally adamant that there has been more than sufficient authentication, and that the report is not

hearsay since it will not be used for the truth of the notation "Bid Lozon products," on page 8 of the

report, which briefly itemizes 10 "Advantages" of the "Duraline coupler." Rather, the plaintiff

intends to draw certain inferences from that entry which it contends support its damage theory and

other components of its case. The inferences the plaintiff will seek to draws from the entry are relied

on by the plaintiff's damage expert.[1] Alternatively, the plaintiff contends that the report qualifies

for admission under the exception to the hearsay rule for records of a regularly conducted activity.

Rule 803(6), Federal Rules of Evidence.

## A.

The threshold question that must be answered is whether the Verizon report has been

properly authenticated. That is, is it what it purports to be? If it cannot be authenticated, it is

inadmissible, quite apart from the hearsay rule. The defendants adamantly deny that the document

satisfies Rule 901, while the plaintiff scoffs at the notion that it is anything other than a report issued

by Verizon at or near the close of the bidding process that identifies the successful bidders in

connection with Verizon's purchase of underground couplers – a matter about which there is no

dispute – and, among other things, laconically summarizes the perceived advantages and

disadvantages of each. To make his case under both Rule 901 and the hearsay rule, the plaintiff has

submitted a certification (actually three) pursuant to Rule 902(11) from one of the senior members

---

[1] As discussed in more detail *infra*, the defendants have been aware of this aspect of the plaintiff's damage expert for three years and have raised no objection under *Daubert* or Rule 703 until now.

of the "Cross Functional Team" purportedly issuing the report.

**B.**

Federal Rule of Evidence 901(a) requires, as a condition precedent to admissibility, "evidence sufficient to support a finding that the matter in question is what its proponent claims." Authentication can be established in a variety of ways, including by "[t]estimony of [a] witness with knowledge...that a matter is what it is claimed to be[,]" Rule 901(b)(1), or by distinctive characteristics such as "[a]ppearance, contents, substance, [or] internal patterns... taken in conjunction with circumstances." Rule 901(b)(4).  Phrased differently, authentication can be established by circumstantial evidence.  *See, e.g.*, *United States v. Hull*, 74 Fed.Appx. 615, 620, 2003 WL 21949581, 3 (7th Cir. 2003);  *United States v. Dumeisi,* 424 F.3d 566, 574 (7th Cir. 2005)*; United States v. Elkins,* 885 F.2d 775 (11th Cir.1989).

The affidavits of Cynthia Williams are more than sufficient to authenticate the Verizon report under Rule 901(b)(1), and the circumstantial evidence is overwhelming that this is indeed a report created by Verizon that summarizes the awards to various bidders in connection with the particular bid involved in this case.  In her affidavit of February 2, 2012  – there are two earlier versions – Ms. Williams states that she is an employee of Verizon, and a member of the "Cross-Functional Team that generated the 16-page document entitled "Innerduct Couplers/Caps, RFP No. R0603358, Contract - Recommendations." [Docket No. 420 – 2].  A review of the report (plaintiff's Exhibit 40) reveals that  there were 21 members of the Team.  Mr. Williams is the second listed name.

Ms. Williams' first affidavit was dated July 23, 2009 and was written on Verizon stationary. In it, she said that she was the custodian of records for Verizon and in that capacity certified that the copy of the16-page document entitled "Innerduct Couplers/Caps, RFP No. R0603358, Contract -

Recommendations" that was attached to her affidavit was a true and accurate copy of the original document maintained by Verizon in the actual course of business. She went on to say it is Verizon's ordinary practice to maintain such records and that the records were made contemporaneously with the transaction and events it described or within a reasonable time thereafter. The second affidavit was prepared in January 2012 and again stated that Ms. Williams was an employee of Verizon and a member of the Cross Functional Team the generated the 16-page Verizon report.

Quite apart from Ms. Williams' certifications, the evidence more than suffices to authenticate circumstantially the Verizon report. The report was produced in response to a subpoena issued several years ago by the plaintiff to Verizon that broadly called for documents relating to the particular bid identified in the report and that is involved in the instant case.[2] That alone is sufficient authentication. *Cf.*, *Dumeisi,* 424 F.3d at 575; *Minemyer,*. 678 F.Supp.2d at 709.

Moreover, the contents of the document obviously involve the bids that were undeniably submitted to Verizon in connection with its purchase of Innerduct Couplers. It is the sale of couplers by Duraline to Verizon that the plaintiff alleges infringed his patent. The defendants conceded at oral argument that the various references to Verizon's award of bids was accurate, and that the other information was, in the main, confirmed by other the evidence obtained in the extensive discovery in the case.

