IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN T. ("TOM") MINEMYER,<br><br>Plaintiff,<br><br>v.<br><br>R-BOC REPRESENTATIVES, INC., et al.,<br><br>Defendants. | Civil Action No. 07-CV-1763<br><br>Magistrate Judge Jeffrey Cole |

## DEFENDANTS MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF INDIRECT INFRINGEMENT

Defendants Ronald Backman; LeBac Plastic Mold Co., Inc.; Sandra Krajecki; Edward Krajecki; Robert Lundeen; Carolyn Lundeen; and Timothy A. Grimsley request judgment as a matter of law in their favor on the claim of indirect patent infringement because no reasonable jury could find Defendants personally liable for inducing Dura-Line to infringe the '726 patent.

### I. Standard For Judgment As A Matter of Law

Judgment as a matter of law is governed by Federal Rule of Civil Procedure 50, which states in pertinent part:

> (a) Judgment as a Matter of Law.
> (1) In General.
> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. Proc. 50

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir.

2004). Under Seventh Circuit law, when deciding a JMOL, the Court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in his favor." *Riemer v. Illinois Dept. of Transp.*, 148 F.3d 800, 805 (7th Cir. 1998). "[T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but it may not make credibility determinations or weigh any evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citations omitted). If the evidence does not support a jury award in favor of Plaintiff, then JMOL should be granted in favor of Defendants. *Riemer*, 148 F.3d at 805.

## II. The Standard For Indirect Infringement

Under 35 U.S.C.A. §271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Recently, the Supreme Court examined the knowledge requirement for inducement under section 271(b) and clarified the existing case law, stating "we now hold that induced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement." *Global Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. ___, 131 S.Ct. 2060 *10 (May 31, 2011). This requires knowledge of the patent. *Id.* at *4-10. As the Supreme Court explained, it is not enough to induce acts which happen to constitute infringement. *Id.* Instead, the inducer must induce acts which the inducer *knows* to constitute infringement. *Id.*

The Supreme Court's holding confirmed long-established Federal Circuit law on inducement. "The alleged infringer must be shown . . . to have *knowingly* induced infringement." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("It must be established that the defendant possessed special intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc)

2

("Mere knowledge of the acts alleged to constitute infringement is insufficient, an allegation of inducing infringement requires proof of the defendants' specific intent and action to induce infringement."). Mere knowledge of the acts alleged to constitute the infringement is insufficient. *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1048, 1412 (Fed. Cir. 1996) (individual liability for inducing infringement "is not automatic").

Therefore, the inducer must (1) have knowledge of the patent; (2) take active steps to cause another to act; and (2) specifically intend to "persuade another to engage in conduct that the inducer knows is infringement." *See Global Tech.*, 131 S.Ct. 2060 at *5.

The knowledge requirement may be met by actual knowledge or through willful blindness. *Global Tech.*, 131 S. Ct. 2060 at *13. Willful blindness has two requirements: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.*

The record is devoid of facts supporting this bold theory.

### III. Defendants Edward and Sandra Krajecki Are Entitled To Judgment As A Matter Of Law On The Issue Of Indirect Infringement

Plaintiff contends that Defendants Edward Krajecki and Sandra Krajecki induced their own company, Precision Custom Molders, Inc., to infringe Plaintiff's patent. *See* Jury Instruction Nos. 9 and 57. The record evidence reflects that Mr. Krajecki was provided with samples of the Lozon coupler and that none of those couplers provided either Mr. or Mrs. Krajecki actual knowledge of the '726 patent that is at issue in this case. (*See e.g.*, Krajecki Testimony, Ex. 1, 34:5-8, 37:16-23, 39:9-15.) It is undisputed that the Lozon samples either had no markings, patent pending, or were mismarked with the Kawasaki patent number that did not cover the marked product and is not at issue in this case. *See, e.g.*, Krajecki Testimony, Ex. 1, 34:5-8, 37:16-23, 39:9-15. In addition, the evidence establishes that neither Plaintiff, nor his associate Mr. Maynard, ever contacted, in writing or otherwise, either Mr. or Mrs. Krajecki to

