IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN T. ("TOM") MINEMYER, | |
| Plaintiff, | Civil Action No. 07-CV-1763 |
| v. | Magistrate Judge Jeffrey Cole |
| R-BOC REPRESENTATIVES, INC., et al., | |
| Defendants. | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO WILLFUL INFRINGEMENT

Defendants move for judgment as a matter of law ("JMOL") of no willful infringement. There is simply not sufficient evidence for the jury to find in favor of Plaintiff on the issue of willfulness because Defendants have asserted legitimate and credible defenses to infringement, which preclude a finding of objective willfulness as a matter of law. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).[1] The clear and convincing standard of proof applies to the issue of willfulness. As the Federal Circuit recently confirmed, if the trial court finds that the objective prong of *Seagate*'s two-part test is not met by clear and convincing evidence, "it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong." *Powell v. Home Depot U.S.A., Inc.*, 2011 WL 5519820, at *10 (Fed. Cir. Nov. 14, 2011). That is precisely the situation presented here.

The evidence comes nowhere near the clear and convincing standard on the objective prong of *Seagate*. To begin, throughout these proceedings and during trial, Defendants have asserted legitimate and credible non-infringement defenses to claims 2, 3, and 4, and claim 12 of the '726 patent. As to claims 2, 3, and 4, there has never been any proof whatsoever that the accused B&C couplers contain the critical, functional element of claim 2. Specifically, claim 2

---

1 As trial is still underway, Defendants will provide citation to evidence when the official transcript becomes available, to the extent that citations are not provided herein.

recites a "sealing surface operable to cooperate with an exterior surface of the first conduit *to form a generally fluid tight seal* therebetween." Ex. 1, '726 patent at claim 2. In the course of five years of litigation, there has never been any evidence that the so-called "sealing surface" in the B&C coupler operates to *"form a generally fluid tight seal"* -- *a requirement of claim 2 of the '726 patent.* There is literally zero evidence of the presence of this functional element. And at trial, Plaintiff's expert, Mr. Kaiser, admitted he lacked any testing or evidence of any kind to support the existence of such a function in the accused couplers.

Instead, the only evidence that does exist in the record supports the opposite finding. This evidence includes the admissions by Mr. Kaiser (and testimony of other witnesses) that the teeth of the threads cut grooves into the smooth surface of the duct, which would prevent a sealing function at the point where the purported "sealing surface" meets the exterior of the duct. Further supporting this fact, there was un-rebutted evidence at trial that the flat surface was removed from the redesigned B&C coupler, which has been sold now for years without any issues as to the coupler's leaking or sealing capabilities.

Defendants submit that the evidence of infringement on claim 2 (and, in turn, the dependent claims 3 and 4) is so lacking that a judgment as a matter of law should be granted on these asserted claims in Defendants' favor, and Defendants have filed such a motion simultaneously herewith containing further detail. *See Defendants' JMOL on Non-Infringement*, filed 2/15/12, concurrently herewith. However, notwithstanding the JMOL motion, even if the defense of non-infringement on claims 2, 3 and 4 were ultimately unsuccessful, the defense on these claims, as developed by the record in these proceedings, can hardly be said to be anything other than a legitimate and credible defense to infringement, precluding a finding of objective willfulness.

The same is true of claim 12, as to which the evidence and non-infringement defenses are equally legitimate and credible. Defendants also have filed a motion for judgment on non-

infringement as a matter of law on claim 12 simultaneously herewith. *Id.* In short, Plaintiff's expert, Mr. Kaiser, admitted that the threads within the two B&C couplers that he measured were 80 degrees, and he could offer nothing more than conclusory testimony regarding whether the B&C couplers satisfy claim 12's requirement for a "rear face disposed approximately perpendicular (i.e., approximately 90°) to a longitudinal axis through the base of the first thread." (Ex. 2, Kaiser Tr., pp. 18-19). Mr. Minemyer's testimony fairs no better. Even setting aside for the moment Mr. Minemyer's admission that "you start getting into 10 or 15 [degrees] that's significantly different," (Ex. 3, Minemyer Tr., p. 69), his only other testimony was conclusory and conjecture -- and in any event, relates to his own coupler, the Lozon, not the B&C coupler. In contrast, Mr. Backman, who has making molds for over 34 years, testified regarding an acceptable range for "approximately perpendicular" in the context of plastic molded parts:

> Q. . . So if somebody said make me a part that's approximately 90 degrees, how much--how much off 90 degrees would you make--would you give yourself?
>
> A. My judgment?
>
> Q. Ah-ha.
>
> A. I'd say maximum of maybe one half degree.

(Ex. 4, Backman Tr., p. 43).

On this backdrop of evidence, there cannot be a finding of objective unreasonableness by clear and convincing evidence, where Defendants not only have legitimate and credible defenses, but strong defenses, of non-infringement to claim 12. And, again, even if submitted to the jury and ultimately unsuccessful, such defenses, analyzed under *Seagate*'s objective prong, demonstrate a lack of objective recklessness as to infringement of claim 12 as a matter of law.

All of the above is without even reaching the credible invalidity defenses that Defendants also have on claims 2, 3 and 4 -- which are based in part on the invalidity of claim 1, the independent claim from which dependent claims 2, 3 and 4 hang. These credible invalidity

arguments, which are set forth in more detail below and in the prior summary judgment motions filed by Defendants, further support a lack of objective unreasonableness.

Adding further still to the evidence on the objective prong is the undisputed fact that claims 13-16 of the '726 patent were the only claims asserted in the initial pre-complaint letter from Plaintiff's counsel in January 2007, in the original complaint in March 2007 and in the First Amended Complaint in May 2007 -- and all of those claims have been held invalid (claims 13-15) or voluntarily dismissed (claim 16). In addition, this Court invalidated the five other claims that were asserted for the first time in Second Amended Complaint in August 2007 -- claims 1, 5, 6, 10, and 11. This type of record -- where the majority of claims asserted were either invalidated or dismissed and where the defenses to non-infringement of the remaining claims are legitimate and credible defenses -- is, as the Federal Circuit has described, "hardly the stuff of which objectively reckless unreasonable conduct is made." *Uniloc USA., Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011) (on JMOL).

