IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN T. ("TOM") MINEMYER,<br><br>Plaintiff,<br><br>v.<br><br>R-BOC REPRESENTATIVES, INC., et al.,<br><br>Defendants. | Civil Action No. 07-CV-1763<br><br>Magistrate Judge Jeffrey Cole |

## **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT**

Plaintiff has simply failed to meet his burden of proof on the issue of infringement, and Defendants are, therefore, entitled to judgment as a matter of law on the issue of infringement. Plaintiff introduced only conclusory expert opinion about whether the accused B&C coupler met the functional element of claim 2 and regarding the issue of "approximately perpendicular" for claim 12. Moreover, according to his own standards of proof, Plaintiff's expert failed to measure a sufficient number of B&C couplers to prove infringement as to claim 12. Finally, Plaintiff failed to present any testimony establishing that the accused B&C couplers, other than the B&C 1¼ inch SIDR 11.5 (orange) and 1¼ inch 1.64-1.71 (blue) couplers, satisfy each and every element of the asserted claims of the '726 patent. Therefore, Defendants are entitled to judgment as a matter of law on the issue of infringement.

### A. The Legal Standard for Motions For Judgment As A Matter Of Law

The Court may grant a motion for judgment as a matter of law if a party's proof on a claim fails to such a degree that the jury could not reasonably find for the party on that claim.

    (a)    Judgment as a Matter of Law.
        (1) In General.
            If a party has been fully heard on an issue during a jury trial
            and the court finds that a reasonable jury would not have a
            legally sufficient evidentiary basis to find for the party on

> that issue, the court may:
>
> (A)   resolve the issue against the party; and
>
> (B)   grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> * * * *

Fed. R. Civ. Proc. 50(a)(1).

"[T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but it may not make credibility determinations or weigh any evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citations omitted). *TI Group Automotive Syst., Inc. v. VDO North Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004) (Judgment as a matter of law "is appropriate where the record is critically deficient of the minimum quantum of evidence in support of the verdict") (internal quotations omitted).

Without question, "[t]o prove infringement, the plaintiff bears the burden of proof to show the presence of every element . . . in the accused devices." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). All of Plaintiff's remaining causes of action rest upon his allegation that the accused B&C coupler infringes claims 2, 3, 4 and 12 of U.S. patent 6,851,726 ("the '726 Patent"),[1] but Plaintiff's evidence of infringement is insufficient. Thus, all his claims must fail.

Judgment as a matter of law on the issue of infringement is proper where the plaintiff offers only conclusory expert opinion and assumptions concerning a functional element of a patent. *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319-20 (Fed. Cir. 2006) (The plaintiff's expert gave conclusory opinions and "presented no testimony based on the accused products themselves" as to a functional element of the patent, warranting judgment as a matter of

---

1 *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed.Cir. 2005) (To succeed on a claim of inducement, the plaintiff must prove a direct infringement occurred).

2

law).

### B. Defendants are Entitled To Judgment As A Matter Of Law On Claims 2, 3, and 4 of the '726 Patent

Claim 2 of Plaintiff's '726 Patent requires:

> [a] sealing surface disposed between the threaded portion and the protrusion; and the sealing surface operable to cooperate with an exterior surface of the first conduit to form a *generally fluid tight seal* therebetween.

'726 Patent (emphasis added). Claims 3 and 4 depend from claim 2 of the '726 Patent.[2] Thus, if any element of claim 2 cannot be found in the accused B&C coupler, then Plaintiff's allegations of infringement with respect to claims 3 and 4 must also fail. *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) (holding that dependent patent claims cannot be infringed when the broader claim from which it depends is not infringed.).

Plaintiff introduced only conclusory expert opinion that the accused B&C coupler's smooth sealing surface operated to "form a generally fluid tight seal." As the Federal Circuit aptly held in *Yoon Ja Kim*, Plaintiff's proof is insufficient.

