# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN T. ("TOM") MINEMYER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 07 C 1763 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| R-BOC REPRESENTATIVES, INC., et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### A.

Following five years of litigation, a two-week trial, and a jury decision against him, one of the defendants, Timothy Grimsley, has brought a motion challenging the court's personal jurisdiction over him. He raised the personal jurisdiction issue in June of 2007 – less than three months after the complaint was filed – before Judge Coar, to whom the case was originally assigned. Judge Coar denied the motion to dismiss under Illinois' fiduciary shield doctrine and the due process clause. The "fiduciary shield doctrine" as enunciated by the Illinois courts, precludes a court (federal or state) from exercising personal jurisdiction over a non-resident tortfeasor where the conduct which gave rise to the tort was "solely on behalf of [their] employer." *Minemyer v. R-Boc Representatives, Inc*., 2007 WL 2461666, 3 (N.D.Ill. 2007); [Dkt. # 66, at 12].

A number of courts have concluded, Judge Coar found, that the doctrine should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction. But the level of discretion is not, itself, determinative and must instead be viewed within the context of all the circumstances. Judge Coar found significant, *inter alia*, the claim that Grimsley was motivated in part by his friendship with R-BOC's Robert Lundeen,

*Minemyer,* 2007 WL 2461666, 5.[1] *Cf., Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994)(Posner, J.)("The shield is withdrawn if the agent was acting also or instead on his own behalf- to 'serve his personal interests,' [which] we may assume, need not be pecuniary.").

The fiduciary shield doctrine is usually said to be discretionary or "equitable," rather than an absolute entitlement. *Minemyer,* 2007 WL 2461666, 5. In terms of the fairness of the case as a whole, Judge Coar held that, taking the allegations of Plaintiff's complaint as true, it did not make sense to preclude jurisdiction over Grimsley since he conspired with Mr. Lundeen of R-Boc to replace plaintiff's couplers with R-Boc's and lied and facilitated lies about the switch to plaintiff. The plaintiff was thus wronged not only by the actions of R-BOC and Dura-Line in materially infringing on his patent, but also by the assurances of Grimsley, himself, that induced Plaintiff's continued reliance on his mistaken belief that his patented product was being submitted to Verizon in response to its request for bids.[2] Judge Coar concluded that: "To excuse Grimsley at the outset from a case in which – according to Plaintiff's portrayal of events – he was intimately involved as an individual does not equate with principles of fairness." *Minemyer*, 2007 WL 2461666, 7.

---

[1] Mr. Lundeen denied being formally an employee of R-Boc, claiming his wife was the owner. Perhaps that was nominally true, but the evidence demonstrated the critical and pervasive role he played in the company's affairs.

[2] This alleged deception of Mr. Minemyer was central to the success of the whole plan, for without it, he would have bid his own product, which Verizon had been using and with which it was pleased. Judge Coar concluded that to the extent that Mr. Grimsley, himself, was aware of the illegality of these actions and nonetheless participated, in or facilitated them, he moved beyond the scope of his professional duties and opened himself up to personal jurisdiction as an individual.

Judge Coar recognized that to the extent Mr. Grimsley was merely continuing to act in a manner consistent with the instructions of Dura-Line, he may still be protected under the fiduciary shield doctrine. At trial there was no claim or proof that Mr. Grimsley's superior at Dura-Line had instructed him to engage in the conduct Judge Coar assumed for purposes of the motion was true. Quite the contrary. Grimsley denied any misconduct.

Although he said that it was a close question whether Illinois's fiduciary shield doctrine applied, Judge Coar ended with this invitation: "[i]f after further discovery it should prove appropriate, [Mr. Grimsley] will have the opportunity to move for dismissal once again and this Court retains the right to consider the motion on a more complete record." *Minemyer*, 2007 WL 2461666, 7. However, Judge Coar had no reservations about the issue of specific jurisdiction under the Due Process clause, and he denied that portion of Mr. Grimsley's motion without any suggestion that the issue might be reintroduced at a later date. *Id*. at 7-8. [Dkt. # 66, at 13-16].

