UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN T. ("TOM") MINEMYER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 07 C 1763 |
| v. ) | |
| ) | Magistrate Judge Cole |
| R-BOC REPRESENTATIVES, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

After obtaining a jury verdict that the defendants infringed claims 2, 3, 4, and 12 of his '726 patent, the plaintiff now asks for a permanent injunction, enhanced damages and attorney's fees, prejudgment interest, and supplemental damages. As the defendants' motion for judgment as a matter of law on the issue of willful infringement has been granted, plaintiff's request for enhanced damages and attorney's fees is denied. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 670 F.3d 1171, 1189-90 (Fed.Cir. 2012); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed.Cir. 2011); *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007). That leaves the requests for a permanent injunction, prejudgment interest, and supplemental damages.

**PERMANENT INJUNCTION**

The plaintiff seeks an injunction prohibiting the infringing defendants from "making, using, offering to sell, selling or importing in the United States, the Infringing Products [which plaintiff lists] and all other products that are only colorably different therefrom in the context of claims 2, 3, 4, and 12 of United States Patent No. 6,851,726, and from otherwise infringing or inducing others to infringe said claims." (*Plaintiff's Post-Trial Motion*, Ex. 1). The list of Infringing Products comprises all the products the jury found infringing in their verdict. (*Plaintiff's Post-Trial Motion*,

Ex. 1); [Dkt. #468, at 1-4].

A plaintiff seeking a permanent injunction against infringement must satisfy the traditional four-factor test to obtain that relief. He must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, the plaintiff makes a case that he meets all four factors, and the defendants do not dispute him on any point. Likewise, defendants have no objection to the language of the injunction.

First, plaintiff points out that he has suffered irreparable harm and has no adequate remedy at law. He built his business around his coupler. His company, Lozon, was once the largest manufacturer of innerduct couplers in the world and his products were said to be an industry standard. (*Plaintiff's Appendix*, PX 6; Trial Trans., at 183-84). The centerpiece of his livelihood, the protection of which he secured with a patent at a cost of a quarter million dollars (*Plaintiff's Appendix*, PX 6; Trial Trans., at 193-94), was taken from him through the defendants' infringement. While the infringement is past harm, it is nevertheless relevant to the calculus. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed.Cir. 2010). The defendants, through their infringement and bid-and-switch scheme, at once became plaintiff's competitor and usurped his place in the industry – at least as far as one of the largest purchasers of couplers, Verizon, was concerned. *See generally R-Boc v. Minemyer*, 2012 WL __ (N.D.Ill. 2012). As the "Bid Lozon Couplers" evidence showed, the patented features of plaintiff's coupler were key in consumer's decisions to purchase the product. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, – F.3d –, –, 2012 WL 1662048, *10

(Fed.Cir. 2012). This loss of goodwill and place in the market is the type of harm that damages cannot redress. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed.Cir. 2012); *i4i Ltd.*, 598 F.3d at 861. And loss of a giant customer like Verizon is the kind of injury that cannot be salved with money. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed.Cir. 2011)(discussing loss of Wal-Mart as a customer). The defendants wisely do not dispute any of this or that it constitutes irreparable harm or that there is no adequate remedy at law for injuries such as goodwill, reputation, and place in the market.

The balance of hardships favors the plaintiff. The plaintiff built his company around his patented coupler. *See i4i Ltd.*, 598 F.3d at 862 (significant that plaintiff's business was almost exclusively made up of products based on his patent). The defendants do not dispute this, nor do they point to any hardships an injunction would visit upon them. As for the public interest, the touchstone is "an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd.*, 598 F.3d at 863. As the plaintiff points out, enjoining the sale of infringing couplers will have no conceivable adverse effect on public health or safety. The defendants stand mute on this point as well, and do not assert that the injunction will have the slightest adverse effect on the public in any way.

Clearly, then the plaintiff is entitled to his injunction. The only issue between the parties seems to be whether the language of the injunction – particularly the phrase "only colorably different" – covers the defendants' redesigned couplers. The plaintiff raises this point in a brief and cryptic footnote:

> By finding claim 12 infringed, the jury necessarily rejected defendants' contention
> that their so-called 2008 "redesign" rendered the B&C couplers non-infringing, and

3

> defendants admitted that all B&C couplers contain the "approximately perpendicular" threads, including those made and sold from February 2009 through the verdict. A permanent injunction is therefore necessary to prevent defendants' ongoing willful infringement.

(*Plaintiff's Post-Trial Motion*, at 2 n.1). But the plaintiff failed to accuse the redesigned couplers of infringement in his infringement contentions and never sought to amend those contentions at any point in these proceedings. [Dkt. # 367, at 8 (citing *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed.Appx. 284, 291-92, 2008 WL 60501, *7 (Fed.Cir. 2008)]. Contrary to plaintiff's footnote, the jury certainly did not find the redesigned couplers infringing [Dkt. # 468]; they were not even accused products at the trial. As was intimated months ago, because the plaintiff kept his suspicions about the redesigned couplers to himself, the only course for him is, having obtained an injunction, to bring a contempt proceeding and demonstrate that the redesigned couplers are not colorably different from the infringing couplers. [Dkt. # 367, at 8].

After that order was issued, the Federal Circuit had occasion to set forth the rather complex process to be followed in a contempt proceeding to determine whether a device is no more than colorably different in situations like this one. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-84 (Fed.Cir. 2011). That requires a separate hearing pursuant to a properly noticed motion that the defendant be held in contempt for violation of an injunction. Moreover, the jury in this case was never asked to make the necessary, specific determinations about the redesigned coupler. It is actually more convoluted than determining infringement and involves a two-step process. First, it must be determined whether the new product is no more than colorably different from the infringing product. If it is, then the question becomes whether the new product infringes the patent. *TiVo, Inc.*, 646 F.3d at 882-83. The patentee bears the burden of proving violation of the injunction by clear

and convincing evidence, a burden that applies to both infringement and colorable differences. *TiVo, Inc.*, 646 F.3d at 883.

