UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

R-BOC REPRESENTATIVES, INC., et al., )
)
   Plaintiffs-Counterclaim Defendants, )
) No. 11 C 8433
   v. )
) No. 07 C 1763
JOHN T. ("TOM") MINEMYER, )
) Magistrate Judge Jeffrey Cole
   Defendant-Counterclaim Plaintiff. )
)
_____ )
)
JOHN T. ("TOM") MINEMYER, )
)
   Plaintiff, )
   v. )
)
R-BOC REPRESENTATIVES, INC., et al., )
)
   Defendants. )

## MEMORANDUM OPINION

**A.**

Now in its eleventh year, the dispute about the patented, colored, plastic couplers continues to challenge, confound, and divide the parties. The history of the present trial and of the earlier one some years ago – both of which were resolved in Mr. Minemyer's favor – is found in *R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647 (N.D. Ill. 2017). In the wake of the second trial in this case – a bench trial in which the roles were reversed, and Mr. Minemyer was the defendant and R-BOC Representatives the plaintiffs – the plaintiffs were found guilty of not only continued patent infringement, but contempt of the injunction entered in the wake of the first trial.

Following the second trial in this case, the parties have now endeavored to arrive at an agreement as to the amount of damages, although they continue to disagree on the question of whether liability was properly found in the second trial.

The parties have stipulated that Mr. Minemyer is entitled to *his* lost profits in the amount of $1,599,732, which, pursuant to the proof at the second trial, the court's order of February 10, 2017, and 35 USC §284 (the damage provision of the Patent Act), are trebled to $4,799,195.[1] Prejudgment interest – calculated at $408,928 brings that amount to $5,208,123. The parties have also come to an amount of attorneys' fees of $1,161,331.44, covering the period through early March 2017. [Dkt. #243, at 4]. Costs and nontaxable expenses come to $53,794.52.[2]

Dura-Line objects to the fees incurred after the parties stipulated to the foregoing amounts, but it does so in a footnote without citing any caselaw or making any supportive argument as to why plaintiff should not be awarded fees for ongoing pursuit of the recovery the defendants chose to

---

[1] Since the Patent Act was amended in 1946 [§284], the Act has eliminated the recovery of a defendant's "profits," as the damages to be awarded a successful plaintiff under the Act. In *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964), the Court said:

> The purpose of the change was precisely to eliminate the recovery of profits as such and allow the recovery of damages only . . . . there can be no doubt that the amendment succeeded in effectuating this purpose; it is clear that under the present statute only damages are recoverable. . . . These have been defined by this Court as compensation for the pecuniary loss he (the patentee) has suffered from the infringement, without regard to the question of whether the defendant has gained or lost by his unlawful acts. . . .

*Id.* at 505-07. *See also Mentor Graphics Corp. v. Eve-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017)(since "the *patentee* is entitled to be made whole for the profits *it* proves *it* lost," the factfinder's job "is to determine what would the patent holder have made (what would *his* profits have been) if the infringer had not infringed.")(emphasis supplied)(parenthesis in original).

Of course, a civil contempt proceeding can properly involve an order requiring the contemnor to reimburse the judicial system for expenses. *United States v. Mottweiler*, 82 F.3d 769, 772 (7th Cir.1996).

[2] It bears repeating that the defendants have only agreed to the amounts if the court is right on its assessment of the applicable, substantive, legal principles.

contest. [Dkt. #244, at 3 n.5]. As such, that's a position that need not be considered, for it is not up to the court to develop the parties' positions for them. As the Court of Appeals has instructed time and again, the parties—not the courts—must research and construct supporting legal arguments. *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015); *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 650 (7th Cir. 2014). That brings the fee total to $1,252,753.07. [Dkt. #250-8].

Interest on the attorney's fees is another bone of contention. R-BOC Representatives argue that, until the court's order of February 10, 2017, this case was not "exceptional," and plaintiff had no expectation – entitlement is a more apt word – for the plaintiff certainly had an expectation of success – of an award of fees. [Dkt. #246, at 4]. Thus, trebling is not, say the R-BOC Representatives, appropriate. The flaw in this logic is obvious. No plaintiff, in any case, is entitled to any damages, or to any fee award, until it wins the trial. That does not, however, preclude trebling and an award of fees or they would never be proper. Yet the Patent Act and the implementing cases clearly allow it under the appropriate circumstances. *See e.g., Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 1578 (Fed. Cir. 1990).