Indeed, during the course of the oral argument on the authenticity of the Verizon report, I reviewed with the defendants' three lawyers each page and each line of the document. I asked

---

[2] The subpoena sought "all documents concerning plastic reverse-threaded couplers supplied under agreement with ... [defendant] Dura-Line Corporation, including the agreement and ... communications and documents sufficient to identify all products bid...."*Minemyer*, 678 F.Supp.2d at 709.

4

whether, based on the discovery that the parties had conducted in this case, the defendants could say that there were any inaccuracies in any itemizations or entries made in the report. With the single exception of the statement on page 8, which is devoted to Duraline, the defendants could not say that there were any inaccuracies. The only entry to which they objected was the following: "Advantages – Bid Lozon Products." Finally, no other report or document was produced by Verizon in response to the subpoena that would have called into question the authenticity of the Verizon report or called into question any of the entries in the document.

Although the defendants have had for three years an affidavit from Mr. Cliff Ginn, a Verizon employee who it is conceded by the defendants was also a member with Ms. William of the "Cross Functional Team,"[3] there is nothing in that affidavit that questions the authenticity of the report.[4] While the affiant takes issue with the inference the plaintiff seeks to draw from the entry on page 8, "Bid Lozon products," he does not remotely suggest that the report is not what it purports to be or that it is not a report made in connection with the bid with which the report concerns itself.

There is a further, but highly significant, factor that demonstrates conclusively the futility

---

[3] Mr. Ginn's name is third on the list, right below that of Ms. Williams on page 2 of the report, which is captioned "Cross Functional Team Members." (See Plaintiff's Exhibit 40 at 2). Mr. Ginn was responsible for oversight of RFP No. R0603358. The affidavit was submitted in support of the defendants' 2009 motion for summary judgment on the plaintiff's Lanham Act claim to show there was no confusion on the part of Verizon regarding trade dress when it awarded the bid to the defendants. Mr. Ginn's affidavit stated that he was responsible for approving the technical aspects of coupler bids at Verizon, that he was familiar with the bid, that defendants provided samples of their couplers-as opposed to plaintiff's couplers, which they had previously supplied-to indicate what they were bidding, and that there was no confusion at Verizon about the source of the product. Mr. Ginn's evidence was not rebutted by the plaintiff. *Minemyer,* 678 F.Supp.2d at 711. *See infra* at 11-12.

[4] At the oral argument, counsel for the defendants claimed that the Ginn affidavit supported their argument that the report had not been adequately authenticated. I asked her to read the specific statements that she claimed supported her conclusion. The portions that she read did not do so. While Mr. Ginn may not have agreed with one or more statements in the report and the inferences that might be drawn from them, that fact does not undercut the conclusion that the report is authentic within the meaning of Rule 901.

of the defendants' contention that the Verizon report has not been properly authenticated. In 2009, the plaintiff's damage expert issued his report, which in part relied on the notation on page 8 of the Verizon report. The defendants made no claim then or over the next three years that that reliance was improper because the report had not been authenticated. Of course, were the report something other than what it purported to be, one would have expected an appropriate motion under *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1993) to strike that portion of the expert's report that relied on the Verizon report and to bar that portion of his testimony at trial. After all, if the report was not authentic, the expert could not rely on it for anything.

Rather than questioning the authenticity of the Verizon report, the defendants chose to have their expert file a report that called into question the conclusions reached by the plaintiff's expert. Of course, that was a perfectly acceptable approach and left the ultimate question of who was right to the jury. But given the skill of the defendants' team of lawyers and their indefatigable efforts in pursuing every avenue of relief on their clients' behalf on every conceivable issue in this case, had there been the slightest concern about the authenticity of the Verizon report such a motion would have been made. That it was not is a matter of significance. *Compare, Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008) (Posner, J)("[I]f there is an executed standstill agreement, one would expect an allegation to that effect. There is none. The complaint's silence is deafening.").

The next question is whether the Verizon report is inadmissible hearsay. The defendants insist that it is and thus must be excluded. Rule 802. The plaintiff is equally adamant that it is not hearsay since the report will not be used for the truth of the matters asserted in it. Alternatively, the plaintiff contends that the report qualifies for admission under the exception to the hearsay for records of a regularly conducted activity. Rule 803(6).