3

provide them with actual notice of the '726 patent at issue in this case until Mr. Minemyer filed suit. Moreover, there has been no evidence that anyone provided either Mr. or Mrs. Krajecki with notice of the '726 patent prior to the filing of the instant suit. At most, the evidence shows that Mr. Krajecki learned of the '772 patent *after* this lawsuit (E. Krajecki Testimony, Ex. 1, 39:9-15; 41:12-14; 47:14-18), which covers a two-piece coupler that is not at issue and does not apply to the products manufactured by Precision Custom Molders. Neither Krajecki had any knowledge of the correspondence between the Plaintiff and the other Defendants. *See* Exhibits *generally* (reflecting that none of the correspondence was to, from, or copied the Krajeckis). Indeed, the record with respect to Mrs. Krajecki is virtually non-existent. *See generally*, S. Krajecki Testimony. More specifically, the record is completely devoid of any actions Mrs. Krajecki took with any intent, let alone *specific intent*, that were directed specifically to causing the infringement of the '726 patent. For example, there is no evidence that she directed or caused any of the actions that Plaintiffs alleges resulted in the infringement of the '726 patent – i.e., no evidence has been shown that she was even involved in any of the conversations or acts Plaintiff allege led to infringement.

In addition to not having actual knowledge of the '726 patent at issue in this case, there is no evidence that either Mr. or Mrs. Krajecki took any action with the specific intent to induce infringement by their own company. Although the testimony showed that Mr. Krajecki (not Mrs. Krajecki) provided Mr. Backman with samples and asked him to provide a mold that could create a part, he never took any actions to deliberately manufacture a part with the patented features because he was completely unaware of the '726 patent. (*See e.g.*, Krajecki Testimony, Ex. 1, 34:5-8, 37:16-23, 39:9-15). Finally, the Krajecki's are not accused of inducing Mr. Backman or LeBac Plastic Mold to infringe; they are accused of inducing their own company, Precision Custom Molding, to infringe, accusations for which there is absolutely no evidentiary

4

support. Therefore, Mr. and Mrs. Krajecki are entitled to judgment as a matter of law on Plaintiff's claim of indirect infringement.

## IV. Defendant Mr. Grimsley Is Entitled To Judgment As A Matter Of Law On The Issue Of Indirect Infringement

Mr. Grimsley is accused of inducing his employer, Dura-Line, to infringe. Plaintiff offered no evidence from Dura-Line except from Mr. Grimsley himself.

There is no evidence that Mr. Grimsley had knowledge of the '726 patent until mid-November 2006.[1] The record evidence reflects that Mr. Grimsley was responsible for responding to the AT&T and Verizon requests for proposals on July 24, 2006 and August 11, 2006, respectively (See e.g., PX-47; PX-36), at which time his intent was to offer the B&C couplers for sale on behalf of Dura-Line. Yet, the evidence also shows that at the time Mr. Grimsley bid the B&C coupler, he was unaware of the '726 patent. It was not until mid-November 2006, that Mr. Grimsley first learned of the '726 patent, when Mr. Minemyer mailed it to him after a meeting they had in Arizona. Although Mr. Grimsley had previously heard from Mr. Lundeen that there was a patent number on the Lozon coupler (the number for the '722 Kawasaki patent), he was assured by Mr. Lundeen that the patent number was for a Kawasaki screw jack. He also was assured that a similar patent number, the '772 patent, belonged to Mr. Minemyer but was for a two-piece coupler. Mr. Grimsley further relied upon Mr. Lundeen's assurances that R-BOC had obtained legal counsel and that Mr. Minemyer's patent covered only a two-piece coupler.

The only circumstantial evidence that Plaintiff points to in support of his theory that Mr. Grimsley knew about the '726 patent when he first prepared the Verizon and AT&T bids was PX 66, an e-mail from Mr. Maynard to Mr. and Mrs. Lundeen that was later forwarded to Mr. Grimsley. Plaintiff relies upon that portion of the e-mail that claims Mr. Minemyer had "a series

---

[1] Citations to testimony will be provided upon receipt of the official transcripts.

5

of patents" on various coupler features, including "low profile, air and water tight, and . . . good pull out" -- features that Mr. Grimsley testified were present in all couplers. Plaintiff's reliance on this e-mail to show knowledge is further unwarranted by the fact that in the same e-mail, Mr. Maynard stated that "Tom's patents do not over a plastic reverse threaded coupler as a complete. A plastic reverse threaded coupler was made well over 20 years ago and is obvious to anyone in the industry in cannot be patented." PX-66 at pg. 2. Further, it is undisputed that this e-mail does *not* mention the '726 patent. In short, this e-mail certainly does not suffice to show actual notice of the '726 patent.