In stark contrast to the evidence outlined above on the objective prong of *Seagate*, Plaintiff's entire willfulness case rests on Defendants' "state of mind" and certain Defendants' alleged "copying" of the Lozon coupler. However, state of mind and copying are irrelevant to the first, objective inquiry of *Seagate*. Such evidence is only relevant to the second "subjective" prong of willfulness -- which again should not even be reached by the jury where the evidence is not clear and convincing as a matter of law on the predicate, objective prong.

Finally, even as to the second, subjective prong, on the record before the jury, there is insufficient evidence of willfulness given the totality of the circumstances as outlined in further detail below.

Accordingly, Defendants request that the Court grant JMOL of no willful infringement.

## I.  Standard For Judgment As A Matter of Law

Judgment as a matter of law is governed by Federal Rule of Civil Procedure 50, which

states in pertinent part:

> (a)  Judgment as a Matter of Law.
> (1)  In General.
> If a party has been fully heard on an issue during a jury trial and
> the court finds that a reasonable jury would not have a legally
> sufficient evidentiary basis to find for the party on that issue, the
> court may:
> (A)  resolve the issue against the party; and
> (B)  grant a motion for judgment as a matter of law against the
> party on a claim or defense that, under the controlling law, can be
> maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. Proc. 50.

Courts frequently decide the issue of willfulness as a matter of law. *See, e.g.,*

*Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1063-64 (Fed Cir. 2003);

*Innogentics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1381 (Fed. Cir. 2008); *DePuy Spine, Inc. v.*

*Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009); *Trading Tech., Int'l, Inc.*

*v. eSpeed, Inc.*, 2008 WL 63233 *1-3 (N.D. Ill. 2008).

## II.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF WILLFULNESS BECAUSE PLAINTIFF DID NOT ESTABLISH, BY CLEAR AND CONVINCING EVIDENCE, AN OBJECTIVELY HIGH LIKELIHOOD THAT DEFENDANTS INFRINGED A VALID PATENT.

In 2007, the Federal Circuit heightened the standard for willfulness with its en banc

decision in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). "[P]roof of

willful infringement permitting enhanced damages requires at least a showing of objective

recklessness." *Seagate*, 497 F.3d at 1371. The *Seagate* court further explained the recklessness

standard, establishing this two-prong test:

> to establish willful infringement, a patentee must show by clear and convincing evidence
> that the infringer acted despite an objectively high likelihood that its actions constituted
> infringement of a valid patent. . . . *If this threshold objective standard is satisfied*, the
> patentee must also demonstrate that this objectively defined risk (determined by the
> record developed in the infringement proceeding) was either known or so obvious that it

should have been known to the accused infringer.

*Seagate*, 497 F.3d at 1371 (parenthetical in original) (emphasis added). Thus, before reaching the second, subjective prong of willfulness, Plaintiff must prove the objective prong by clear and convincing evidence. *Id.*

### A. The Objective Prong Of *Seagate* Is Not Met Where Defendants Have Legitimate Non-Infringement Defenses And Credible Invalidity Arguments

The clear mandate of *Seagate* was that the "*objectively* defined risk" is "determined *by the record developed in the infringement proceeding.*" *Seagate*, 497 F.3d at 1371 (emphasis added). "Under this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008). Legitimate defenses, *even if ultimately unsuccessful*, preclude a finding of willful infringement. *See DePuy Spine*, 567 F.3d at 1337; *see also Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (Where a patent claim was "susceptible to a reasonable construction under which [the defendant's] products did not infringe, there was not an objectively high likelihood that [the defendant's] actions constituted infringement."); *Innogentics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1381 (Fed. Cir. 2008) (upholding the district court's judgment that overturned the jury's verdict of willful infringement for failure of proof on the first *Seagate* prong); *Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 177 (D.R.I. Sept. 29, 2009) ("Uniloc II") ("[T]he facts here presented are 'hardly the stuff of which objectively reckless unreasonable conduct is made.'").

Under the Federal Circuit's guidance, the Northern District of Illinois has declined to find willfulness, on decidedly less favorable facts than those here, where the accused asserts legitimate, even if unsuccessful, defenses. *See, e.g., Trading Tech., Int'l, Inc. v. eSpeed, Inc.*, 2008 WL 63233 *1-3 (N.D. Ill. 2008) (Moran, J.) (Reversing a jury verdict of willfulness where

validity was "hotly contested" and the accused infringer asserted defenses that were neither unreasonable nor frivolous). In *Abbott Labs v. Sandoz, Inc.*, 532 F. Supp. 2d 996 (N.D. Ill. 2007), Judge Coar found no willful infringement, despite the continued sale of the accused product after the filing of a motion for preliminary injunction, based on the defendant's assertion of good faith, legitimate defenses. Viewing the "facts in the light most favorable to the non-moving party," the Court still held there was no willful infringement based on the accused's assertion of "what in good faith it believes to be a legitimate defense . . . ." *Sandoz*, 532 F. Supp. 2d at 1000.

Other districts too have followed the mandate of *Seagate* by finding no willfulness, even where the defendants were unsuccessful in their legitimate defenses. In a case similar to, though not as defensible as the one at bar, the Western District of Wisconsin granted a motion for summary judgment on willfulness. *See Franklin Elec. Co., Inc. v. Dover Corp.*, 2007 WL 5067678 (N.D. Wis. 2007). In *Franklin*, the accused infringer had prevailed on summary judgment as to non-infringement of two patents. *Id.* at \*1. The Federal Circuit reversed summary judgment as to one patent and remanded. *Id.* On remand, the district court granted summary judgment on willfulness, holding that the prior decisions granting summary judgment precluded a finding of an objectively high likelihood of infringement of a valid patent, [r]egardless of the contrary decision of the Appeals Court . . . ." *Id.* at \*8; *see also Henrob Ltd. v. Böllhoff Systemtechnick GMBH & Co*, 2009 WL 3199812 \*10 (E.D. Mich. 2009) ("Even if Henrob eventually proves infringement and Defendants fail to show the '305 Patent is invalid, the cogency of Defendants' arguments precludes Henrob from showing by clear and convincing evidence an objectively high likelihood of infringement of a valid patent"); *Henrob Limited v. BollhoffSystemtechnick GmbH & Co.*, 2009 WL 4042627 (E.D. Mich. November 19, 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008) ("While Lansa was ultimately unsuccessful in defending against infringement or proving invalidity with regard to

the '075 Patent, its arguments in these areas were substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon."); *TGIP, Inc. v. AT & T Corp.*, 527 F. Supp. 2d 561, 579 (E.D. Tex. 2007) ("Even though AT&T ultimately did not prove its invalidity defense by clear and convincing evidence, its position was hardly objectively unreasonable.").