> It was undisputed that the accused products included the amount of ascorbic acid, food acid, and yeast in the proportions listed in claim 10. The question was whether the claimed ingredients in the accused products satisfied the *functionality limitations.* Kim's evidence of infringement on the question of *functionality* was by analogy. She testified that her patented composition strengthened dough, increased loaf volume, and contributed to fine crumb grain. Since the accused products included the same ingredients as the patented composition, Kim simply assumed that they had the same effects on dough as did the patented composition.
>
> * * *
>
> While Kim, who was qualified as an expert, offered *conclusory testimony* that the additional ingredients would not have materially affected the pertinent characteristics of the bread, *Kim did not support this determination with any examinations or tests of the*

---

2 Claim 3 of the '726 Patent prescribes a "conduit coupling of claim 2 . . . ," and claim 4 of the '726 patent, in turn, prescribes a "conduit coupling of claim 3 . . ." such that both claims 3 and 4 are dependent upon claim 2.

3

> *actual accused products*. Under the circumstances of this case, we agree with the district court that Kim did not prove infringement because she presented no testimony based on the accused products themselves that supported a finding of infringement. ***We thus agree that the district court properly granted JMOL to ConAgra on claim 10***.

*Yoon Ja Kim*, 465 F.3d at 1319-20 (emphasis added); *see also Krippelz v. Ford Motor Co.*, Slip Op. at 15 (Fed. Cir. Jan. 27, 2012) (criticizing the plaintiff's expert for "conclusory testimony": "His generic statements that the 'conical' limitation was unmet were therefore too conclusory to sustain the jury's verdict); *Sitrick v. Dreamworks*, LLC, 516 F.3d 993, 1001 (Fed. Cir. 2008) (holding, on summary judgment, that such conclusory testimony could not create a triable issue of fact).

In the case at bar, Plaintiff has failed to provide anything other than naked conclusions regarding a critical element of claim 2 of the '726 patent. Specifically, claim 2 recites a "sealing surface operable to cooperate with an exterior surface of the first conduit to form a **generally fluid tight seal** therebetween." Ex. 1, '726 patent at claim 2 (emphasis added). As Mr. Kaiser testified, that fluid tight seal must be established between the alleged sealing surface and the exterior of the conduit. Ex. 2, p. 41 ("Q. So the generally fluid tight seal therebetween is talking about the space between the sealing surface and the exterior of the conduit; is that right? A. That would form a seal, yes."). Nevertheless, despite Mr. Kaiser's naked assertions on direct, Mr. Kaiser conceded that he had no basis on which he could base his conclusion that this claim element is satisfied by the B&C couplers he analyzed.

During Mr. Kaiser's cross-examination, he acknowledged that the sharp threads on the B&C couplers cut grooves into the exterior of the conduit. Ex. 2, p. 40 ("Q. So that's to say that the threads and the sharp points with the self-tapping characteristics are cutting grooves into the exterior of the conduit, yes? A. Yes."). Mr. Kaiser continued to testify that he didn't do anything to determine whether there is a generally fluid tight seal between the sealing land and

4

the exterior of the conduit, which included the grooves carved-out by the sharp teeth:

> Q. Now, in preparing your analysis you didn't do any testing at all to confirm that there's a generally fluid tight seal between the sealing land and the exterior of the conduit, did you?
>
> A. We did not have that method of testing.
>
> Q. You didn't do any pressure testing?
>
> A. I did not.
>
> Q. With air?
>
> A. No.
>
> Q. You didn't do any water testing?
>
> A. No.
>
> Q. Or gas testing?
>
> A. No, we don't have that type of equipment.

Ex. 2, p. 41-2. Ultimately, Mr. Kaiser was forced on cross-examination to concede that he does not know whether the grooves that are cut in the exterior of the conduit prevent there from being a fluid tight seal:

> Q. So you don't know whether or not as you sit here now the grooves of the channels that are cut in the exterior of the conduit prevent there from being a generally fluid tight seal between the exterior of the conduit with the channels cut in it and the sealing surface, do you?
>
> A. I would not know that.
>
> Q. Okay. And you didn't test for that, did you?
>
> A. No.