This case was reassigned to me in December of 2008 by consent of the parties. [Dkt.# 124]. Discovery closed on May 30, 2009. [Dkt. # 167, 168]. There was, to use Judge Coar's qualifier, no "further discovery" after that. Between the date of the reassignment in 2008 and the date the trial began in February 2012, the parties were in court on an almost constant basis.[3] Those innumerable and highly adversarial conferences and hearings on motions were conducted on the record, routinely lasted for several hours at a time, and covered every imaginable aspect of the case.

The pretrial order was originally due on December 29, 2008. [Dkt. No. 79]. Over the next three years, there followed repeated requests to extend the date for filing the final pretrial order and to extend the trial date. *See, e.g.,* Dkt. Nos. 117, 118, 147, 161, 192, 224, 265, 267, 269, 270, 271, 272, 281, 375, 376. At one point, the trial was continued for over a year until early 2011. [Dkt. No. 281]. The case did not, however, ultimately proceed to trial until February 2012. In the interim, there were numerous meetings with counsel in court regarding the preparation of the pretrial order. *See* Dkt. Nos. 385-388, 390-393, 402, 405, 407-409, 412, 426, 429. In addition, at my instruction,

---

[3] A review of the docket reveals the incessant activity following the close of discovery in May 2009 through 2011. *See, e.g.,* Dkt. Nos. 168 - 429. The majority of the docket entries relate to activity by the defendants.

the parties were having continual meetings and telephone discussions regarding the final pretrial order, which was completed and signed on February 6, 2012 – four and a half years after Judge Coar had denied Mr. Grimsley's motion to dismiss on jurisdictional grounds and almost three years after discovery had closed. Yet, in all that time, and notwithstanding the constant activity on the part of all the defendants throughout the entirety of that period, not once did Mr. Grimsley ever mention Judge Coar's ruling or even hint that there was a jurisdictional question to be decided or revisited.

It was not until February 14, 2012, when the trial was half over, that Mr. Grimsley's lawyer, on his cross-examination, began to question him about his contacts with Illinois and matters that might be implicated by the fiduciary shield doctrine. [Dkt. # 492, at 1397].[4] There was nothing in the pretrial order or in anything that occurred in the several years the case was before me that would have alerted anyone that the issue was coming. On March 16, 2012, after the jury had entered a verdict adverse to Mr. Grimsley, he again challenged the court's personal jurisdiction over him. [Dkt. 479]. Not surprisingly, the plaintiff has objected, contending that Mr. Grimsley has waived his challenge to personal jurisdiction.

**B.**

Even a valid defense of lack of personal jurisdiction can be deemed waived if it is not raised in a timely fashion. *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010). It is Mr. Grimsley's

---

[4] One need not wait nearly as long as Mr. Grimsley did for there to be a waiver. In *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1071, 1074 (C.D.Cal.2003), the defendants were given an opportunity to litigate the personal jurisdiction issues before the court addressed the merits of the pending motion for injunctive relief. They chose not to do so. Furthermore, since they first raised the issue, they participated actively in the proceedings to date, including the appearance at, and participation in, oral argument regarding the preliminary injunction while remaining silent as to the issue of personal jurisdiction. Under all of these circumstances, the court concluded that the defendants waived their right to assert the lack of personal jurisdiction as a defense and proceeded to the merits of plaintiff's motion for preliminary injunction. Here, Mr. Grimsley did nothing year after year after year, despite the district court's invitation to renew the issue after discovery.

contention that having raised the issue at the start of the case in mid-2007, he could wait until the trial was underway four-and-a-half years later to pursue the issue. The theory advanced is that since the plaintiff has the burden *at trial* to prove jurisdiction, the issue was of necessity in the case. While it is true, as Mr. Grimsley submits, that there are cases that say it is up to the plaintiff to prove by the end of trail that the court has personal jurisdiction over the defendant, there are dangers, as the Seventh Circuit repeatedly reminds both bench and bar, in reading statements in judicial opinions too literally. *See, e.g., Miller v. Dobier,* 2011 WL 477046, 2 (7th Cir. 2011); *McCready v. Jesse White*, 417 F.3d 700, 703-04 (7th Cir. 2005); *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2006); *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999); *Rapier v. Harris,* 172 F.3d 999, 1005-06 (7th Cir. 1999).[5] That caution applies with singular force here, as Judge Posner's panel opinion in *Rice v. Nova Biomedical Corp.*, *supra*, teaches.