Here, the plaintiff's footnote does nothing to meet that burden or even approach the rigorous analysis required by *TiVo Inc.* Plaintiff does get more specific in his reply brief[1], but that is too late. *Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009)(arguments not fully developed until a reply brief are waived); *United States v. Alhalabi,* 443 F.3d 605, 611 (7th Cir.2006)(same). Moreover, the jury's infringement finding was based on a preponderance of the evidence, not clear and convincing evidence, and the defendants' motion for judgment as a matter of law on willful infringement has been granted. Consequently, plaintiff has not met the clear and convincing standard required by *TiVo Inc.* So, while the plaintiff is entitled to his injunction, he is not entitled to bypass the proper procedure for enforcing it against products that were not accused in the trial. Similarly, he is not demonstrated he is entitled to supplemental damages stemming from sales of the redesigned couplers.

**PREJUDGMENT INTEREST**

In *General Motors Corp. v. Devex Corp.,* 461 U.S. 648 (1983), the Supreme Court held that,

---

[1] Plaintiff calls certain snippets of testimony from the trial regarding the threads on the redesigned couplers "judicial admissions" and argues that, therefore, the issue is withdrawn from contention. (*Reply in Support of Plaintiff's Post-Trial Motion*, at 3). Clearly, however, these statements do not constitute "judicial admissions." *Keller v. United States*, 58 F.3d 1194, 1199 (7th Cir. 1995)("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. . . . When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission."); *Solon v. Gary Community School Corp.*, 180 F.3d 844, 858 (7th Cir. 1999)("A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.").

in patent cases, "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." 461 U.S. at 657. Thus, "the award of prejudgment interest on patent damages is the rule, not the exception." *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1184 (Fed.Cir. 2011). An example of one exception is "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *General Motors*, 461 U.S. at 657. The defendants argue that, given the history of this case, that exception is applicable here. Then, the defendants go on to catalog the occasions in which the plaintiff has dragged these proceedings out longer than was necessary.

Plaintiff's conduct during discovery did prolong it unnecessarily. For example, without leave of court or the defendants' consent, plaintiff served his initial interrogatories three months late. [Dkt. #151]. Over the course of this case, plaintiff repeatedly failed to meet extended deadlines to which defendants agreed as a courtesy. [Dkt. #157]. Plaintiff also failed to comply with the court's discovery orders addressing his failures to adequately participate in discovery. [Dkt. #128; #148]. As this court observed, "there has been substantial non-compliance with the discovery schedules in this case by the plaintiff." (*Defendants' Response*, Ex. 3, Hr'g Tr. 33:1-2, 4/23/2009).

In addition, the trial date was extended four times because of plaintiff's noncompliance with court-ordered deadlines or personal matters of plaintiff or his counsel. The first extension came on April 3, 2009. [Dkt. #161]. The next came on November 9, 2009. It was the defendants who moved for the extension, but it was necessitated by the plaintiff's conduct. A few days earlier, " plaintiff's counsel stated that he would have 400 exhibits that he would seek to introduce into evidence. . . [but t]hose documents had not been supplied to the defendants as part of the pretrial order." [Dkt. # 271, at 2-3]. Clearly, given the history of the case and the new development, the

6

defendants would have been prejudiced if the trial had proceeded as scheduled. [Dkt. # 271, at 4]. For the following year, the plaintiff had to serve a federal prison sentence and both he and his counsel refused to proceed in his absence. So, the trial was rescheduled to early 2011. [Dkt. #281]. After further extensions, on May 3, 2011, through no fault of anyone, the May 23rd trial date had to be stricken due to a medical emergency confronting a member of plaintiff's counsel's immediate family. [Dkt. #377]. The trial eventually had to be rescheduled for January of 2012, because many of the same difficulties that prompted to original extension in November 2009 remained unresolved. {Dkt. #388]. The path to trial, then, was quite an Odyssey.

The plaintiff does not dispute any of this. These delays were significant and, clearly, it is unfair for the meter to run on the defendants' tab due to the plaintiff's conduct and especially due to the plaintiff's incarceration. He does not dispute that he was the cause of prolonged discovery. He does not dispute that he was to blame for a nearly three-year delay in this case coming to trial. He does not even argue that his delays should be excused or that, for whatever reason, *General Motors* does not apply here. He merely says that the appropriate rate for prejudgment interest is the prime rate. (*Reply in Support*, at 12-13).

Of course, it is not for the court to fashion a response on the plaintiff's behalf and it will not do so. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Beyond that, the court is in no position to explain away or excuse the plaintiff's pattern of delays; only the plaintiff can do that. But he has chosen not to do so. He has waived any argument against a finding that his delays make this case an appropriate exception to the general rule of awarding prejudgment interest under *General Motors*. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)("Failure to

respond to an argument . . .results in waiver."); *United States v. Farris,* 532 F.3d 615, 619 (7th Cir.2008) ("[Defendant] failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that [Defendant] waived his sufficiency of the evidence challenge[.]"). Accordingly, the plaintiff's request for prejudgment interest is denied.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 6/26/12

## CONCLUSION

For the foregoing reasons, the plaintiff's motion [# 477] for enhanced damages, attorney's fees, and supplemental damages is DENIED, his motion for a permanent injunction is GRANTED, and his motion for prejudgment interest is DENIED.