In *Spindelfabrik Suessen-Schurr*, the Federal Circuit said:

> Schubert next challenges the district court's award of treble damages and attorney fees. The district court trebled the damages "by reason of the willful and deliberate nature of the infringement," and awarded attorney fees "by reason of the exceptional nature of the case." In the prior contempt proceeding, the district court also awarded increased damages and attorney fees. Thus, the damages here awarded were for the additional infringements upon which the finding of contempt rested—the importation of the six Spincomat machines—and the attorney fees were for attorney services rendered to Suessen in the present contempt proceeding. As we have shown, the court justifiably characterized Schubert's actions as "flagrant contemptuous conduct." Id. at 34. In these circumstances, the district court did not abuse its discretion in trebling the damages and awarding attorney fees.

The default setting is an award of prejudgment interest absent some justification for withholding such an award. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 36 (Fed. Cir. 2012). In the case of a fee award, the idea is to "compensat[e] the prevailing party for the costs it incurred in the prosecution . . . of a case where it would be grossly unjust . . . to require it to bear its own costs." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). If, as the R-BOC Representatives say without contradiction, the plaintiff wasn't paying as he went, the risk fell on the attorneys, who were out-of-pocket throughout the case. A dollar now doesn't fully make up for a dollar when this case began and winning attorneys should not be placed in this position in a Patent Act case.

So, in this respect and for the reasons discussed earlier, we must respectfully disagree with the conclusion in *BASF Corp. v. Old World Trading Co.*, 839 F. Supp. 528, 535 (N.D. Ill. 1993), that a plaintiff would not be "'out of pocket' in its attorney's fees in this case until the court ruled that the case was 'exceptional.'" *Id.* at 535. The district court reasoned this was true because a "plaintiff had no expectation that its attorney's fees would be reimbursed if it prevailed in the case, and was not 'out of pocket' until such a determination was made." *Id.* But that rationale serves only to detract from the deterrent effect of an award of attorney's fees in appropriate cases. For, as we have shown, no case is exceptional except in hindsight; that is until the judge says it is.[3]

On appeal of the *BASF* decision, the Court of Appeals held that a decision to award attorney's fees under the Lanham Act is committed to the district court's discretion, and that the district court did not abuse that discretion. It rejected the defendants' argument that plaintiffs must

---

[3] The *BASF* case was affirmed on other grounds by the Seventh Circuit, which did not discuss this aspect of the district court's ruling. *See* fns. 5,9, *infra*.

show willfulness or bad faith to be entitled to a fee award, holding instead that a plaintiff need show that the infringement was malicious, fraudulent, deliberate or willful. It noted that the district court had concluded that although Old World's conduct was not malicious, it was deliberate. Hence, it affirmed the district court's fee award to BASF. That conclusion would not be possible if malice, fraud, deliberateness or willfulness could only be concluded to have existed after the trial was over.

Mr. Minemyer maintained that this was an exceptional case from the very beginning. [No. 07-1763, Dkt. #27, ¶¶ 18, 24, 28]. And it was. The fact that a plaintiff in a patent case might lose cannot be the basis for determining entitlement to enhanced fees once it wins. The final judgment merely recognizes what the case has been all along. Plaintiff is entitled to prejudgment interest on both the damage award and the fee award.[4]

**B.**

The next disputed point is Mr. Minemyer's claimed entitlement to "disgorgement" of the *defendants*' profits resulting from their violations of the '726 patent. Disgorgement initially developed as a remedy to provide a plaintiff relief in equity, to serve as a proxy for damages, or to deter the wrongdoer from continuing his violations. *BASF*, 41 F.3d at 1095-96. Awarding disgorgement was discretionary not obligatory. It is not even the norm in a Lanham Act case, *see* 41 F.3d at 1095, *et seq.*, let alone a Patent Act case. Thus, an award of disgorgement may over-compensate for a plaintiff's actual injury, resulting in a windfall judgment at the plaintiff's expense. *Id*. at 1096. Phrased differently, while damages directly measure the plaintiff's loss, defendant's

---

[4] It is also worth noting that, at the time of the *BASF* decision, plaintiffs had a far higher hurdle to negotiate on the way to showing a case was exceptional. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* ––– U.S. ––––, 134 S.Ct. 1749, 1756 (2014); *see also R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, –, 2017 WL 543045, *30 (N.D. Ill. 2017)(discussing change in standard).

profits measure the defendant's gain. Thus, disgorgement may overcompensate for a plaintiff's actual injury and create a windfall judgment at the plaintiff's expense. *Id*.