6

### C.

The hearsay rule has baffled judges and lawyers alike for more than three centuries. Evidence scholars have groused about the rule's "unintelligible" and "obtuse" qualities. *See* John M. Maguire, *The Hearsay System: Around and Through the Thicket*, 14 Vand.L.Rev. 741 (1961); James McElhaney, *The Heart of the Matter*, March 2003 ABA Journal, 51-52; and distinguished judges have adverted to the Rule's "complexities." *Czerkies v. U.S. Dept. of Labor*, 73 F.3d 1435, 1446 (7th Cir. 1996)(Posner, J.). The instant case has not escaped the rule's clutches. Quite the contrary.

It is the parties' view that the hearsay rule is central to the resolution of the admissibility of the Verizon report. If the Verizon report is not offered for the truth of the matters asserted, the hearsay rule is not a bar to its admission, and the only question is whether the nonhearsay purpose for which the evidence is offered is relevant under Rule 401. *Tennessee v. Street*, 471 U.S. 409 (1985); *United States v. Harvey*, 959 F.2d 1371, 1375 (7th Cir. 1992); *Minemyer v. R-Boc Representatives, Inc.*, 678 F.Supp.2d 691, 709 (N.D.Ill.2009). If the report is being offered for the truth of the matters asserted, it is hearsay, and the question is whether it fits within one of the myriad hearsay exceptions, such as Rule 803 (6) and/or Rule 803(3).

It is the plaintiff's position that the Verizon report is not being offered for the truth of the matters asserted, but merely to show that the statement, "Bid Lozon products," was made by the Verizon team in the report. It is the plaintiff's theory that that statement shows, *inter alia,* that there was some measure of confusion on Verizon's part and that fact, itself, is relevant to the plaintiff's theory of the case. That usage does not trigger the hearsay rule. *See discussion in Minemyer*, 678 F.Supp.2d at 709, 710 n. 10.

Non-truth-related purposes for which out-of-court statements may be received are often

loosely divided into four familiar (but non-exclusive) categories. *See United States v. Arteaga*, 117 F.3d 388, 397 (9th Cir. 1997)(Kozinski, J.): a statement that, itself, has legally operative effects or is a circumstance bearing on conduct affecting a party's rights – so-called "verbal acts," *United States v. Di Maria*, 727 F.2d 265, 270 (2nd Cir. 1984)(Friendly, J.); Rule 801(c), Advisory Committee Notes;[5] statements offered for their effect on the hearer or to provide background facts; statements that circumstantially (rather than directly) show the declarant's state of mind, *United States v. Dupre*, 462 F.3d 131 (2nd Cir. 2006); and statements offered for impeachment.[6]

The defendants contend that even assuming that the Verizon report has been properly authenticated, the report, itself, must satisfy some hearsay exception in order to prove the statements plainly reflected in the report were in fact made. In other contexts, the argument would have validity, but not here. Under the defendants' theory, Rule 803(6) would have to be satisfied before the statement in the authentic report could be used for a nonhearsay purpose. Respectfully, that

---

[5] Statements falling within the category "verbal acts" include: utterances constituting defamation, notice of a fact or condition, utterances exhibiting systematic discrimination, directions to do or refrain from doing something, offers and acceptances in oral contract cases, *Miranda* warnings, threats, solicitation to commit a crime, offering a bribe, and statements claimed to constitute material misrepresentations. Since the only question is whether the statement was made, there is no need to cross-examine the declarant, and the hearsay rule has no application. VI J. Wigmore, Evidence § 1770 at 94 (Chadbourn rev.1976).

[6] *Case v. New York Cent. R. Co.* 329 F.2d 936 (2nd Cir. 1964)(Friendly, J.) illustrates the non-hearsay use of out-of-court statements offered solely to explain why someone did (or did not do) something. There, a witness for the defendant was allowed to testify that he had interviewed various of the plaintiff's co-workers and none admitted knowing anything about the accident involving Mr. Case. The statements were offered solely to prove that the defendant reasonably believed that none of plaintiff's coworkers had any knowledge, thereby providing an innocent reason for their not having been called as defense witnesses. *See also Richardson v. Dougherty County, Ga*, 185 Fed.Appx. 785 (11th Cir. 2006)(result of polygraph test admitted to explain the legitimate, non-discriminatory reason for plaintiff's firing); *Emich Motors Corp. v. GMC*, 181 F.2d 70 (7th Cir. 1950)(cited in Advisory Notes to Rule 801(c))(letters of complaint from plaintiff's customers not hearsay since offered as a legitimate reason for cancellation of dealer's franchise to rebut contention that franchise was revoked for impermissible reasons).