Nor does it support a theory of willful blindness to the existence of the '726 patent. After receiving Mr. Maynard's e-mail, Mr. Grimsley called Mr. Lundeen to confirm that R-Boc had done its due diligence and was reassured that the patent number marked on the coupler was for an unrelated Kawasaki product, that Mr. Minemyer's patent related to a two-piece coupler, and that Mr. Lundeen had been to an attorney who confirmed his conclusions. It would constrain logic to hold that Mr. Grimsley was required to do more, when all Mr. Maynard had to do to put the Defendants on notice was simply identify the patent at issue, which he did not do. Moreover, when Mr. Minemyer asked for a meeting with Mr. Grimsley, Mr. Grimsley obliged and met Mr. Minemyer, even asking Mr. Minemyer for a copy of his patents (which Mr. Minemyer had not brought with him to the meeting). Thus, Mr. Grimsley was hardly willfully blind to the existence of the '726 patent.

Mr. Grimsley admitted that he received the '726 patent from Mr. Minemyer in mid-November 2006, after their meeting in Arizona, providing the first and only direct evidence of Mr. Grimsley's actual knowledge of the '726 patent. Thus, there is zero evidence from which a reasonable jury could find that Mr. Grimsley knew of the '726 patent before Mr. Minemyer sent him the '726 patent in mid-November 2006, which was after his actions regarding the Verizon and AT&T bids.

As to the events *after* November 2006, there is no evidence that Mr. Grimsley had specific intent to cause Dura-Line to act in a manner that Mr. Grimsley knew constituted infringement of Plaintiff's '726 patent. To begin, the only evidence that Mr. Grimsley induced Dura-Line was that Mr. Grimsley signed the contracts with Verizon and AT&T and Mr. Grimsley acted as a sales representative while Dura-Line continued to sell the accused couplers. Yet, the record was clear that after Mr. Grimsley learned of the '726 patent, he informed Dura-Line's CEO, Mr. Chari, of the patents and of Mr. Minemyer's assertions. Only under Mr. Chari's authority did Dura-Line continue to sell the B&C coupler. And under Mr. Chari's authority, Mr. Grimsley executed the Verizon and AT&T contracts. Mr. Grimsley's actions in this regard were based on the representation from Mr. Chari that he had spoken with Dura-Line's attorneys and that Mr. Grimsley was authorized to continue sales of the B&C coupler. Moreover, Mr. Grimsley testified that with all large contracts, not just those at issue here, he obtained permission from Mr. Chari before signing. These facts do not show that Grimsley had specific intent to cause Dura-Line to act in a manner that he knew was infringing. He neither had intent to control nor did he actually control Dura-Line's decisions concerning sale of the B&C coupler. Therefore, Mr. Grimsley is entitled to judgment as a matter of law on Plaintiff's claim of indirect infringement.

## V. Defendants Mr. and Mrs. Lundeen Are Entitled To Judgment As A Matter Of Law On The Issue Of Indirect Infringement

Plaintiff contends that Defendants Robert Lundeen and Carolyn Lundeen induced Defendant R-BOC to infringe Plaintiff's patent. Plaintiff separately accuses Mr. Lundeen of inducing Defendants Dura-Line and Precision Custom Molders to infringe Plaintiff's '726 patent.

Mr. and Mrs. Lundeen lacked actual knowledge of the specific claims asserted of the '726 patent prior to the filing of the Second Amended Complaint. It is undisputed that the

7

Plaintiff mismarked his couplers. The patent marked on the couplers referred to a patent that was owned by a third party and did not relate to the products on which the patent was marked. Nevertheless, the evidence established, conclusively, that Mr. and Mrs. Lundeen took additional steps by actually searching for the Plaintiff's patent that most closely matched the patent marked on the product. The evidence established that the patent that most closely matched the patent marked on the Plaintiff's coupler was for a two-piece coupler (the '772 patent). Moreover, it is undisputed that the '772 patent does not cover the couplers at issue in this case.

In addition, the evidence shows that, despite having several opportunities to do so, Plaintiff never once provided Mr. and Mrs. Lundeen with actual notice of the '726 patent prior to the November 28, 2006 letter from his counsel. Even still, the evidence shows Mr. and Mrs. Lundeen were led to believe that the only claims of the '726 at issue were claims 13-16. Mr. and Mrs. Lundeen were correct to believe that those claims were not infringed because claims 13-15 recited elements that the B&C couplers do not include and because claim 16 was again directed toward a two-piece coupler. Mr. and Mrs. Lundeen's beliefs were affirmed when this Court held claims 13-15 invalid and not infringed, and the Plaintiff dismissed his allegation of infringement regarding claim 16.