Consistent with this rationale, the Eastern District of Virginia's ruled in *Netscape* that, "while not all of defendants' arguments are meritorious, defendants do present legitimate defenses and credible invalidity arguments. Indeed, . . . defendants' contention that claim 1 of the '670 patent is invalid under the § 102(b) on-sale bar prevails." *Netscape Commun. Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 699, 728 (E.D. Va. 2010).

On the facts of the instant case, there is even less of an objectively high likelihood of infringement under the *Seagate* test than there was in any of the cases above, including *DePuy*.

**1.** *Defendants Presented Legitimate and Credible Defenses At Trial Concerning Patent Claims 2, 3, and 4.*

As set forth in Defendants' Motion for Judgment as a Matter of Law re Non-Infringement, Defendants asserted legitimate and credible defenses to non-infringement of claims 2, 3, and 4 during trial.

Claim 2 of Plaintiff's '726 Patent requires:

> [a] sealing surface disposed between the threaded portion and the protrusion; and the sealing surface operable to cooperate with an exterior surface of the first conduit to form a ***generally fluid tight seal*** therebetween.

Ex. 1, '726 Patent (emphasis added). Claims 3 and 4 depend from claim 2 of the '726 Patent.[2] Thus, claims 2, 3, and 4 of the '726 patent fail together, and Defendants' defenses on those claims must be considered together.

---

2 Claim 3 of the '726 Patent prescribes a "conduit coupling of claim 2 . . . ," and claim 4 of the '726 patent, in turn, prescribes a "conduit coupling of claim 3 . . ." such that both claims 3 and 4 are dependent

As an initial matter, Plaintiff introduced only conclusory expert opinion that the accused B&C coupler's smooth sealing surface was a "sealing surface" as recited in claim 2. As further detailed in Defendants' JMOL re non-infringement, Mr. Kaiser admitted that he did zero testing on any B&C coupler to determine whether the "sealing surface" actually formed a generally fluid tight seal, as required by claim 2. (Ex. 2, Kaiser Tr., p. 41-2.) Defendants actively elicited this testimony, which was, in itself, a legitimate defense to infringement.

Completely apart from Plaintiff's proof problems on claims 2, 3, and 4, however, Defendants asserted that the so-called "sealing surface" could not in fact form a generally fluid tight seal because of the grooves cut into the conduit when the coupler was screwed onto the conduit. When the grooves hit the smooth surface of the "seal land," rather than form a generally fluid tight seal, they would instead allow fluid and air to seep through.

On this legitimate and credible defense, Defendants elicited the following testimony from Messrs. Kaiser, Minemyer, and Lundeen:

During Mr. Kaiser's cross-examination, he acknowledged that the sharp threads on the B&C couplers cut grooves into the exterior of the conduit. (Ex. 2, Kaiser Tr., p. 40 ("Q. So that's to say that the threads and the sharp points with the self-tapping characteristics are cutting grooves into the exterior of the conduit, yes? A. Yes.")). Mr. Kaiser's testimony was consistent with Mr. Minemyer. Mr. Minemyer, himself, explained that in designing the thread in his own Lozon coupler, he " went to a sharp point, because I had to cut into the pipe. It cuts its own thread into the pipe, so I had to have a good sharp point. And that configuration gave me the best sharp point to bite into the pipe." (Ex. 3, Minemyer Tr. 14:19-23). With all parties agreeing that the coupler would cut grooves into the conduit, Mr. Kaiser went on to testify as follows:

> Q.    So you don't know whether or not as you sit here now the grooves of the channels that are cut in the exterior of the conduit prevent there from being a generally fluid tight seal between the

upon claim 2. (Ex. 1, '726 patent).

exterior of the conduit with the channels cut in it and the sealing surface, do you?

A.    I would not know that.

(Ex. 2, Kaiser Tr., p. 42.)

Similarly, Mr. Lundeen testified that the grooves prevent the "sealing surface" from creating a generally fluid tight seal. (Ex. 6, Lundeen Tr. 98-100). This was further borne out by the fact that the redesigned B&C coupler eliminates the "sealing surface" and yet is still, as a whole, air and water tight. (*Id.* at 101-012).

Thus, Defendants presented legitimate and credible defenses to infringement of claims 2, 3, and 4, precluding a finding of willfulness.

### 2.    Defendants Presented Legitimate and Credible Defenses At Trial Concerning Patent Claim 12.

Defendants also presented, at trial, legitimate and credible defenses to claim 12 of the '726 patent. Here too, Plaintiff's proof failed. *See* Defendants' JMOL re Non-Infringement. There was simply no evidence that each and every element of claim 12 exists in the B&C couplers, which Mr. Kaiser failed to properly analyze.

Defendants elicited testimony from Mr. Minemyer at his deposition and at trial, supporting Defendants' argument that the B&C couplers did not contain threads with a rear face that was "approximately perpendicular." While Mr. Minemyer testified at trial that "approximately perpendicular" could extend all the way to 75 degrees, supposedly based on testing that he had conducted on his own *Lozon* coupler, that testimony was inconsistent with *two* earlier statements he made under oath. At deposition (before his expert submitted a report measuring the B&C coupler), Mr. Minemyer testified that "you start getting into 10 or 15 [degrees] that's significantly different." (Ex. 3, Minemyer Tr., p.69.)[3]  The result being an

---

3  Throughout the case, the parties and their experts have referenced two different sides of the same angle. To be clear, when measuring the angle, there are three lines, including (1) the vertical reference line that is perpendicular to (2) the horizontal reference line and (3) the subject line in between them that creates the angles to be measured

admission that the 10 degree angle in the B&C coupler was "significantly different" than the claim language of "approximately perpendicular."