Ex. 2, p. 42. This testimony alone establishes that the plaintiff has failed to meet his burden of proof with respect to claims 2, 3, and 4. Defendants are, therefore, entitled to judgment as a matter of law on the claim of infringement as to claims 2, 3, and 4 of the '726 Patent.

### C. Defendants are Entitled To Judgment As A Matter Of Law On Claim 12 of the '726 Patent

Plaintiff's proof of infringement of claim 12 fares no better. There are two separate considerations for Judgment as a Matter of Law regarding claim 12 of the '726 patent. First, Plaintiff has failed to present sufficient evidence to allow the jury to find infringement of the

B&C couplers because his expert, Mr. Kaiser, failed to analyze or provide specific testimony showing the presence of each and every element of claim 12. Second, Plaintiff has failed to provide sufficient evidence that even the B&C couplers that Mr. Kaiser did consider include the first thread with a "rear face disposed approximately perpendicular to a longitudinal axis through the base of the first thread" as required by claim 12. See Ex. 1, '726 patent at claim 12.

First, Plaintiff has completely failed to provide any evidence that the couplers not specifically considered by Mr. Kaiser includes each and every element required by asserted claim 12. Although Mr. Kaiser performed an infringement analysis of claim 12 for one B&C 1¼ inch SIDR 11.5 (orange) coupler and one 1¼ inch 1.64-1.71 (blue) coupler, he failed to provide any testimony that the remaining B&C couplers in other sizes also include each of the elements required by claim 12. In fact, Mr. Kaiser confirmed that the B&C couplers with different sizes use different molds and different cores, which all result in different parts:

> Q. Is it your understanding that every model of B and C coupler that's sold, all nineteen of them are manufactured in the same mold?
>
> A. That's not what I was understanding it to be. We use different molds to make different sizes, exterior dimensions.
>
> \*   \*   \*
>
> Q. A one-inch coupler is manufactured in a different mold than an inch-an-a-quarter coupler, yes?
>
> A. Correct.
>
> Q. And a one-inch coupler has different core inserts that create screws than does an inch-and-a-quarter?
>
> A. It would have to be a smaller core, yes.
>
> Q. So a different core?
>
> A. Yes.
>
> Q. You could have different manufacturing outcomes based on those different parts, yes?
>
> A. Well, it's going to make a different part, yes.

6

> Q. It's going to be a different part?
>
> A. Yes.
>
> Q. And, of course, the same would be true if you go from an inch-and-a-quarter to a two-inch, you're going to have a different core size?
>
> A. Correct.
>
> Q. That's a different tool that's used and the mold itself is different, yes?
>
> A. It would be a different mold, yes.
>
> Q. Okay. And also for the inch-and-a-half size, the same principle applies. I don't want to belabor the point, but I heard Mr. Chalmers to say — and I want to be very clear — that it is not your understanding that all of these parts come out of the same mold?
>
> A. No. I was referring to **parts that are the same size and use the same core have come out of the same mold and *generally* would be the same.**

Ex. 2, pp. 54-55 (emphasis added). Mr. Kaiser also made clear that he did not consider any of the molds, cores or design specifications for the B&C couplers accused in this case:

> Q. So you haven't seen the molds, you haven't seen the cores, and you haven't analyzed the design specifications that Mr. Krajecki used to manufacture the B and C couplers that are at issue in this case; is that right?
>
> A. Yes.

Ex. 2, p. 35. Finally, other than a single B&C 1¼ inch SIDR 11.5 (orange) coupler and a single 1¼ inch 1.64-1.71 (blue) coupler, Mr. Kaiser admitted that he completely failed to do any analysis of the other B&C coupler alleged to infringe:

> Q. Okay, So, Mr. Kaiser, to be clear, with the exception of the 1448 orange coupler [B&C 1¼ inch SIDR 11.5], a sample of what you have in a cross-section in front of you, and the blue inch-and-a-quarter 164 inside diameter [B&C 1¼ inch 1.64-1.71], *you did not section, measure, analyze, or average any other model on this list [PX 54]; is that correct?*
>
> A. *Correct.*