*Rice* acknowledged that some cases say, "perhaps too casually," 38 F.3d at 914, that by the end of the trial the plaintiff must have proved that the court has personal jurisdiction over the defendant. But, said Judge Posner:

> [T]hese statements . . . should not be taken literally. To begin with, they are in tension with the rule that the defendant must challenge personal jurisdiction at the earliest opportunity, on pain of forfeiture if he fails to do so. Fed.R.Civ.P. 12(h)(1). Such challenges should be resolved before rather than after trial in order to head off situations in which a defendant, if he thinks the trial is going against him, will plead lack of jurisdiction in order to force the plaintiff to start over in another court, but if he thinks the trial is going well will waive his objection to personal jurisdiction and await the entry of a final judgment that he can use as *res judicata* to prevent the plaintiff from suing him again.
>
> It would defeat the purpose of requiring prompt assertion of the defense of lack of personal jurisdiction if the defendant, having raised an objection to personal

---

[5] *See also Baribeau v. City of Minneapolis,* 596 F.3d 465, 483 (8th Cir.2010) (per curiam); *Fuentes v. Wagner,* 206 F.3d 335, 342 (3rd Cir. 2000).

5

> jurisdiction at the outset as required, could without any penalty fail or refuse to press it, creating the impression that he had abandoned it, and not seek to correct that impression until he appealed from an adverse final judgment on the merits. We do not understand the cases that we have cited to condone such a tactic; and we condemned it in *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1297 (7th Cir.1993), though we did so not under Rule 12(h)(1), which concerns only pleading, but under the doctrine of waiver, which is applicable to all defenses except lack of subject-matter jurisdiction.

38 F.3d at 914.[6]

Here as in *Rice*, Mr. Grimsley, having raised an objection to personal jurisdiction at the outset as required, failed for the next four-and-a-half years to press it, as Judge Coar invited him to do, thereby creating the impression that he had abandoned it.[7] Mr. Grimsley of course knew about *Rice,* because Judge Coar had cited it for, among other things, this proposition: "'[I]f it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing, the district judge can, as with other preliminary questions, defer resolution to the trial.'" *Minemyer*, 2007 WL 2461666, 7. But the decision whether to follow that course was the district court's, acting in the exercise of its sound discretion, *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989), not Mr. Grimsley's, acting pursuant to some uncommunicated plan not to raise the matter again until the middle of the trial.

Although discovery was long over, and there were numerous continuances of the trial – one lasting for more than a year – Mr. Grimsley chose not to have an evidentiary hearing on the question of jurisdiction or in any way pursue that issue until the trial was in its sixth day. It was then that Mr. Grimsley's attorney began questioning him about his residency and contacts with the state of

---

[6] All of this is ignored by Mr. Grimsley's brief.

[7] Unlike the defendant in *Rice*, who did not renew his challenge to personal jurisdiction until the appeal, Mr. Grimsley renewed the jurisdictional objection. But that does not change the result or the analysis.

6

Illinois. [Dkt. # 492, at 1397]. There was no forewarning to the court or Mr. Minemyer's lawyers that this testimony was coming.

Mr. Grimsley said he lived in Tennessee, had never lived in Illinois, and had no bank accounts or property here. Of course, these were facts he knew even before he filed his initial jurisdictional motion. He also said the only business he transacted in Illinois was on behalf of his company, defendant Dura-Line Corporation. [Dkt. # 492, at 1398].[8] As Mr. Grimsley points out in his memorandum supporting his current motion to dismiss, this testimony merely echoed the assertions he made in the affidavit he filed with his original motion to dismiss four years earlier. (*Grimsley Memorandum*, at 3, fn. 1).