In the instant case, damages were significant, and the plaintiff was awarded treble his damages and attorney's fees. The purpose of the award was not to deter further violations to protect the public at large, and thus there was not a criminal contempt proceeding. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016). In light of the award of treble damages and attorney's fees, disgorgement of the defendants' profits – even had they been proven – was not necessary, even if that were permissible under §284 of the Patent Act.

Indeed, Mr. Minemyer didn't ask for disgorgement of profits in his answer and counterclaim to the R-BOC Representatives' declaratory judgment action in this case. He did raise it in his motion for contempt, but never followed through with the proof he indicated would be forthcoming. [No. 07-1763, Dkt. #560, at 8-9]. He didn't offer any proof of "profits" in the trial and, actually, didn't even raise the issue of disgorging the R-BOC Representatives' profits until his closing argument.

But, even there, he injected disgorged profits into the proceedings only as "an alternate remedy" to the plaintiff's lost profits. [*Minemyer II*, Trial Tr., at 1358]. Even now, according to the plaintiff, we only know what the defendants' "markup" on the couplers was. [Dkt. #243, at 3; Ex. 2]. But markup is not the same as profits, *Nordock, Inc. v. Systems, Inc.*, 803 F.3d 1344, 1354 (Fed. Cir. 2015), as plaintiff's counsel wisely conceded:

> COURT: When you say disgorge profits, is it just profits, or is it sales?
>
> PLAINTIFF"S COUNSEL: Well, I mean, I think there are cases that have done all kinds of things, revenue, gross revenue.
>
> COURT: Right. That's what I mean. Because profits would require you to figure what his cost of goods are

6

PLAINTIFF"S COUNSEL: It's an involved . . .

COURT: I know you haven't done that and they haven't done that.

PLAINTIFF"S COUNSEL: Correct.

[*Minemyer II*, Trial Tr., at 1360].[5]

In briefing on the issue of damages, Mr. Minemyer has not even mentioned the concept of an award of gross revenue, let alone provided any of those "gross revenue" cases he adverted to at trial. [No. 11-8433, Dkt. #243, at 2-3]. Arguably, then, the plaintiff has waived this point by failing to support it with the necessary proof at trial and failing to develop it with case law until now. *See United States v. Cisneros,* 846 F.3d 972, 978 (7th Cir. 2017); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008). The plaintiff doesn't seriously contest the point that his development of this issue has been lacking. [No. 11-8433, Dkt. # 645, at 2].

But, we need not rely on waiver alone, since I have already considered what an appropriate remedy for the contempt, along with the infringement, should be in this case. This is an exceptional case, as the treble damage award reflects. As plaintiff has agreed and argued, a court has broad discretion in fashioning remedies for contempt. *See F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009); *S.E.C. v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1474–75 (2nd Cir. 1996).[6] All things

---

[5] Profits are based on gross revenue after deducting certain allowable expenses. Obviously, they are not the same as either markup or gross income. *Nordock, Inc.*, 803 F.3d at 1354. The profits of which the patentee is entitled to under §284 are not his gross profits but rather what remains after various allowable expenses are subtracted from revenues resulting from the sale of a patented product. Compensable profits requires proof. *Mentor Graphics Corp.,* 851 F.3d at 1285.

[6] Contempt proceedings that do not raise issues unique to patent law are governed by regional circuit law. *Minigrip Inc. v. Recpro Co.*, 168 F.3d 1322 (Fed. Cir. 1998).

7

considered, and ignoring the Mr. Minemyer's failure to prove the amount of the defendants' profits, this is not a case for imposition of the remedy of disgorgement, even if it were otherwise proper.