makes no sense.[7]

Two cases will help to put the matter in perspective. Suppose, in a slander case, the plaintiff testifies that X told him that the defendant had "just said to him" that the plaintiff was an incompetent lawyer. Although the defamatory statement – *if made and if proved by competent evidence* – would qualify as a verbal act and thus non-hearsay, unless X testifies, the hearsay rule precludes the plaintiff from testifying about X's rendition of the statement. *See Schindler v. Seiler*, 474 F.3d 1008 (7th Cir. 2007). The reason is obvious. All the plaintiff can say is that X told him about a statement supposedly made by the defendant. Without the ability to cross-examine X, the trier of fact has no basis to determine whether the statement was made.

In *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991), the plaintiffs charged officers of, the City of Los Angeles Police Department and Chief Daryl Gates with violating their civil rights. Certain defendants went to trial first and were awarded $90,000 in damages. At Gates' trial, the plaintiff sought to introduce a statement supposedly made by Chief Gates in which he said Mr. Larez's broken nose not only was not worth $90,000--it wasn't worth anything, and Mr. Larez "was probably lucky that's all he had broken." The district court admitted as proof of the statement, newspaper articles quoting Gates. The Ninth Circuit reversed because introduction of the newspaper articles was barred by the hearsay rule.

 The court of appeals concluded that if the statements actually were made, they could be admissible as evidence of Gates's recklessness and callous indifference and as evidence of the

---

[7]It bears repeating that the defendants have conceded in oral argument that virtually every line on every page of the report is confirmed by and consistent with all the evidence that has been obtained in discovery, and that where they do not know whether a particular statement is accurate, and there are precious few of those, those particular will play no role in either the defendants' or plaintiff's presentation or arguments to the jury.

customs and policies of the LAPD. When offered for those reasons, the statements were not offered to prove the truth of the matters asserted (that a broken nose is worth less than $90,000) and did not trigger the hearsay rule. But that did not eliminate the hearsay problem. The question was whether Gates had actually made the statements attributed to him. The declarants – the reporters – were not called, and thus the jury could not determine whether Gates in fact said what was attributed to him. *See also Metro. Council of NAACP Branches v. FCC,* 46 F.3d 1154, 1165 (D.C.Cir.1995); *O'Sullivan v. City of Chicago,* 2007 WL 671040, 12 (N.D.Ill. 2007)(collecting cases).[8].

In the instant case, the question is whether Verizon made the statement contained in the report. Unlike *Gates,* where the reporter did not testify and thus it was impossible to ascertain the truth of his assertion about what Gates said, here, Verizon, itself, is the declarant and is not reporting what someone third person said. Thus, the question is whether the report is actually a Verizon report, and there simply is no credible argument that it is not. In the final analysis, the real question is whether the inferences the plaintiff desires to draw from the statement in the Verizon report is reasonable. Normally, that is a jury question.

But the fact remains that on October 29, 2009, I granted the defendants' motion to exclude the Verizon report for the reasons discussed in the summary judgment opinion. *See, Minemyer*, 2009 WL 3757378, 1 (N.D.Ill. 2009). Shortly thereafter, I issued an order stating that if the plaintiff could satisfy Rule 803(6), perhaps the report might be admissible. Plaintiff contends that Ms. Williams' affidavit of February 2, 2012 and the earlier affidavit in January 2012 – which was not

---

[8]In effect, there were two levels of hearsay: When introduced, the article asserted that the reporters said (Level 1) that Gates said (Level 2) that the price of noses should be marked down. Since the reporters' assertion about what Gates said did not fit within a hearsay exception, admission of the articles violated the hearsay rule.

signed – are sufficient under Rule 902(11), Fed. R. Evid., to qualify the Verizon report under Rule 803(6).

The defendants object to the certification and contend that they do not have an adequate opportunity to test the validity of the assertions since the affidavit has been offered literally on the eve of trial. They say had they had more notice, they would have gone to Atlanta to depose Ms. Williams and examine her regarding what they characterize as her conclusory assertions. There is substantial force to the argument. While the plaintiff points to a number of cases in which the Seventh Circuit has found certifications made within a few days of trial to constitute adequate notice, those cases do not pretend to articulates a kind of *per se* rule that automatically allows any certification within the time period involved in those cases to satisfy the requirement of Rule 901(11). Thus, I agree with the defendants that the certification of Ms. Williams is untimely and cannot justify the admission of the Verizon report under Rule 803(6 ).