In light of the above facts, Mr. and Mrs. Lundeen could not have had the necessary knowledge or specific intent required to establish a case of inducement. Moreover, Mr. and Mrs. Lundeen acted reasonably because they believed that the accused products did not have the required fluid tight sealing surface or the rear thread angle of approximately perpendicular. Those beliefs were confirmed by the testimony of Messrs. Backman and the Plaintiff himself. Plaintiff testified that 10 degrees would be consider by even him as being "significantly different" than the required "approximately perpendicular." And, Mr. and Mrs. Lundeen's belief-- that its company's couplers did not have a surface to created a "generally fluid tight seal" between the surface and the conduit--was confirmed by the B&C re-design coupler, which

8

eliminated the surface and was still air and water tight. As a result, Mr. and Mrs. Lundeen could neither have had the necessary knowledge or intent to cause the infringement of the '726 patent. Therefore, Mr. and Mrs. Lundeen are entitled to judgment as a matter of law on Plaintiff's claim of indirect infringement.

## VI. Defendants Ronald Backman and LeBac Custom Molders Are Entitled To Judgment As A Matter Of Law On The Issue Of Indirect Infringement

Plaintiff accuses Mr. Backman and LeBac Custom Molders of an entirely different species of indirect infringement--contributory infringement (not inducement). To prove contributory infringement, Plaintiff must prove:

> 1. *Defendants LeBac and Backman knew of Plaintiff's patent.*
>
> 2. *Defendants LeBac and Backman sold or supplied a component that forms a significant part of the invention* described in a claim in Plaintiff's patent.
>
> 3. Another person or company, including other Defendants in this case, infringed Plaintiff's patent by using this component.
>
> 4. Defendants LeBac and Backman knew the component was especially made or adapted for a use that would infringe Plaintiff's patent.
>
> 5. The component was not a commonly available item or a product with substantial non-infringing uses.

*See* Jury Instruction No. 58 (emphasis added).

The record evidence in this case establishes three separate grounds for granting Judgment as a Matter of Law. First, Plaintiff has failed to present sufficient evidence to support a finding that Defendants LeBac and Backman knew of Plaintiff's patent. Second, Plaintiff has failed to present sufficient evidence that Defendants LeBac and Backman even provided a component that forms a significant part of the invention. Finally, Defendants LeBac and Backman only provided

9

a service for compensation. If this Court agrees with any one of the above, then judgment in favor of Defendants LeBac and Backman is appropriate.

First, the undisputed evidence is that Defendants LeBac and Backman did not have notice of the asserted '726 patent until August 15, 2007, which is the day Plaintiff first added Defendants LeBac and Backman. Dkt. 62, Second Amended Complaint. The evidence also establishes that Defendants LeBac and Backman completed all work and services regarding the molds at issue in this case in July of 2007. Ex. 2, Backman Excerpt, p.28. As such, Defendants LeBac and Backman have taken no actions or steps related to the manufacture, sale, offer for sale or importation of anything related to the accused products after July of 2007. Even if Defendants LeBac and Backman had legal notice of the asserted '726 patent as of August of 2007, there is no evidence that they conducted any activity after July of 2007 that contributed to the infringement of the '726 patent. Therefore, without legal notice prior to July of 2007, Plaintiff cannot establish even the first element required to prove Defendants LeBac and Backman contributed to the infringement of the '726 patent.

The contradicted evidence in the record shows that in fact Defendants LeBac and Backman were never aware of the '726 patent prior to August of 2007. Specifically, Defendants LeBac and Backman testified that they only learned of the '726 patent after being served in September of 2007:

> Q. Okay. When was the first time you learned about the '726 patent that's at issue in this litigation?
>
> A. When I was served in September [of 2007].
>
> Q. So you had no idea about Mr. Minemyer – I mean, yeah, Mr. Minemyer's '726 patent prior to being sued in this litigation; is that correct?
>
> A. That's correct. That's correct.

Ex. 2, Backman Excerpt, pp. 39-40. Further, Plaintiff's do not even have sufficient circumstantial evidence to establish that Defendants LeBac and Backman had notice of the '726

10

patent prior to August of 2007. Specifically, the evidence shows that Defendants LeBac and Backman did not know, or even met, Mr. Minemyer, Lozon, the Lundeens, R-Boc, Mr. Grimsley, or Dura-Line prior to being added to this litigation in August of 2007. Ex. 2, Backman Excerpt, pp. 34-37. Moreover, there is no evidence that the only parties Defendants LeBac and Backman knew, Mr. and Mrs. Krajecki and Precision Custom Molders, ever informed Defendants LeBac and Backman of the '726 patent before August of 2007. In the absence of such evidence, Plaintiff simply cannot establish contributory infringement against Defendants LeBac and Backman.