In addition, though Mr. Minemyer claimed that his new threshold of 75 degrees had some support through testing that he had conducted on his own *Lozon* coupler, that testimony was inconsistent with his earlier declaration that he conducted *no* testing on the angle of the thread. (December 20, 2010 Declaration, stating that he "did not test exactly how far from perpendicular the backside thread could extend." (DX-119, p. 21).) Mr. Minemyer stated that he knew 3 degrees worked and that "he had no need to go further." Id. Still further, he stated that "[a]ccordingly, [he] undertook no studies to learn the extent of [his] invention, that is, what angles would work, both in the molding process and in the field and what would not." (DX-119, p. 21).

Quite apart from Plaintiff and his many proof problems, Defendants elicited the following testimony from their own witness, Mr. Backman, who has been working as a machinist for over 34 years:

> Q. . . So if somebody said make me a part that's approximately 90 degrees, how much--how much off 90 degrees would you make--would you give yourself?
>
> A.    My judgment?
>
> Q.    Ah-ha.
>
> A.    I'd say maximum of maybe one half degree.

(Ex. 4, Backman Tr., p. 43). Thus, the 10 degree angle created by the B&C coupler thread (in the two couplers measured) was far beyond what someone in the industry would consider "approximately perpendicular."

---

(created in this case by the rear face of the thread). The measurement can be expressed as either of the two "adjacent angles," including the angle between the vertical line and the subject line (such as 10 degrees) or the angle between the subject line and the horizontal line (such as 80 degrees). The two "complementary angles" will always add up to 90 degrees. Thus, the B&C coupler was measured at an angle that has been expressed in this case as both 80 degrees and 10 degrees.

Finally, Mr. Minemyer's own design drawings called for a variance of no more than 3 degrees. DX-42 ("Q. And the rear face of the tooth is the 3-degree angle that you have used there? A. Yes.") (Ex. 3, Minemyer Tr., 54:10-12.). Thus, again, the 10 degree angle created by the threads in the B&C coupler was not "approximately perpendicular" because it was well beyond the 3 degrees indicated by Mr. Minemyer in his design drawing.

Thus, the testimony elicited from Mr. Kaiser, Mr. Minemyer, Mr. Backman, and the documentary evidence introduced by Defendants reflected that the 80 degree angle of the B&C couplers measured by Mr. Kaiser was not "approximately perpendicular." Whether ultimately successful or not, these legitimate defense to non-infringement of claim 12, together with Defendants' defenses to claims 2, 3 and 4 presented at trial, also preclude a finding of willfulness.

**3.** <u>Prior to Trial, Based On Defendants' Legitimate Invalidity Defenses, The Court Invalidated Eight of Plaintiff's 12 Asserted Claims Of The '726 Patent.</u>

The Court *already* has invalidated eight of Plaintiff's 12 asserted claims. Recall, in *DePuy* the Federal Circuit reversed the district court's summary judgment of noninfringement under the doctrine of equivalents and the jury ultimately found infringement. Even so, the district court and the Federal Circuit held there could not be willful infringement. In the instant case, there can be no infringement, under any circumstances, of Plaintiff's now-invalid claims 1, 5, 6, 10, 11, 13, 14, and 15 of the '726 patent. (*See* Mem. Op. and Order, October 27, 2009, Dkt. 252).

The Court's invalidation of the above eight claims of the '726 patent, is also relevant to whether Defendants willfully infringed the remaining asserted claims 2, 3, 4, and 12. In *Netscape* the court ruled as a matter of law that the first prong of *Seagate* was not satisfied where the defendants raised "credible invalidity arguments" that a single asserted claim was invalid, even while finding that "not all of defendants' arguments are meritorious" and allowing

infringement claims to proceed with respect to *22 other claims*. *Netscape*, 684 F. Supp. 2d at 728. Obviously, the ratio of invalid claims to valid ones is almost diametric between this case and *Netscape*. Likewise, in *Black & Decker*, the accused infringer made a "credible invalidity argument" precluding willfulness where only two patent claims were found invalid as obvious. *Black & Decker*, 2008 WL 60501 *7. Thus, the objective prong of *Seagate* cannot be satisfied where the Court has invalidated the majority of Plaintiff's patent.

### 4. Throughout The Proceedings, Defendants Have Presented Legitimate and Credible Invalidity Defenses To Claims 2, 3, and 4.

Moreover, even putting aside the Court's invalidation of the above eight claims, under *Seagate*'s objective prong, there is also substantial and credible objective evidence of the invalidity of claims 2, 3, and 4 of the '726 Patent. In this regard, Defendants have three times prepared and filed well-reasoned and legally and factually supported briefs setting forth, in exhaustive detail, the invalidity of asserted claims 2, 3, and 4, and Defendants' non-infringement of asserted claim 12. (*See* Dkt. 293, 294, 303, 304, 331, and 332 and the supporting Rule 56.1 statements; all incorporated herein by this reference.) Defendants' March 10, June 2, and November 8, 2010 summary judgment submissions (all made with leave of this Court) preclude a finding of objective willfulness on the remaining patent claims.

The fact that Defendants' invalidity arguments with respect to asserted claims 2, 3, and 4 were barred on procedural grounds does not diminish the *objective* value of the very straight-forward evidence of invalidity upon which Defendants' based their summary judgment motions.[4] And while the Court questioned the relevance of the evidence of the invalidity of claims 2, 3 and 4 and, in any event, determined in the pretrial conference hearings that such evidence of invalidity of claims 2, 3 and 4, if presented to the jury on the issue of willfulness, would be potentially confusing and prejudicial for the jury's consideration at trial under F.R.E. 403,

---

[4] Defendants filed two summary judgment motions that were stricken based on the Court's decision on a motion *in limine* to bar evidence of invalidity of patent claims 2, 3, and 4 on procedural grounds.