Ex. 2, p. 61 (emphasis added). There is simply no evidence that each and every element required by any of the asserted claims, including especially of claim 12, exists in the couplers Mr. Kaiser failed to properly analyze. In short, other than the B&C 1¼ inch SIDR 11.5 (orange) and 1¼

7

inch 1.64-1.71 (blue) couplers, Plaintiff has completely failed to conduct even the most basic analysis of the accused B&C couplers. Any opinion by Mr. Kaiser about the infringement of those products is simply conjecture and speculation. *See Winters v. Fru-Con, Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (holding district court did not err in excluding expert testimony as "mere speculation and conjecture," where otherwise qualified expert merely looked at a defective part, but did not perform tests or calculations on it); *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250-51 (4th Cir. 1999)). ("An expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.") (citations omitted). As such, Defendants are, at least, entitled judgment as a matter of law of non-infringement for all of the B&C couplers other than the B&C 1¼ inch SIDR 11.5 (orange) and 1¼ inch 1.64-1.71 (blue) couplers considered by Mr. Kaiser.

Second, claim 12 of the '726 patent recites a thread wherein the "rear face [is] disposed approximately perpendicular to a longitudinal axis through the base of the first thread." Ex. 1, '726 Patent. Plaintiff, therefore, had the burden to present sufficient evidence to support a conclusion that the B&C couplers accused and analyzed include a rear face that is approximately 90 degrees. The testimony, however, established indisputably that the manufacturing process could substantially affect the outcome and measurements of the final parts:

> Q. And those [thirteen factors] are all factors that could substantially affect the outcome and the measurements of the final parts; isn't that right?
>
> A. Yes, they could.

Ex. 2, pp. 29-30. Mr. Kaiser testified that in order to get accurate measurements and overcome the substantial affects of the manufacturing process and the sectioning process he used to conduct his analysis, he needed to either get a substantial number of the accused products to average out the differences or learn the intent of the molder and/or the mold maker himself. Ex. 2, pp. 32-33. Nevertheless, Mr. Kaiser did neither in this case. Ex. 2, pp. 33-34. As such,

8

Plaintiff has only presented measurements without sufficient proof.

Courts have routinely excluded expert testimony that is based on mere hypothesis or insufficient measurements. *See, e.g., DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006) (holding district did not err in excluding expert who based analysis on "hypothetical terms" and "inference"); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (affirming exclusion of expert's alternative design testimony which was insufficiently measured and tested); *Oglesby*, 190 F.3d at 250-51. Like in these cases, Kaiser's expert opinion, because it was based on mere extrapolation, hypothesis and speculation, is unreliable and does not "assist the trier of fact" and should be excluded. *See Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 590 (1993); *see also Winters*, 498 F.3d at 743.

Still there is more. Plaintiff has only provided conclusory testimony regarding whether the B&C couplers satisfy claim 12's requirement for "rear face [is] disposed approximately perpendicular (i.e., approximately 90°) to a longitudinal axis through the base of the first thread." The principal evidence solicited for this element was again provided by Mr. Kaiser. And, he only provided the naked assertion that the B&C couplers considered had "approximately" a rear face "approximately perpendicular":

> Q. Okay. Here's the good one, the rear face disposed approximately perpendicular to a longitudinal axis through the base of the first thread. You see that?
>
> A. Yes.
>
> Q. Did the B and C have that?
>
> A. Yes, it does.
>
> Q. Approximately 90-degree angle?
>
> A. ***Approximately.***

Ex. 2, pp. 18-19. To state the obvious first, that testimony simply begs the question. The testimony elicited only states the conclusion at best, which is by definition improper conclusory

9

testimony. Moreover, that testimony, even when considered in a light most favorable to the Plaintiff, only demonstrates that the measured thread rear face "approximates" the required "approximately 90-degree angle" claim limitation. As such, this testimony cannot be sufficient to support a finding of infringement.