In that document, he said he was a resident of Tennessee, never lived in Illinois, didn't have a bank account or property in Illinois, and only transacted business in Illinois on behalf of Dura-Line. [Dkt. #42-2]. He also stated that he was Dura-Line's vice president in charge of sales and marketing. [Dkt. #42-2]. So, basically, in his renewed motion, Mr. Grimsley is relying on the same information he relied on before Judge Coar in 2007. Consequently, it is clear that there was nothing infeasible or inconvenient about a definitive determination of personal jurisdiction being made in advance of trial. The reality is that Mr. Grimsley, without the court's permission and without notice to anyone, chose to defer to the trial the jurisdictional question. And he did so, notwithstanding the clarity of Judge Coar's invitation to renew the jurisdictional challenge "[i]f, after further discovery,

---

[8] Mr. Grimsley refers to this testimony in a footnote and in the body of his opening brief, but he does not cite to either the transcript pages (pp. 1397 *et seq.*) or the pages from the docketed volume (pp. 31 *et seq.*). In the docketed volume, the pages he cites – 41, 42, 44 – refer to a discussion among counsel. As Mr. Grimsley did not attach the pages he refers to in his brief, or indicate where the document he is working from might be found, there is no telling what document he is working from. "'Judges are not like pigs, hunting for truffles buried [in the record].'" *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). At least truffle hogs are taken to a specific forest to search.

it became appropriate." [Dkt. #66, at12].

In sum, nothing to which Mr. Grimsley has pointed to support his current jurisdictional challenge was obtained in discovery. It was all within his personal knowledge before he was sued.[9] Contrary to Mr. Grimsley's suggestion in his current motion, there is nothing in Judge Coar's order that permitted him to sit on information and renew his challenge to the court's jurisdiction at trial.

**C.**

Like everything else that occurred in this case, the preparation of the final pretrial order was complicated and protracted, spanning a very lengthy period. It was originally due in late December 2008. Over the next three years, the due date was extended repeatedly. At one point, the trial was continued for over a year until early 2011. Between then and February 2012, the parties were working on a constant basis on the pretrial order, which was not finalized until February 6, 2012 – four and a half years after Judge Coar had denied the motion to dismiss. *See supra* at 3-4. The defendants attributed the numerous delays to the plaintiff. Let us assume for the sake of discussion that the criticisms are valid. Those delays left more than ample time for the defendants to have alerted the court and the plaintiff that the jurisdictional issue was alive and well and would be an issue for trial. They did no such thing. Quite the contrary. There was nothing in the pretrial order or in anything submitted by the defendants regarding personal jurisdiction, thus reinforcing the impression that the question of jurisdiction was no longer part of the case in the district court, and leaving the plaintiff's lawyers unprepared to confront Grimsley's evidence and inadequately prepared to marshal their own contrary evidence. Absent a fully developed evidentiary presentation,

---

[9] This includes Mr. Grimsley's claim that he had to have approval from Dura-Line's CEO before signing contracts with Verizon or AT&T and was only acting on instructions from the CEO to proceed after notice of the '726 patent. (*Grimsley Memorandum*, at 5-6). Again, this testimony cannot be located in the voluminous trial transcript because Mr. Grimsley employs page citations know only to his attorney.

8

the court as fact-finder could not make a fully informed decision on the question of jurisdiction.