The cases on which the R-BOC Representatives rely do not involve a situation where, as here, the patentee was awarded treble damages and attorneys' fees. *See*, *Brine, Inc. v. STX, L.L.C.*, 367 F.Supp.2d 61 (D.Mass. 2005); *Baltz v. Walgreen Co.*, 198 F. Supp. 22, 27 (W.D. Tenn. 1961)(award of disgorged profits and reasonable royalty); *Mueller v. Campbell*, 68 F. Supp. 475, 485 (S.D. Ohio 1946)(award of disgorged profits and damages); *BlackBerry Ltd. v. Typo Prod. LLC*, 2015 WL 474553, at *5 (N.D. Cal. 2015)(refusing to treble disgorged profits); *PLC Trenching Co., LLC v. Newton*, 2012 WL 1155963, at *2 n.2 (N.D.N.Y. 2012)(sanction based on calculation or profits without enhancement); *Connolly v. J.T. Ventures*, 851 F.2d 930, 934 (7th Cir. 1988)(unenhanced award of defendants' profits was a proper measure of damages to compensate the plaintiff). Yet, as we have shown, that is a factor of critical significance.

Here, it was determined that the case was exceptional, and defendants' conduct was egregious. *R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647. As a result, this is not, as plaintiff complains, a case where the infringer is no worse off for having continued to infringe even in the face of the injunction. Indeed, based on the plaintiff's asserted figure for defendants' profits, the treble damages award has the effect of not only compensating plaintiff but, from a practical standpoint, disgorging the defendants' profits, and probably a good deal more. As a consequence, the ruling in the instant case will not encourage continued wrongdoing or undermine the integrity of the judicial process "by equating court orders to little more than flies buzzing in the contemnor's ear, annoying but easily swatted away." *ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 449, 457 (E.D. Va. 2013).

The analysis required in patent cases, *R-BOC Representatives, Inc.*, 233 F. Supp. 3d 647 – to say nothing of the discretion inherent in the appropriate selection of remedies involving contempt, make it impossible to structure an exact formula for contempt as opposed to patent infringement and *vis versa*. And, to award the plaintiff an *additional* $1 million – that's about what Mr. Minemyer claims, without proof of what the defendants' "profits" were – would mean that Mr. Minemyer was not being *compensated* for the civil contempt in this case – i.e., he would not be recovering his "damages" – which is what the Act prescribes, 35 U.S.C. §284. Rather, there would be merely punishment of the contemnors, which is impermissible under well accepted principles governing civil contempt proceedings. *Compare* 35 U.S.C. §289.

> The Federal Circuit made this luminously clear in *Mentor Graphics Corp.*:
>
> The Patent Act provides: "the court shall award [the patent owner] *damages* adequate to *compensate* for the infringement but in no event less than a reasonable royalty for the use made of the invention *by the infringer*." 35 U.S.C. § 284. Under the statute, 'damages adequate to compensate' means "full compensation for any 'any damages' [the patent owner] suffered as a result of the infringement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983). As the Supreme Court explained in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (plurality opinion), the statutory measure of damages is "the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." The Court went on to distinguish between *disgorgement of defendant's profits*, which had been allowed prior to the 1946 statutory amendment, and the compensatory damages of § 284, which are defined as "compensation for pecuniary loss he (the patentee) has suffered from the infringement, *without regard to the question whether the defendant has gained or lost by his unlawful acts*." *Id*. (quoting *Coupe v. Royer*, 155 U.S. 565, 582 (1895)). Section 284 damages "have been said to constitute 'the difference between *his* pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Id*. (quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 552 (1886)). Put simply, "[t]he question to be asked in determining damages is 'how much had the *Patent Holder and Licensee* suffered by the infringement. And that question (is) primarily: had the Infringer not infringed, *what would Patent Holder-Licensee have made*?'"

851 F.3d at 1283-84 (brackets, parentheses and quotation marks in original)(emphasis added).[7]

In short, to do what Mr. Minemyer asks would, in this case, take the award out of the compensatory realm and move it toward, if not far into, the punitive realm, and that is impermissible. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994); *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016). Here, treble damages and attorneys' fees have been imposed, and that is enough.

## C.

This leaves the matter of joint and several liability. The plaintiff wants both R-BOC Representatives and Dura-Line held jointly and severally liable for the whole award. Dura-Line protests that while R-BOC may have infringed throughout the pertinent time period, it ceased its sales of infringing couplers on October 5, 2012. By Dura-Line's calculations, its share of Mr. Minemyer's lost profits comes to $733,314 of the $1,599,732 total; trebled, that would be $2,199,942. [Dkt. #244, at 2]. Dura-Line doesn't parcel out the remaining items, like attorney's fees and costs, and does not object to those items being assessed jointly and severally against all defendants. [Dkt. #244, at 4].[8]

There's a seeming fairness in requiring each defendant to bear his own share of the responsibility. And here, even plaintiff's counsel has conceded that plaintiff's lost profits can be easily apportioned between the defendants. [Dkt. #244, Ex. D]; Restatement (Second) of Torts §§

---

[7] The Act's emphasis on the harm to the *patent holder's* profits as the touchstone for the damage calculation rather than the *defendants'* acquired profits is also discussed in *Warsaw Orthopaedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015) and *Lucent Technologies, Inc. v. Gateway, Inc.*, 480 F.3d 1301 (Fed. Cir. 2009).