### E.

In a memorandum filed on February 3, 2012 [Dkt # 425], the defendants argue that under Rule 703, Fed. R. Evid, the plaintiff's damage expert should not be allowed to rely on the Verizon report since it is not admissible and it is unreliable. The difficulty with the argument is that it comes too late. (This is not to say that the argument is necessarily meritorious). As discussed earlier, *see supra* at 6, the expert reports were filed in 2009, before the rulings on the motions *in limine*. The defendants never filed a *Daubert* motion raising Rule 703. Nor did they make any attempt to strike those portions of the report that relied on the Verizon report or to bar those portions of the testimony that did so, even though such motions are *de rigueur* in federal litigation. *See e.g., Ancho v. Pentek Corp.*, 157 F.3d 512, 515 (7th Cir.1998); *Electronic Materials, Inc. v. Mitsubishi Materials*

11

*Silicon Corp*. 248 Fed.Appx. 199, 203, 2007 WL 2728376, 2 (Fed. Cir.2007); *Fowler v. United States,* 2011 WL 1004574, 8 (N.D.Ill. 2011).

The motion to exclude the Verizon report was made on December 23, 2009 and argued that the document had not been properly authenticated, that it did not qualify under rule 803(6), and that it should be excluded pursuant to Rule 403 because without more than the mere statement "Bid Lozon products," the probative value of the document is substantially outweighed by the danger of unfair prejudice and of misleading and confusing the jury. (Dkt. No. 212 at 5). In fact, the motion only discussed the concept of confusion in the setting of the "trade dress" of the plaintiff's couplers.

The only reference in the 6-page motion to the plaintiff's expert appears in the CONCLUSION on page 6: "Defendants accordingly request that the Court exclude the Verizon Document, any and all references to [it], and any and all references to information contained solely in the Verizon Document, *including in plaintiff's examinations, arguments and experts' testimony.*" (Dkt. No. 212 at 6)(Emphasis supplied). But this sort of skeletal and unsupported, single line assertion is, as the Seventh Circuit has repeatedly pointed out, insufficient and constitutes a waiver of the point. *Dexia Credit Local v. Rogan,* 629 F.3d 612, 624-625 (7th Cir. 2010); *Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir.2010); *United States v. Haynes,* 582 F.3d 686, 704 (7th Cir.2009); *United States v. Boisture,* 563 F.3d 295, 299 n. 3 (7th Cir.2009); *Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.,* 493 F.3d 782, 789 (7th Cir.2007).

Moreover, it is too late to make the argument that the defendants have belatedly made on the eve of trial in their Memorandum of February 3 [Dkt. no. 425]).[9] To allow the defendants to raise

_____

[9]A review of the opinion deciding the defendants' motions *in limine* reveals a discussion of Rule 703 by the court, but it was not in conjunction with any argument raised by the defendants in the motion to exclude the Verizon documents.

12

this issue now (especially in the abbreviated form that they have advanced it) effectively precludes the plaintiff from having an adequate opportunity to respond and for the court to have adequate opportunity to consider the competing arguments. *Cf.* K. Llewellyn, The Common Law Tradition: Deciding Appeals, 31 (1960)(one-sided presentations "terrifyingly weights the scales of judgment."). Or, to use the words of Rule 901(11) on which the defendants, themselves, have placed so much emphasis, the defendants' belated argument is not "sufficiently in advance of their offer... to provide an adverse party with a fair opportunity to challenge them."

The defendants' February 3 Memorandum notes that a party ought not be able to circumvent a court's exclusion of an exhibit by "getting the document or its contents into evidence through his damages expert." *(Defendants' Opposition To Plaintiff's Motion For Reconsideration of the Court's Ruling Respecting The Admissibility of Plaintiff's Exhibit 40, at15)*. That, however, is not what is occurring. But equally, what ought not be allowed is for a party who has failed to make a timely *Daubert* objection, or to properly advance a position in a motion *in limine* to raise issues under *Daubert* and Rule 703 on the eve of trial and in contravention of a decision not to have raised those issues at the appropriate time.

The defendants made a calculated decision in 2009 not to challenge the plaintiff's expert's reliance on the Verizon report. Instead, their own expert gave his opinion about why that reliance was misplaced. Perhaps he is right. But that will be a question for the jury to decide. The defendants musts live with the decision they made. *Cf. Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 490-492 (7th Cir. 2002); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 340 (N.D.Ill. 2005)(collecting cases).

ENTERED: _____
                 UNITED STATES MAGISTRATE JUDGE

DATE: 2/6/12

14