Second, the undisputed evidence is that that Defendants LeBac and Backman never provided a component that forms a significant part of the invention. As the Federal Circuit has made clear, a contributory infringer must "sell a component especially *for use **in a patented invention**.*" *Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2009)(emphasis added). The point being that the accused contributory infringer must sell or supply a component that actually becomes a part of the claimed apparatus to be liable. In this case, it is undisputed that, and there is no evidence to the contrary, that Defendants LeBac and Backman never manufacture, sold, offered for sale, or imported a part that was used ***in*** the accused B&C couplers. Instead, the undisputed evidence is that Defendants LeBac and Backman only provided a service to Precision Custom Molders to manufacture a mold that Precision Custom Molders used to manufacture B&C couplers. The mold itself is neither covered by the asserted patent claims, nor does the mold ever comprise a component-part of the accused B&C couplers. Thus, again, Plaintiff simply cannot establish contributory infringement against Defendants LeBac and Backman because they neither sold or supplied a component that became a part of the actual apparatus being accused of infringement.

Finally, Plaintiff cannot establish contributory infringement against Defendants LeBac and Backman because the undisputed evidence is that they only provided its customer, Precision

11

Custom Molders, a service for compensation. In *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1358 (Fed. Cir. 2007), the Federal Circuit held that providing a service for compensation fails to satisfy contributory infringement when the service provided never actually owned or sold the component. That case describe this theory as follows:

> In summary, the district court correctly concluded that the defendants did not sell a product and that what they provided to customers was a service for compensation. The evidence showed that the cord blood the defendants collected and preserved was never their property; instead, it remained the property of the families who engaged their services. The defendants were never the owners of the blood and thus never "sold" the blood to the families when it was needed. The district court therefore properly held that the defendants could not be found liable for contributory infringement under section 271(c).

*Id.* Hereto, the molds manufactured by Defendants LeBac and Backman were never actually their property, but the property of Precision Custom Molders who engaged the manufacturing services of Defendants LeBac and Backman. Ex. 2, Backman Excerpt, p. 5. In fact, the evidence established that Defendants LeBac and Backman were only paid for their services and the costs of material. PX 20, LeBac 006. As such, like the defendants in *Pharmastem*, Defendants LeBac and Backman only provided a service for compensation and thus never even actually "sold" a component. Therefore, yet again, Plaintiff cannot establish contributory infringement against Defendants LeBac and Backman.

## VII. CONCLUSION

For the foregoing reasons, the individual defendants request JMOL in their favor on the issue of indirect infringement.

Respectfully submitted,

Dated: February 15, 2012

/s/ Frederick C. Laney
Matthew G. McAndrews
Frederick C. Laney
Niro, Haller & Niro

12

181 W. Madison Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com

*Attorneys for Defendants*

R-BOC Representatives, Inc., Carolyn Lundeen, Robert Lundeen, Precision Custom Molders, Inc., Edward Krajecki, Sandra Krajecki, LeBac Plastic Mold Co., Inc., and Ronald Backman


/s/ Natalie J. Spears
Natalie J. Spears
SNR Denton US LLP
7800 Sears Tower
233 South Wacker drive
Chicago, Illinois 60606
Phone: (312) 876-8000
Facsimile: (312) 876-7934
E-mail: nspears@snrdenton.com

Teresa A. Ascencio, Esq.
SNR Denton US LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Phone: (816) 460-2400
E-mail: tascencio@snrdenton.com

*Attorneys for Defendants*

Dura-Line Corporation and Timothy A. Grimsley

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2012, I electronically filed the preceding DEFENDANTS MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF INDIRECT INFRINGEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

| | |
|---|---|
| Douglas M. Chalmers, Esq. | Sean B. Crotty |
| Law Offices of Douglas M. Chalmers | The Coleman Law Firm |
| 77 West Wacker Drive | 77 West Wacker Drive, Suite 4800 |
| Chicago, Illinois 60601 | Chicago, Illinois 60601 |
| Phone: (312) 606-8700 | Phone: (312) 444-1000 |
| Fax: (312) 444-1028 | Fax: (312) 444-1028 |
| E-mail: dmc@chalmers-law.com | E-mail: scrotty@colemanlawfirm.com |

**Attorneys for Plaintiff, John T. ("Tom") Minemyer**

| | |
|---|---|
| Natalie J. Spears, Esq. | Teresa A. Ascencio, Esq. |
| SNR Denton US LLP | SNR Denton US LLP |
| 7800 Sears Tower | 4520 Main Street, Suite 1100 |
| 233 South Wacker drive | Kansas City, Missouri 64111 |
| Chicago, Illinois 60606 | Phone: (816) 460-2400 |
| Phone: (312) 876-8000 | E-mail: tascencio@snrdenton.com |
| E-mail: nspears@snrdenton.com | |

**Attorneys for Defendants Dura-Line Corporation and Timothy A. Grimsley**

/s/ Frederick C. Laney