Defendants submit this evidence is relevant and appropriate for this Court's consideration on the objective prong of willfulness as a matter of law. *Home Depot U.S.A.*, 2011 WL 5519820, at *10.

Specifically, as Defendants' prior summary judgment motions make clear, had the patent examiner of the '726 patent known what the Court and the parties now know -- that claim 1 of the '726 patent is invalid due to the on-sale bar and thus the invention of "claim 1" has always been part of the "prior art" -- then claims 2, 3, and 4, which include claim 1, would never have issued but would have been barred as "obvious". (*See* Dkt. 293, 294, 303, 304, 331, and 332.) The facts on which this objective inquiry into the invalidity of claims 2, 3, and 4 are premised are facts that were available to a patent examiner at the Patent and Trademark Office, a defense attorney in patent litigation, this Court, and anyone else analyzing the objective reasonableness of an invalidity argument as to claims 2, 3, and 4. Those facts are as follows:

First, the sole basis for the Examiner's allowance of what issued as asserted claims 2, 3, and 4 of the '726 patent was the apparent *absence from the prior art* of two claim elements ("the Added Elements"). The Examiner found:

> The following is a statement of reasons for the indication of
> allowable subject matter: The prior art of record does not disclose
> [1] *a plurality of teeth having a point disposed thereupon, and* [2]
> *the teeth configured that an axis through the point of each tooth
> is tapered with respect to a central longitudinal axis of the
> conduit coupling* . . . .

(Proposed DX-44, '726 Patent, Office Action, February 17, 2004, p. 12 (bracketed text added) (parenthetical in original) (emphasis added)).

This is significant because those two Added Elements were part of independent Claim 1. Accordingly, by virtue of this Court's ruling invalidating claim 1 of the '726 patent, the two Added Elements – as well as every other element of independent claim 1 and several other claims – *were* prior art, and had been prior art since July 21, 1998, the date on which Plaintiff

offered for sale the inventions of claims 1, 5, 6, 10, 11, 13, 14, and 15 of the '726 patent. (*See* Mem. Op. and Order, October 27, 2009, Dkt. 252.) Thus, the "independent" elements of claims 2, 3, and 4 – i.e., the elements incorporated from independent claim 1 – exist in a single piece of prior art. Namely, the invention of claim 1 as offered for sale by Plaintiff on July 21, 1998. (*Id.*)

Second, the additional (or "dependent") elements of claims 2, 3, and 4 were already identified by the Examiner as being in the prior art Hunt patent -- which is listed on the face of the '726 patent and formed the basis for the Examiner's initial rejection of claims 2, 3 and 4. In this regard, as the Examiner stated when he initially rejected claims 2, 3, and 4 (i.e., when they depended from claim 1 in its initial form, without the addition of the two Added Elements discussed above):

> In regards to [prosecution] claim 55 [now asserted claim 2], ***Hunt '907 discloses a sealing surface disposed between the threaded portion and the protrusion***; and the sealing surface operable to cooperate with an exterior surface of the first conduit to form a generally fluid tight seal therebetween.

> In regards to [prosecution] claim 56 [now asserted claim 3], ***Hunt '907 discloses the sealing surface being tapered and operable to compress the exterior surface of the first conduit*** as the first conduit is threadably installed within interior surface.

> In regards to [prosecution] claim 57 [now asserted claim 4], ***Hunt '907 discloses the sealing surface being tapered at approximately one and one-half degrees*** with respect to a central longitudinal axis of the conduit coupling (at one point along the surface).

(Proposed DX-44, '726 Patent, Office Action, 2/17/04, p. 12 (bracketed text added) (emphasis added)).

In rejecting as obvious prosecution claim 54 (which had not, as yet, been amended to include the Added Elements), the Examiner actually determined that the Hunt '907 patent disclosed ***all*** of the elements of that claim – ***other than*** a tapered thread. (*Id.* at 9 ("In regards to claim 54, Hunt '907 discloses the claimed invention except for the threaded portion being tapered with respect to a central longitudinal axis of the first connector.")). And, of course, the

15

tapered thread was part of the prior art from Minemyer's own claim 1. Thus, together, the elements within claim 1 and the elements within the Hunt patent combine and render obvious Plaintiff's current claims 2, 3, and 4.

Thus, the "common sense" objective facts that would "inform the obviousness determination," *Oatey Co. v. IPS Corp.*, 665 F. Supp. 2d 830, 846 (N.D. Ohio 2009), include an analysis of the Examiner's pre-*KSR* determination that all but two elements of claims 2, 3, and 4 exist in the prior art, the Examiner's initial rejection of those claims, the Examiner's eventual ***allowance*** of those claims ***based solely on the addition of the two elements*** not then found in the prior art, and this Court's legal determination that ***those same elements have been part of the prior art since July 21, 1998*** – long before the Examiner's February 17, 2004 Office Action.

These facts are relevant under *Seagate*'s objective threshold inquiry, and they clearly support a credible invalidity argument with respect to claims 2, 3, and 4. Indeed, this is the backdrop against which the objective threshold prong of *Seagate* must be applied, particularly in light of the other defenses and the overall record in this case, as set forth above.

**B.** **Plaintiff's Failure To File A Preliminary Injunction Precludes A Finding Of Willfulness For Post-Filing Activity.**

The evidence has shown that Defendants R-Boc and Mr. and Mrs. Lundeen had legal notice of the '726 patent in November 2006, when Plaintiff's attorney sent a letter and copies of the '726 patent to them, and that Dura-Line and Mr. Grimsley had legal notice of the '726 patent when they received the '726 patent sometime in November 2006 along with a letter from Plaintiff. Four months later Plaintiff filed his Complaint in March 2007. The evidence has shown that Defendants Mr. and Mrs. Krajecki, and their company, Precision Custom Molders, Inc., first had legal notice of the '726 patent when the First Amended Complaint was filed in May 2007, and that Mr. Backman and his company Lebac Plastic Mold Co., had legal notice of

the '726 patent when the Second Amended Complaint was filed in August 2007, adding those defendants, respectively.