Although Plaintiff may reference Mr. Minemyer's testimony, that testimony fairs no better. Even setting aside Mr. Minemyer's testimony that "you start getting into 10 or 15 [degrees] that's significantly different", Ex. 3, p.69, his only other testimony is also conclusory and conjecture. Specifically, the following testimony was solicited by Plaintiff's counsel:

> Q. How about 75?
>
> A. Yeah. See, to me – but, see, I know the function of the part, and I know what works and what doesn't, and so that's how I always assess it.
>
> You know, more perpendicular is better. But you're still in the range of working until you get to 15 degrees or so. After that, you're really deteriorating the function of the part.
>
> Q. Well, what are you comparing it to?
>
> A. I'm just comparing it to my tests. I mean, my test say that, okay, it works here, doesn't work as well here, works – doesn't really work at all when you get over here.

Ex. 4, p. 15. There are at least two problems with the above testimony as support for infringement of claim 12. First, the above testimony is not about the accused couplers. "Infringement . . .does not arise by comparing the accused product . . .with a commercial embodiment of the patentee." *See, e.g., Johnson & Johnson Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc).

Second, Mr. Minemyer already stated in a sworn affidavit in this case on December 20, 2010 that he "did not test exactly how far from perpendicular the backside thread could extend." Ex. 4, p. 21. Mr. Minemyer stated that he knew 3 degrees worked and that "he had no need to go further." Id. Still further, he stated that "Accordingly, [he] undertook no studies to learn the

10

extent of [his] invention, that is, what angles would work, both in the molding process and in the field and what would not." Ex. 119 and Ex. 4, p. 21. As a result, Mr. Minemyer's testimony about his "tests" and knowing his invention worked until you get to 15 degrees is wholly and completely unsubstantiated. It certainly does not rise to the level of the kind of substantial evidence required to support a jury verdict in Plaintiff's favor for this claim element. Thus, Defendants should also be granted Judgment as a Matter of Law on this issue as well.

### D.  Conclusion

For the foregoing reasons, Defendants should be granted Judgment as a Matter of Law of non-infringement of claims 2, 3, 4 and 12 of the '726 patent. As all of Plaintiff's claims for both direct and indirect infringement rest on a showing of infringement, judgment should be entered in favor of all Defendants and against Plaintiff.

Respectfully submitted,

Dated: February 15, 2012

/s/ Frederick C. Laney
Matthew G. McAndrews
Frederick C. Laney
Niro, Haller & Niro
181 W. Madison Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com

*Attorneys for Defendants*

R-BOC Representatives, Inc., Carolyn Lundeen, Robert Lundeen, Precision Custom Molders, Inc., Edward Krajecki, Sandra Krajecki, LeBac Plastic Mold Co., Inc., and Ronald Backman

/s/ Natalie J. Spears
Natalie J. Spears
SNR Denton US LLP

11

7800 Sears Tower
233 South Wacker drive
Chicago, Illinois 60606
Phone: (312) 876-8000
Facsimile: (312) 876-7934
E-mail: nspears@snrdenton.com

Teresa A. Ascencio, Esq.
SNR Denton US LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Phone: (816) 460-2400
E-mail: tascencio@snrdenton.com

*Attorneys for Defendants*

Dura-Line Corporation and Timothy A. Grimsley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2012, I electronically filed the preceding **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Sean B. Crotty
The Coleman Law Firm
77 West Wacker Drive
The Chambers, Suite 4800
Chicago, IL 60601
Phone: 312-444-1000
Fax: 312-444-10258
SCrotty@colemanlawfirm.com

Douglas M. Chalmers, Esq.
Law Offices of Douglas M. Chalmers
77 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 606-8700
Fax: (312) 444-1028
E-mail: dmc@chalmers-law.com

**Attorneys for Plaintiff, John T. ("Tom") Minemyer**

Matthew G. McAndrews
Frederick C. Laney
Niro, Haller & Niro
181 W. Madison Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com
E-mail: laney@nshn.com

**Attorneys for Defendants Dura-Line Corporation and Timothy A. Grimsley**

/s/ Natalie J. Spears