Whether intended or not, what was done by Mr. Grimsley was sandbagging, pure and simple. Sandbagging in all its forms has been condemned time and again, not least of all by the Supreme Court, *see e.g*, *Stern v. Marshall,* __U.S.__, 131 S.Ct. 2594, 2608 (2011), and sandbagging can result in the waiver or forfeiture even of constitutional rights, *id.*, – including personal jurisdiction. *Rice*, 38 F.3d at 915; *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir.1998)("personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation," including "sandbagging."). In *Peterson* the court observed: "[I]f a defendant were to engage in 'sandbagging' by raising the issue of personal jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal only if he were unhappy with the district court's ultimate decision, then we would not hesitate to find that the defendant had waived any right to pursue the defense." 140 F.3d at 1319.[10]

**D.**

The pretrial conference and order are a vital part of the procedural scheme created by the Federal Rules of Civil Procedure. "Because the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order "establishes the issues to be considered at trial." *Gorlikowski v. Tolbert,* 52 F.3d 1439, 1443-1444 (7th Cir. 1995). "Each side plans for trial on the assumption that it needs to meet only the contentions its adversary identifies in that order."*Nagy v.*

---

[10] By requiring comprehensive and timely disclosure of relevant information, the Federal Rules of Civil Procedure seek to avoid the surprise and secrecy that are antithetical to the informed determination of cases of their merits. *Cf., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002). *See also Miller v. Lenz,* 2010 WL 252287, 6 -7 (N.D.Ill. 2010).

9

*Riblet Products Corp.*, 79 F.3d 572, 575 (7th Cir. 1996). "For this reason, '[a]ttorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be.'" *Gorlikowski,* 52 F.3d at 1444. "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the fact-finder." *Id. Accord American Nat. Bank & Trust Co. of Chicago v. Regional Transp. Authority*, 125 F.3d 420, 430 (7th Cir. 1997).

Given the critical nature of the pretrial order, which supercedes all prior pleadings and controls the subsequent course of the action, *Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 474 (2007), the Seventh Circuit has consistently enforced a strict rule of forfeiture. *Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005). The court has concluded that unless issues omitted from the pretrial order are foreclosed, neither side could make that assumption, and the function of the pretrial order would be defeated. *American Nat. Bank & Trust Co. of Chicago*, 125 F.3d at 430; *Nagy*, 79 F.3d at 575. Mr. Grimsley does not argue that this is not the rule or that he did, at any point in the pretrial order or conference, raise a challenge to personal jurisdiction. Instead, he argues that the Seventh Circuit's forfeiture rule does not apply to matters, like personal jurisdiction, that are not decided by the jury.

But why not? There is nothing in the encompassing language in the opinions adverted to above or in Rule 16 that restricts the Rule to matters to be decided by the jury. And, given the purpose of the final pretrial order, an adverse party's entitlement to notice that "a claim or theory" is to be tried cannot be a function of the identity of the fact-finder. Concealment of the issues to be tried adversely affects the integrity of the adversary system and the accuracy of fact-finding in equal measure, regardless of the identity of the fact-finder. Reduced to its essentials, Mr. Grimsley's

argument is that is it is okay to ambush a judge but not a jury. Mr. Grimsley's brief neither points to a case that supports the distinction it seeks to draw, nor does it contain a principled argument that would sustain its conclusion.

Mr. Grimsley relies on a snippet of language from *Gorlikowski* in which the court said that "a claim or theory not raised in the pretrial order should not be considered by the fact-finder." (*Defendant Grimsley's Reply*, at 3, quoting *Gorlikowski*, 52 F.3d at 1444). But the court could not have meant that it was permissible to exclude critical matters from the pretrial order merely because the judge would be the fact-finder on that particular issue. That would make no sense and would lead to an absurd result, which, in all contexts, is to be avoided. *Compare Florida Power & Light Co. v. United States Nuclear Regulatory Commission*, 470 U.S. 729, 741 (1985)("An examination of the consequences that would follow upon adoption of the contrary rule proposed by the Court of Appeals in these cases confirms the soundness of this conclusion"); *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701 (2007)(Breyer, J., dissenting)("Hence it is important to consider the potential consequences of the plurality's approach, as measured against the Constitution's objectives. To do so provides further reason to believe the plurality's approach is legally unsound."); *Beanstalk Group. Inc. v. AM General Corn.*, 283 F.3d 856 (7th Cir. 2002) (Posner, J.).