[8] The R-BOC representatives do not object to being held jointly and severally liable for the full amount of the judgment. [Dkt. #246, at 2].

433A(2); B(2)(1965)("Damages for harm are to be apportioned among two or more causes where . . . there is a reasonable basis for determining the contribution of each cause to a single harm" and "[w]here the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.").

Joint and several liability, a creature of tort law, *see generally Honeycutt v. United States*, _U.S._, 137 S.Ct. 1626, 1631 (2017), is a deliberate departure from this concept. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). The idea is that it is more important that the victim be made whole than responsibility be accurately apportioned among tortfeasors, with the risk of a tortfeasor being judgment-proof being borne by the defendants rather than the plaintiff. But joint and several liability has its limits. *Id.* The plaintiff doesn't discuss any of this. His basis for applying joint and several liability is as a penalty for Dura-Line's disobedience of the injunction, which required not only the return of the molds, but cessation of infringement. [Dkt. #243, at 6-10]. What was really needed from the plaintiff was a rationale for not apportioning damages between the defendants in this case.[9]

Unfortunately, Mr. Minemyer did not provide that. This is not to say that Dura-Line's behavior was not violative of the injunction or that its contempt should be viewed with greater

---

[9] But, as already noted, the contempt of the defendants was folded into determination that this case was appropriate for trebling of damages and awarding attorney's fees. Some courts, desiring to avoid imposing sanctions for contempt that are punitive, have required a contemnor to pay the value of the court's time and to reimburse the treasury for the time devoted to the matter. *See generally Thiel v. First Federal Savings & Loan Ass'n of Marion*, 646 F.Supp. 592, 598 (N.D. Ind. 1986). This course has not been suggested by the parties and in any event, I decline to impose this obligation on those found guilty of contempt in this case.

acceptance than that of the R-BOC defendants, because it may not have lasted as long. Leaving to one side any issue about Dura-Line's claimed inability to ensure that the molds were returned or whether they had ceased to exist before the injunction issued – as the defendants argued throughout the second trial and at the contempt hearing – Dura-Line deliberately violated the injunction by *continuing* to sell infringing couplers through October 5, 2012. [Dkt.# 244, at 4, 5, 7, 11, 14].

Dura-Line was presented with an uncomplicated choice: disobey the injunction entered after the first trial, or serve what Dura-Line claims were the business interests of Verizon – and no doubt Dura-Line's as well. Life ceaselessly requires that we make choices, and we are bound by the ones we make. *See CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 490 (7th Cir. 2014); *Crowe ex rel. Crowe v. Zeigler Coal Co.,* 646 F.3d 435, 444 (7th Cir. 2011); *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd*, 476 F.3d 421, 426 (7th Cir. 2007); *United States v. Yarbrough*, 852 F.2d 1522, 1529 (9th Cir. 1988). *Cf. United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000). The choice made by Dura-Line was one that the law does not countenance. Parties must obey injunctions, even erroneous or invalid ones, while they are outstanding. *Pasadena Board of Education v. Spangler*, 427 U.S. 424, 439-40 (1976); *Crowe ex rel. Crowe v. Zeigler Coal Co.*, 646 F.3d 435, 447–48 (7th Cir. 2011). Dura-Line's attempted self-exoneration (*Minemyer II*, Trial Tr., at 661-63) is astonishing – and unavailing.

Obeying the injunction was, in Dura-Line's view, secondary to other concerns. And that makes Dura-Line a contemnor. *Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1254, 1260 (Fed. Cir. 2000)(defendant properly found in contempt for continuing infringement after issuance of the permanent injunction). Trebling of damages and award of attorney's fees was warranted in this case. *See Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903

F.2d 1568, 1578 (Fed.Cir.1990).