Plaintiff argues that despite legal notice of the '726 patent, all Defendants continued to make, use or sell the infringing products after he sued them. However, Plaintiff never – at any time in this litigation – filed a motion for preliminary injunction to stop the alleged continued infringement. Plaintiff testified that Defendants' decision to compete with Plaintiff by selling a coupler allegedly covered by his claimed inventions in the '726 patent ruined his business and the market for his products. Yet, in the face of what Plaintiff now wants to argue was "objectively unreasonable" conduct by Defendants – i.e., an assertion that there were no legitimate or credible defenses to infringement and validity – Plaintiff sat idly by without ever moving the Court for relief to stop the alleged infringing activity.

The Federal Circuit in *Seagate* stated that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *Seagate*, 497 F.3d at 1374.

> By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. [Citation omitted.] **A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.**

*Id.* (emphasis added). While there is no categorical rule that a plaintiff's failure to file a preliminary injunction automatically bars post-suit willful infringement, the circumstances and particular facts of the case are considered. *See, e.g., Anascape v. Microsoft Corp.*, 2008 WL 7182476, *3-4 (E.D. Texas April 25, 2008) (granting summary judgment on willfulness for post-complaint conduct where no preliminary injunction was sought); *Webmap Tech., LLC v. Google, Inc.*, 2010 WL 3768097 *3-4 (E.D. Tex. 2010) (Plaintiff's claim for post-filing willfulness barred where the plaintiff sought no preliminary injunction and there were no extenuating circumstances to depart from the preliminary injunction requirement); *St. Clair Intellectual Prop.*

*Consultants, Inc. v. Palm, Inc.*, 2009 WL 1649751 *1 (D. Del. 2009) (willfulness claim survived where no preliminary injunction was sought only because patent exited reexamination without narrowed claims (unlike here where eight of 12 claims have been invalidated and the remaining claims are subject to serious doubt)).

Here, Plaintiff has waived his right to seek damages for post-complaint willful infringement for failing to move for injunctive relief. He has no excuse for his total failure to seek injunctive relief, particularly when he was in a competitive situation and actively selling his claimed invention (or so he alleges) in the market. In addition, Plaintiff failed to even assert the claims on trial, claims 2, 3, 4 and 12 of the 726 patent, until the Second Amended Complaint in August 2007. On this record, there can be no willful infringement for any post-complaint conduct of the Defendants. This is especially true of Defendants Mr. and Mrs. Krajecki, Precision Custom Molders, Inc., Mr. Backman and Lebac Plastic Mold Co. But it applies as well to the other defendants, the Lundeens, R-Boc, Dura-Line and Mr. Grimsley, given the totality of the circumstances in this case. *See, e.g., Anascape v. Microsoft Corp.*, 2008 WL 7182476, *3-4; *Webmap Tech.*, 2010 WL 3768097 at *3-4.

## III. THOUGH FOCUSED ON THE SUBJECTIVE PRONG, WHICH THE JURY SHOULD NEVER REACH, PLAINTIFF'S PROOF OF WILLFULNESS FAILS AS A MATTER OF LAW.

Plaintiff's proof of willfulness focuses solely on the subjective prong of willfulness, which the jury should not even reach. Defendants assert, in any event, that there is no basis for a jury verdict of subjective willfulness.

To be sure, the B&C coupler was modeled after the Lozon coupler. However, a finding of subjective willfulness requires that the Defendants knew about the '726 patent when they undertook the design, manufacture and sale of the B&C coupler. There is no evidence that the Defendants knew of the '726 patent when they designed, manufactured, and sold, respectively, the B&C couplers.

**A.  Defendants Ronald Backman and LeBac Plastic Molders Are Entitled To Judgment As A Matter Of Law On The Issue of Willful Infringement**

The undisputed evidence is that Defendants LeBac and Backman did not have notice of the asserted '726 patent until August 15, 2007, which is the day Plaintiff first added Defendants LeBac and Backman. Dkt. 62, Second Amended Complaint. The evidence also establishes that Defendants LeBac and Backman completed all work and services regarding the molds at issue in this case in July of 2007. (Ex. 4, Backman Tr., p.28.) As such, Defendants LeBac and Backman have taken no actions or steps related to the manufacture, sale, offer for sale or importation of anything related to the accused products after July of 2007. Even if Defendants LeBac and Backman had legal notice of the asserted '726 patent as of August of 2007, there is no evidence that they conducted any activity after July of 2007 that contributed to the infringement of the '726 patent. Therefore, without legal notice prior to July of 2007, Plaintiff cannot establish the second prong of *Seagate* to prove willful infringement.

The uncontradicted evidence in the record shows that in fact Defendants LeBac and Backman were never aware of the '726 patent prior to August of 2007. Specifically, Defendants LeBac and Backman testified that they only learned of the '726 patent after being served in September of 2007:

> Q.  Okay. When was the first time you learned about the '726 patent that's at issue in this litigation?
>
> A.  When I was served in September [of 2007].
>
> Q.  So you had no idea about Mr. Minemyer – I mean, yeah, Mr. Minemyer's '726 patent prior to being sued in this litigation; is that correct?
>
> A.  That's correct. That's correct.

(Ex. 4, Backman Tr., pp. 39-40.) Further, Plaintiff does not even have sufficient circumstantial evidence to establish that Defendants LeBac and Backman had notice of the '726 patent prior to August of 2007. Specifically, the evidence shows that Defendants LeBac and Backman did not

know, or even met, Mr. Minemyer, Lozon, the Lundeens, R-Boc, Mr. Grimsley, or Dura-Line prior to being added to this litigation in August of 2007. (Ex.4, Backman Tr., pp. 34-37.) Moreover, there is no evidence that the only parties Defendants LeBac and Backman knew, Mr. and Mrs. Krajecki and Precision Custom Molders, ever informed Defendants LeBac and Backman of the '726 patent before August of 2007. In the absence of such evidence, Plaintiff simply cannot establish willful infringement against Defendants LeBac and Backman.