If the Seventh Circuit had meant *Gorlikowski* to stand for the rule Mr. Grimsley espouses, *American Nat. Bank & Trust Co. of Chicago* would not have cited it in support of its application of the forfeiture rule to a defense of collateral estoppel that had not been included in the pretrial order. 125 F.3d at 430. Of course, the applicability of that defense is a question for a judge to decide. *See In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Adair v. Sherman*, 230 F.3d 890, 893 (7th

11

Cir. 2000).

Although the Seventh Circuit has not had the occasion to discuss the application of the forfeiture rule to a failure to raise the jurisdictional issue in the pretrial order, *American Nat. Bank & Trust Co. of Chicago* supports the result reached here, and other Circuits have found that failure significant in the context of a question of personal jurisdiction. *See Beagles & Elliott Enters., LLC v. Fla. Aircraft Exch., Inc.,* 70 Fed. Appx. 185, 187 (5th Cir. 2003)(unpublished summary disposition)(viewing the omission of the personal jurisdiction issue from the joint pretrial order, coupled with the parties' stipulation that "[t]here are presently no pending jurisdictional issues," as a concession of personal jurisdiction by the defendant).

In *Mullins v. TestAmerica, Inc*, 564 F.3d 386, 399 (5th Cir. 2009), the defendants jointly moved to dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The district court denied that motion without conducting an evidentiary hearing, impliedly concluding that the allegations in the complaint, together with the affidavits and other documentation, demonstrated a *prima facie* case of personal jurisdiction. The Court of Appeals held that this adverse jurisdictional ruling at the pre-trial stage did not foreclose either defendant from holding plaintiff to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence. However, neither of the defendants pressed the jurisdictional defense at any later point in the proceedings, including the pretrial order.[11]

The Fifth Circuit noted that several decisions had held that a defendant's failure to renew an objection to personal jurisdiction following the district court's denial of a Rule 12(b)(2) motion to

---

[11] Unlike this case, however, neither defendant raised the issue following the trial. Indeed, neither objected to the district court's statement in its final judgment that "it had jurisdiction over the subject matter and the parties" until the appeal.

dismiss either forecloses the defendant's right to invoke the higher burden of proof otherwise applicable to jurisdictional facts established at trial or waives the objection entirely. The court said that it would be inclined to find that the defendants' wholesale failure to pursue their jurisdictional challenge beyond the 12(b)(2) stage, at a minimum limited it to determining whether the record at that time demonstrated a *prima facie* case of personal jurisdiction, if other factors did not require a different result.[12]

Under the circumstances presented by the instant case, Mr. Grimsley's failure not to have even adverted to the jurisdictional issue in the pretrial order, triggers the rule of strict forfeiture. But even if it did not, Mr. Grimsley's silence on the jurisdictional question during the protracted period of the preparation of the final pretrial order was the capstone of his overall course of conduct from mid- 2007 through February 2012, and that overall course of conduct does result in a waiver or forfeiture of the question of jurisdiction.

**E.**

Finally, even if there were no forfeiture or waiver in this case, Mr. Grimsley still loses on the merits. The factors that Judge Coar discussed in his 2007 opinion and that are implicated in a challenge to jurisdiction under the fiduciary shield doctrine and due process favor the plaintiff, not Mr. Grimsley. As to those factors, and in terms of the fairness of the case as a whole, the plaintiff adduced more than a preponderance of the evidence to prove the truthfulness of his early allegations

---

[12] First and foremost was the plaintiff's failure to argue that either defendant's litigation of its jurisdictional defense affected the applicable evidentiary burden or the ability to review the district court's denial of the joint motion to dismiss. Second, the plaintiff's brief relied almost entirely on the evidence presented at trial and the jury's finding of liability to substantiate personal jurisdiction. The Court of Appeals construed these references as an implied concession that the entire record is relevant to resolving the jurisdictional question. Under these circumstances, it deemed there to be a waiver *of the objection* to the defendants' failure to preserve their jurisdictional challenge. *Mullins*, 564 F.3d at 398-400