In short, even were I to accept as true the explanation by Dura-Line for its behavior, the result would be the same. All that is required to sustain a finding of civil contempt is proof that the defendant was aware of the court's order, and knowingly refused to comply. His motive does not count. *United States v. Banks*, 942 F.2d 1576, 1579 (11th Cir. 1991). "With possible irrelevant exceptions... motive has a bearing only when there is an issue open on the intent." *Williamson v. Osenton*, 232 U.S. 619, 625 (1914)(Holmes, J.). Here, Dura-Line's admitted intent was to sell in violation of the injunction. Why it chose to continue to sell is of no moment.[10]

**D.**

R-BOC Representatives also ask that Mr. Krajecki be excused from liability for contempt beyond damages for plaintiff's lost profits because he is a veteran and has had two strokes. [Dkt. #246, at 5-6]. But, they present no evidence or proof on these points. We have only the statement of the R-BOC lawyer, and that is plainly insufficient. *See Woolard v. Woolard,* 547 F.3d 755, 760 (7th Cir.2008); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610–611 (7th Cir.2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.,* 324 F.3d 492, 494, 497 (7th Cir.2003). *Accord Patricia Esch v. County of Kent, Michigan*, _Fed.Appx._, 2017 WL 3046009, n. 2 (6th Cir. 2017).

In our adversary system, lawyers are necessarily – and quite properly – partisans. *Smith v. Robbins,* 528 U.S. 259, 293 (2000)(Souter, J., dissenting)("a partisan scrutiny of the record and

---

[10] The Seventh Circuit has held that a judge can reject actual testimony that is not corroborated. *Coexist Foundation, Inc. v. Fehrenbacher*, _F.3d_, 2017 WL 3273411, at *5 (7th Cir. 2017). Here, Dura-Line's claim is nothing more than an argument in a brief and an attempted justification which has not legal significance.

13

assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system...."); *Philips Medical Systems Intern. B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir.1993) (Posner, J.)(Consistent with the role of an advocate in our adversary system, it is assumed that counsel "is supposed to give the evidence a partisan slant."); *Rodriguez v. Doe*, 2010 WL 2837169, at *3 (N.D.Ill. 2010). And, they do not, in most cases, have first hand knowledge of what they are told by their clients. Thus, their representations constitute inadmissible hearsay. *Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 176 (D. Conn. 2010); *Williams v. Saxon Mortg. Co.*, 2008 WL 45739, at *5 (S.D. Ala. 2008); *Zemaitis v. DuPage Cty. Bd. of Elections Comm'rs.*, 1988 WL 89954, at *6 (N.D. Ill. 1988)(Williams, J.); *Pratt v. Hercules, Inc.*, 570 F. Supp. 773, 780 (D. Utah 1982).

In short, quite apart from the prohibition against counsel of record being witnesses in the case, their representations cannot be a substitute for evidence. In addition to the cases cited on page 14 *supra*, *see Patricia Esch v. County of Kent, Michigan*, _Fed.Appx._, 2017 WL 3046009, n. 2 (6th Cir. 2017); *F.T.C. v. Trudeau*, 579 F.3d at 771; *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610–611 (7th Cir.2006).

Still, counsel for Mr. Minemyer seemed to concede that Mr. Krajecki didn't really act in contempt of the order [Dkt. #246, at 5; Trial Tr., at 1365-66], but he still felt the contempt order should run to everyone. Although I told Mr. Minemyer's counsel he had to make a case as to Mr. Krajecki [Trial tr., at 1366-67], he really didn't. [Dkt. #250, at 8-9]. Hence, Mr. Krajecki will not be found in contempt.

### E.

In summary then, the damages to be awarded are as follows:

|  | R-BOC Representatives | Dura-Line |
|---|---|---|
| **Plaintiff's Lost Profits*** | $1,599,732 x 3= $4,799,196 | $733,314 x 3 = $2,199,942 |
| **PreJudgment Interest*** | $408,928 | $298,873 |
| **Attorney's Fees (J&S)** | $1,252,753.07 | $1,252,753.07 |
| **PreJudgment Interest (J&S)** | $174,801** | $174,801** |
| **Costs (J&S)** | $53,794.52 | $53,794.52 |

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/15/17

*R-BOC Representatives are jointly and severally liable for the total amount of plaintiff's lost profits and prejudgment interest; Dura-Line is not. Its liability is calculated up to the time it has been shown that Dura-Line withdrew from its involvement with R-BOC in October 2012.

**Minemyer's reply brief exhibit [Dkt. #250-8] does not calculate interest on the most recent $91,431.63 in fees.