**B.      Defendants Edward and Sandra Krajecki and Precision Custom Molders Are Entitled To Judgment As A Matter Of Law On The Issue Of Willful Infringement**

The record evidence reflects that Mr. Krajecki was provided with samples of the Lozon coupler and that none of those couplers provided either Mr. or Mrs. Krajecki actual knowledge of the '726 patent that is at issue in this case. (*See e.g.*, Ex. 5, E. Krajecki Tr., 34:5-8, 37:16-23, 39:9-15.) It is undisputed that the Lozon samples either had no markings, a "patent pending" mark, or were mismarked with the Kawasaki patent number that did not cover the marked product or is not at issue in this case. *See, e.g.,* Ex. 5, E. Krajecki Tr., 34:5-8, 37:16-23, 39:9-15. In addition, the evidence establishes that neither Plaintiff, nor his associate Mr. Maynard, ever contacted, in writing or otherwise, either Mr. or Mrs. Krajecki to provide them with actual notice of the '726 patent at issue in this case until Mr. Minemyer filed suit. Moreover, there has been no evidence that anyone provided either Mr. or Mrs. Krajecki with notice of the '726 patent prior to the filing of the instant suit. At most, the evidence shows that Mr. Krajecki learned of the '772 patent *after* this lawsuit (Ex. 5, E. Krajecki Tr., 39:9-15; 41:12-14; 47:14-18), which covers a two-piece coupler that is not at issue and does not apply to the products manufactured by Precision Custom Molders. Neither Krajecki had any knowledge of the correspondence between the Plaintiff and the other Defendants. *See* Exhibits *generally* (reflecting that none of the correspondence was to, from, or copied the Krajeckis). Indeed, the record with respect to Mrs. Krajecki is virtually non-existent. *See generally*, S. Krajecki Testimony. Although the

testimony showed that Mr. Krajecki (not Mrs. Krajecki) provided Mr. Backman with samples and asked him to provide a mold that could create a part similar to the Lozon coupler, Mr. Krajecki never took any actions to deliberately manufacture a part with the patented features because he was completely unaware of the '726 patent. (*See e.g.*, Ex. 5, E. Krajecki Tr., 34:5-8, 37:16-23, 39:9-15).

Of course, corporations, like Precision Custom Molders, can act only through their employees and agent. Thus, the above evidence that is insufficient to hold Mr. and Mrs. Krajecki liable for willful infringement is, likewise, insufficient to establish willful infringement against Precision Custom Molders. Therefore, Mr. and Mrs. Krajecki and their company, Precision Custom Molders, are entitled to judgment as a matter of law on the issue of willful infringement.

### C. Defendant Mr. Grimsley Is Entitled To Judgment As A Matter Of Law On The Issue Of Willful Infringement

There is no evidence that Mr. Grimsley had knowledge of the '726 patent until mid-November 2006. The record evidence reflects that Mr. Grimsley was responsible for responding to the AT&T and Verizon requests for proposals on July 24, 2006 and August 11, 2006, respectively (See e.g., PX-47; PX-36), at which time his intent was to offer the B&C couplers for sale on behalf of Dura-Line. Yet, the evidence also shows that at the time Mr. Grimsley bid the B&C coupler, he was unaware of the '726 patent. It was not until mid-November 2006, that Mr. Grimsley first learned of the '726 patent, when Mr. Minemyer mailed it to him after a meeting they had in Arizona. Although Mr. Grimsley had previously heard from Mr. Lundeen that there was a patent number on the Lozon coupler (the number for the '722 Kawasaki patent), he was assured by Mr. Lundeen that the patent number was for a Kawasaki screw jack. He also was assured that a similar patent number, the '772 patent, belonged to Mr. Minemyer but was for a two-piece coupler. Mr. Grimsley further relied upon Mr. Lundeen's assurances that R-BOC had

obtained legal counsel and that Mr. Minemyer's patent covered only a two-piece coupler.

The only circumstantial evidence that Plaintiff points to in support of his theory that Mr. Grimsley knew about the '726 patent when he first prepared the Verizon and AT&T bids was PX 66, an e-mail from Mr. Maynard to Mr. and Mrs. Lundeen that was later forwarded to Mr. Grimsley. Plaintiff relies upon that portion of the e-mail that claims Mr. Minemyer had "a series of patents" on various coupler features, including "low profile, air and water tight, and . . . good pull out" -- features that Mr. Grimsley testified were present in all couplers and thus, were not a credible indication of any patents. Plaintiff's reliance on this e-mail to show knowledge is further unwarranted by the fact that in the same e-mail, Mr. Maynard stated that "Tom's patents do not over a plastic reverse threaded coupler as a complete. A plastic reverse threaded coupler was made well over 20 years ago and is obvious to anyone in the industry in cannot be patented." PX-66 at pg. 2. Further, it is undisputed that this e-mail does *not* mention the '726 patent. In short, this e-mail certainly does not suffice to show actual notice of the '726 patent. Moreover, Mr. Grimsley should not be expected to do more in the face of this ambiguous e-mail considering all Mr. Maynard had to do in his e-mail was identify *by patent number* the asserted patents.

Mr. Grimsley admitted that he received the '726 patent from Mr. Minemyer in mid-November 2006, after their meeting in Arizona, providing the first and only direct evidence of Mr. Grimsley's actual knowledge of the '726 patent. Thus, there is zero evidence from which a reasonable jury could find that Mr. Grimsley knew of the '726 patent before Mr. Minemyer sent him the '726 patent in mid-November 2006, which was after his actions regarding the Verizon and AT&T bids.

As to the events *after* November 2006, there is no evidence that Mr. Grimsley willfully infringed because he was directed by his employer to continue selling the B&C couplers on Dura-Line's behalf. To begin, the only evidence that Mr. Grimsley induced Dura-Line was that

Mr. Grimsley signed the contracts with Verizon and AT&T, and Mr. Grimsley acted as a sales representative of Dura-Line while Dura-Line continued to sell the accused couplers. Yet, the record was clear that after Mr. Grimsley learned of the '726 patent, he informed Dura-Line's CEO, Mr. Chari, of the patents and of Mr. Minemyer's assertions and effectively took himself out of the decision-making process due to the threat of a lawsuit. These facts do not show that Grimsley willfully induced infringement. Therefore, Mr. Grimsley is entitled to judgment as a matter of law on the issue of willful infringement.