13

against Mr. Grimsley. The evidence showed that Mr. Grimsley was not simply acting at the behest of his employer, Dura-Line, and that he had discretion and control over his actions as they pertained to gulling Verizon and Mr. Minemyer. To the extent that Mr. Grimsley's testimony was to the contrary, including his claim that he informed Verizon that the R-Boc coupler was being bid, not the Lozon coupler, I find it not credible. This was not simply a matter of my assessment of his demeanor, but more importantly, like other aspects of his testimony, the documentary and testimonial evidence adduced at trial confirms that rejection.[13]

A conspicuous example of Mr. Grimsley's lack of credibility involved his testimony at his deposition regarding his insistence that Verizon knew that Dura-Line was bidding the R-Boc, not the Lozon coupler. At the deposition he explained in great detail how he knew that he had made a full disclosure to Verizon, and he described the various steps he took in exhibiting samples of the R-Boc coupler to a Verizon representative. At trial he was forced to concede that his testimony could not have been true since the B&C coupler was not then in existence. He admitted that the Lozon coupler may have been sent to Verizon, but denied there was an intentional bait and switch or that his testimony at the deposition was anything other than a good faith mistake. The evidence demonstrates that his deposition testimony was not merely a mistake based on faulty memory, but was false. False testimony under oath is a circumstance that may and should be utilized in assessing

---

[13] Demeanor and inflection are critical components of the decision whether to believe a witness. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985); *United States v. Stewart*, 536 F.3d 714, 720 (7th Cir. 2008). "The demeanor of a witness `... may satisfy the tribunal not only that the witness' testimony is not true but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.'" *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962).

a witness's credibility at trial. *Allen v. Chicago Transit Authority,* 317 F.3d 696 (7th Cir. 2003); *Blue v. United States Dept. of Army*, 914 F.2d 525, 543-45 (4th Cir. 1990).

Judge Coar was more prescient than he could have imagined. The plaintiff proved by a preponderance of the evidence that he not only was harmed by R-BOC, but by Grimsley who, among other things, lulled him and aided Mr. Lundeen and Dura-Line in lulling the plaintiff into believing that his coupler was being bid to Verizon. It was Grimsley and Lundeen's intent to engage in this deception so that they could substitute the R-Boc coupler for Mr. Minemyer's and cut Mr. Minemyer out of the equation.[14] The deception was essential to prevent Mr. Minemyer, whose coupler was highly prized by Verizon, from bidding against R-Boc and Dura-Line. The plaintiff also proved by a preponderance of the evidence that Mr. Grimsley assisted and facilitated the deception of Verizon which mistakenly thought it was being supplied with Mr. Minemyer's product. Finally, I do not find credible Mr. Grimsley's explanations of what had occurred in connection with the award of the Verizon contract, and particularly his testimony that he had informed Verizon that the R-Boc coupler was being bid. There is no testimony that Mr. Grimsley's conduct in deceiving both Mr. Minemyer and Verizon was pursuant to his employer's instructions. Hence, to the extent that that sort of obedience might warrant application of the fiduciary shield doctrine, Mr. Grimsley cannot benefit from it. For a partial overview of some of the evidence relating to Mr. Grimsley, s*ee Minemyer v. R-Boc Representatives, Inc*., _F.Supp2d_, 2012 WL 512397, 3 (N.D.Ill. 2012).

The evidence presented at trial proved by a preponderance of the evidence the accuracy of Judge Coar's initial conclusion:"To excuse Grimsley... from a case in which...he was intimately

---

[14] The suggestion that all Grimsley's actions lacked any self-interested component and were solely at the behest of his employer, Motion to Dismiss at 8, is inaccurate. There was no testimony that Dura-Line instructed him to engage in any form of deceit or misrepresentation, and, in fact, Mr. Grimsley denied having done anything inappropriate or dishonest.

15

involved as an individual [would] not equate with principles of fairness." *Minemyer*, 2007 WL 2461666, 7. The defendant's motion to dismiss for lack of personal jurisdiction [Dkt. # 479] is DENIED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 5/11/12