### D. Dura-Line Is Entitled To Judgment As A Matter Of Law On The Issue Of Willful Infringement

As with all corporations, Dura-Line acts through its employees and agents. Therefore, the same facts relative to Mr. Grimsley's knowledge above, are likewise applicable to Dura-Line, reflecting that Dura-Line did not have notice of the '726 patent until mid-November 2006. Further, Plaintiff has failed to submit any evidence, apart from Mr. Grimsley's actions, that reflect that Dura-Line subjectively believed that it was infringing a valid patent. To the contrary, shortly after receiving the '726 patent, Dura-Line began vigorously defending this action, reflecting its belief that it was not infringing a valid patent. Thus, Dura-Line is entitled to JMOL of no willful infringement.

### E. Defendants Mr. and Mrs. Lundeen And R-Boc Representatives Are Entitled To Judgment As A Matter Of Law On The Issue Of Willful Infringement

Mr. and Mrs. Lundeen lacked actual knowledge of the claims asserted in the '726 patent, prior to the filing of the Second Amended Complaint. It is undisputed that the Plaintiff mismarked his couplers. The patent marked on the couplers referred to a patent that was owned by a third party and did not relate to the products on which the patent was marked. Nevertheless, the evidence established, conclusively, that Mr. and Mrs. Lundeen took additional steps by actually searching for the Plaintiff's patent that most closely matched the patent marked on the product. The evidence established that the patent that most closely matched the patent marked

on the Plaintiff's coupler (the '772 patent) was for a two-piece coupler. Moreover, it is undisputed that the '772 patent does not cover the couplers at issue in this case.

In addition, the evidence shows that, despite having several opportunities to do so, Plaintiff never once provided Mr. and Mrs. Lundeen with actual notice of the '726 patent prior to the November 28, 2006 letter from his counsel. Even still, the evidence shows Mr. and Mrs. Lundeen were led to believe that the only claims of the '726 at issue were claims 13-16. Mr. and Mrs. Lundeen were correct to believe that those claims were not infringed because claims 13-15 recited elements that their company's products do not include and because claim 16 was again directed toward a two-piece coupler. Mr. and Mrs. Lundeen's beliefs were affirmed when this Court held claims 13-15 invalid and not infringed, and the Plaintiff dismissed his allegation of infringement regarding claim 16.

In light of the above facts, Mr. and Mrs. Lundeen could not have had the necessary knowledge to willfully infringe. Moreover, Mr. and Mrs. Lundeen acted reasonably because they believed that the accused products did not have the required fluid tight sealing surface or the rear thread angle of approximately perpendicular. Those beliefs were confirmed by the testimony of Messrs. Backman and Kaiser, and the Plaintiff himself, as set forth above. And, Mr. and Mrs. Lundeen's belief--that the B&C couplers did not have a surface to create a "fluid tight seal" between the surface and the conduit--was confirmed by the introduction of the B&C re-designed coupler, which eliminated the "sealing" surface and was still air and water tight. As a result, Mr. and Mrs. Lundeen could neither have had the necessary knowledge or intent to willfully infringement of the '726 patent. Therefore, Mr. and Mrs. Lundeen are entitled to judgment as a matter of law on Plaintiff's claim of willful infringement.

## IV. CONCLUSION

Given Defendants' legitimate and credible defenses, Plaintiff cannot prove the objective prong of *Seagate*, the threshold inquiry for willfulness. Therefore, the issue of willfulness

should not even reach the jury, and Defendants request JMOL of no willful infringement in their

favor.

Respectfully submitted,

Dated: February 15, 2012     /s/ Matthew G. McAndrews
            Matthew G. McAndrews
            Frederick C. Laney
            Niro, Haller & Niro
            181 W. Madison Suite 4600
            Chicago, Illinois 60602
            (312) 236-0733
            Facsimile: (312) 236-3137
            E-mail: mmcandrews@nshn.com
            E-mail: laney@nshn.com

*Attorneys for Defendants*

R-BOC Representatives, Inc., Carolyn Lundeen, Robert Lundeen, Precision Custom Molders, Inc., Edward Krajecki, Sandra Krajecki, LeBac Plastic Mold Co., Inc., and Ronald Backman


/s/ Natalie J. Spears
Natalie J. Spears
SNR Denton US LLP
7800 Sears Tower
233 South Wacker drive
Chicago, Illinois 60606
Phone: (312) 876-8000
Facsimile: (312) 876-7934
E-mail: nspears@snrdenton.com

Teresa A. Ascencio, Esq.
SNR Denton US LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Phone: (816) 460-2400
E-mail: tascencio@snrdenton.com

*Attorneys for Defendants*

Dura-Line Corporation and Timothy A. Grimsley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2012, I electronically filed the preceding **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO WILLFUL INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Sean B. Crotty
The Coleman Law Firm
77 West Wacker Drive
The Chambers, Suite 4800
Chicago, IL 60601
Phone: 312-444-1000
Fax: 312-444-10258
SCrotty@colemanlawfirm.com

Douglas M. Chalmers, Esq.
Law Offices of Douglas M. Chalmers
77 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 606-8700
Fax: (312) 444-1028
E-mail: dmc@chalmers-law.com

**Attorneys for Plaintiff, John T. ("Tom") Minemyer**

Matthew G. McAndrews
Frederick C. Laney
Niro, Haller & Niro
181 W. Madison Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com
E-mail: laney@nshn.com

**Attorneys for Defendants R-BOC Representatives, Inc., Carolyn Lundeen, Robert Lundeen, Precision Custom Molders, Inc., Edward Krajecki, Sandra Krajecki, LeBac Plastic Mold Co., Inc., and Ronald Backman**

/s/ Natalie J. Spears